

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RECEIVED

JAN 0 2 2008

JAN 02 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

United States of America ex rel. )

Robert Miller  #A50043 )
(Full name and prison number) )
(Include name under which convicted) )

PETITIONER )

vs. )

Greg Sims (Warden) )
(Warden, Superintendent, or authorized )
person having custody of petitioner) )

RESPONDENT, and )

**(Fill in the following blank only if judgment** )
**attacked imposes a sentence to commence** )
**in the future)** )

ATTORNEY GENERAL OF THE STATE OF )

Illinois )
(State where judgment entered) )

**08cv0023**
**JUDGE ANDERSEN**
**MAG.JUDGE VALDEZ**

Case Number of State Court Conviction:

00 C2 20576

### PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: 5600 Old Orchard Road, Skokie, Il 60077 (Cook County)

2. Date of judgment of conviction: June 15, 2001

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
Residential Burglary - Info. No. 00C2-20576

4. Sentence(s) imposed: 18 Years

5. What was your plea? (Check one)
   (A) Not guilty (X)
   (B) Guilty ( )
   (C) Nolo contendere ( )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:
   N/A

Revised: 7/20/05

**PART I -- TRIAL AND DIRECT REVIEW**

1. Kind of trial: (Check one):      Jury ( )          Judge only (X)

2. Did you testify at trial?      YES (X)          NO      ( )

3. Did you appeal from the conviction or the sentence imposed? YES (X)   NO ( )

   (A)  If you appealed, give the

       (1)   Name of court:   Appellate Court 1st. District

       (2)   Result:      Denied

       (3)   Date of ruling:   Dec. 18th 2003

       (4)   Issues raised:   ① State failed to prove guilt of Residential Burglary and Possession of Burglary Tools beyond a reasonable doubt. ② The trial Court erred when it denied the motion for a new trial. Cont. on pg. A

   (B)  If you did not appeal, explain briefly why not:

   N/A

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (X)      NO ( )

   (A)  If yes, give the

       (1)   Result:      Denied

       (2)   Date of ruling:   May 26th 2004

       (3)   Issues raised:   ① This Court should grant leave to appeal because the appellate Courts' determination that it was unnecessary to remand defendants' case to the trial Court for proper. Cont. on attached pg. B

   (B)  If no, why not:   N/A

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( )  No (X)

   If yes, give (A) date of petition:   N/A   (B) date *certiorari* was denied:   N/A

2

Revised: 7/20/05

**PART II – COLLATERAL PROCEEDINGS**

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

    YES (X)   NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A.  Name of court: Circuit Court of Cook County, Skokie, IL

    B.  Date of filing: Oct. 26th 2004

    C.  Issues raised: ① Petitioner's sixth amendment right to effective assistance of Counsel was Violated when his trial Counsel failed to Call Continues on attached pages "C" tru "G".

    D.  Did you receive an evidentiary hearing on your petition?      YES ( )  NO (X)

    E.  What was the court's ruling?      Denied

    F.  Date of court's ruling: January 24th 2005

    G.  Did you appeal from the ruling on your petition?      YES (X)  NO ( )

    H.  (a)   If yes, (1) what was the result?      Denied

                    (2) date of decision:      August 6th 2007

         (b)   If no, explain briefly why not:      N/A

    I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

        YES (X)   NO ( )

        (a)   If yes, (1) what was the result?      Denied

                    (2) date of decision:      November 29, 2007

        (b)   If no, explain briefly why not:

3

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )         NO (X)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.    Nature of proceeding           N/A

        2.    Date petition filed

        3.    Ruling on the petition

        4.    Date of ruling

        5.    If you appealed, what was the ruling on appeal?

        6.    Date of ruling on appeal

        7.    If there was a further appeal, what was the ruling ?

        8.    Date of ruling on appeal

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES ( )   NO (X)

    A. If yes, give name of court, case title and case number: _____ N/A _____

_____

    B. Did the court rule on your petition? If so, state

        (1) Ruling: _____ N/A _____

        (2)   Date: _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES ( )       NO (X)

    If yes, explain: _____

_____

_____

_____

_____

_____

_____

_____

Revised:  7/20/05

## PART III – PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one The Petitioner was denied a full and fair hearing when
Supporting facts (tell your story briefly without citing cases or law):

the trial court summarily dismissed his Post-Conviction Petition
without determining whether the petition stated the gist of a
Constitutional Claim. Cont. on attaced page "H".

(B) Ground two Petitioner's sixth amendment right to effective
Supporting facts:

assistance of Counsel was violated when trial Counsel failed
to call his alibi witness whos testimony was crucial to his
innocence. Illinois Courts recognize that a criminal
defendants right to a fair trial is violated by trial Counsels
failure to investigate and present favorable witnesses,
especially where the witnesses are known to trial Counsel
and their testimony may be exonerating. Failure to present a
known exculpatory witness, supporting an otherwise
uncorroborated defense may be deemed ineffective.
(Cont. on attaced pg. "I")

5

(C) Ground three Defendants Sixth amendment for effective Cross-
Supporting facts:

examination was Violated when his trial Counseler failed to
Cross-examine a state witness; a police Officer.

Trial Counsel held an "Evidence Technician Report" which stated, "No
tool marks found at point of entry." During defendants trial, Officer
Firth testified for the state. It was elicited by the prosecutor that he
Saw pry marks on the window frame; namely the same window that
evidence technician, Roe, processed at the Crime scene. Here,
defense Counsel held evidence which showed Officer Firth
(Continued on page "j")

(D) Ground four Petitioners Sixth amendment right to effective
Supporting facts:

assistance of Counsel was Violated when his trial Counsel failed
to investigate, and Call, an eyewitness who's testimony would have
been Crucial in proving the defendants innocence.

Defense Counsel was ineffective for failing to investigate and Call two
exculpatory witnesses by the name of "Gupta" and Thompson, who
according to the Police Report, Saw a man fitting the Alexanders
discription, fleeing the area of the burglary, bleeding from the head,
and Since Miller had no head wound, (Continued on page "k")

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

    YES ( )   NO (X)

3.  If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

Grounds, 1, 3, 5, tru, 21 was not raised due to the ineffective assistance of
trial and appellate Counsel. However, a fundamental miscarriage of

Continued on reverse side of this page          over ——>
                              6                  Revised: 7/20/05

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A)  At preliminary hearing Cook County Public Defenders Office (SKAKIE IL.)

(B)  At arraignment and plea Cook County Public Defenders Office (SKAKIE IL.)

(C)  At trial      Cook County Public Defenders Office (SKAKIE IL.)

(D)  At sentencing David S. Meyerson, 707 SKAKIE Boulevard Northbrook, IL 60062

(E)  On appeal State Appellate Defenders Office, 1st District, 203 N. LaSalle, Chicago, Il.

(F)  In any post-conviction proceeding State Appellate Defender, 1st District, 203 N. LaSalle, Chicago, Il

(G)  Other (state): _____ N/A

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO (X)

Name and location of the court which imposed the sentence: _____ N/A

Date and length of sentence to be served in the future _____ N/A

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: 12-27-07
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

Robert Miller
(Signature of petitioner)

A-50043
(I.D. Number)

P.O. Box 1000, Taylorville, Il 62568
(Address)

7

Revised: 7/20/05

Page "A"                                    Cont. From P. 2

③. The Mandatory Class X Sentencing provision of
730 ILCS 5/5-5-3(c)(8) Violates the right of a
defendant to due process and trial by Jury.

④. The Court failed to advise Mr. Miller of his right
to file a Written motion to reconsider Sentence,
and that this motion was necessary to preserve
issues for Appellate Review pursuant to Supreme
Court rule 605 (a).

⑤. The mittimus must be amended to reflect a total
of 503 days of Credit against the Sentence where
Mr. Miller's Credit was erroneously Computed as
502 days.



Page "B"

admonishments pursuant to Suprem Court rule 605(a)
Conflicts with its own opinion, as well as the third
district appellate Court's decision, and fails to take
into Consideration that had Defendant been properly
advised, he may have raised Sentencing issues in a
motion to reconsider Sentence based on facts outside
the record.

② The trial Court erred when it failed to grant Miller's
Motion for a new trial, because Miller's trial Counsel
was ineffective for failing to file a motion to Suppress
the identification evidence.



Page C"
defendant's alibi witness who's testimony was
Crucial in proving his innocence.

② Defendants sixth amendment for effective
Cross-examination was violated when his
trial Counseler failed to Cross-examine a State
witness, a police Officer.

③ Petitioner's Sixth amendment right to effective
assistance of Counsel was violated when his trial
Counsel failed to investigate, and Call, an
eyewitness who's testimony would have been
Crucial in proving the defendant's innocence.

④ Defense Counsel was incompetent where he relied
on a defense that was unavailable to him.

⑤ Petitioner's sixth amendment right to effective
assistance of Counsel was violated when his
trial Counselor elicited testimony from a State
witness, that was damaging to his Client.

⑥ Defense Counsel was ineffective for failing

④

Page "D"

to impeach an eyewitness with discrepancies between the initial description she gave to police, and her trial testimony.

⑦ Trial Counsel was ineffective for his failure to Challenge the indictment/information of the defendant, dispite the fact that he was informed before trial that the last page was blank and unsigned.

⑧ Defense Counsel was ineffective for failing to Subpoena two additional witnesses who could have Corroborated the defendants testimony that he did not Commit the Offense.

⑨ Trial Counsel violated the defendants right to effective assistance of Counsel when he Stipulated, twice, that the eyewitnesses had identified the defendant before the Court was satisfied, with an incourt identification.

⑩ Trial Counsel was ineffective in his duties to his Client when he Stipulated to a Conviction the defendant did not have.

Page "E "

① Trial Counsel's failure to present "Police Fabrication Defense" Constituted ineffective assistance of Counsel.

②

Trial Counsel was ineffective for failing to present "Police Fabrication for Probable Cause."

③ Defense Counsel was ineffective, when he failed to investigate evidence that would have Corroborated the defendant's testimony, that he did not Commit the crime.

④ Trial Counsel was ineffective where he advised and allowed the defendant to be tried before a judge who was fully aware of the petitioner's long Criminal history, Violating his fourteenth amendment to a fair and impartial trial, this, along with numerous other errors Constituted ineffective assistance of trial Counsel.

⑤ Appellate Counsel was inerfective for filing Petitioner's "Appeal Brief" being fully aware, she did not have a Complete Copy of the trial transcripts.



Page "F"

⑯ Appellate Counsel was ineffective for failing to raise all of the issues being brought against trial Counsel in this petition.

⑰ Petitioners fourteenth amendment right to a fair and impartial trial was Violated when the trial judge failed to Consider evidence Crucial to the Petitioners Case.

⑱ The trial Court abused its discretion when it denied the Cross-examination of the states witness on a material fact, Violating the Petitioners sixth amendment of Cross-examination.

⑲ The trial Court abused its discretion when it found the defendant guilty based on its own manufactured evidence, Violating the defendant's fourteenth amendment right to a fair and impartial trial

⑳ The defendants Constitional right under Article I, Section 8, S.H.A., ILL. Const. 1970,

⑦

Page "G"

the sixth and fourteenth amendment of the united states Const. to be present during all Critical Stages of his Criminal proceedings; Were Violated when the defendant was not allowed to be present during the hearing regarding the missing page of the Police Report.

②) Petitioner's sixth Amendment right to effective assistance of Counsel was Violated when his trial Counsel Stipulated that page two of the Police Report was page one, without investigating any of the facts and Circumstances Surrounding the missing page from the Police Report.

Page "H"                          Ground ①

The Circuit Court erred when it dismissed the Post-Conviction petition after engaging in a substantive analysis of the merits of the claim when it stated that "the evidence against the defendant is overwhelming" the Courts Sole task was to determine whether the Post-Conviction Petition presented the gist of a meritorious claim. The Appellate Court engages in a similar inappropriate substantive analysis when it claims that Miller failed to show that trial Counsels' failure to call his alibi witness, Velma Thomas, was nothing more then trial strategy, or that he was prejudiced by Counsels decision. However, the appellate Court ignores the fact that a petitioner, in a Post-Conviction need not prove that his claims of ineffectiveness of Counsel meet the strickland standerd in order to state the gist of a Constitutional Claim. Thus, because both, the trial and Appellate Court engaged in a substantive fact finding analysis; oppose to determining whether the Post-Conviction Petition states the gist of a Constitutional Claim. Petitioner was denied a full and fair hearing, in Violation of his federal due process Rights. Accordingly, this Court Should reverse the appellate Courts decision and remand the Case for further proceedings.

Page "I".                          Ground ②

Here, trial Counsel was aware of the importance
of Velma Thomas' testimony, as reflected by the
fact that he listed her as a witness for the
defendant on his answer to discovery, he subpoenaed
her, and he attempted to elicit the substance of her
testimony through Detective Mitchem. The attempt
to elicit the information from Mitchem was as
unnecessary, as it was unsuccessful, because
Velma Thomas was present in the Courtroom on the day
of trial. When Miller alleged that Velma Thomas was
a Crucial witness whose testimony would have
Corroborated his testimony, that he was nowhere
near the burglary when it happened, and that trial
Counsel was ineffective for failing to Call her to
testify, Miller Stated the "gist" of a Constitutional
Claim that is unrebutted by the record. Accordingly,
Miller's petition should have advanced to Second
-Stage proceedings. The Courts failure to advance
the petition to Second Stage proceedings, Violated
the defendant's federal due process rights.

see exhibit "A," for defense Counsel's subpoena for Velma Thomas,
also, see exhibit "B," for detective Mitchem's report of his interview with
Ms. Thomas Confirming the defendant did in fact work for her.

Page "J"                         Ground ③

Was Committing perjury, but Counsel failed to Cross-
examin this Officer, which allowed the prosecutor
to bring into evidence the defendants' work tools and
his pocket Knife, which had nothing to do with a
burglary, moreover, Mrs. Alexander, her husband and
the Owner of the house, testified that the back door
was always left open and the window was ajar.
Which is Consistant with the evidence technician's
report, because you wouldn't need tools to brake
into something already open. Cross-examination is
a valuable right of the party against whom a witness
is Called. Trial Counsel Committed a Constitutional
error by his failure to Cross-examine this witness,
for these reason the dismissal of Millers Post-Conviction, should
be reversed.

See exhibit "C," where defense Counsel, Mr. Goodman, failed to
Cross-examine a police Officer who gave prejured testimony.

⑪

Ground ④

Page "K"                    Continued from pg. 6

trial Counsel was ineffective for failing to investigate and
call this witness who could have provided exculpatory
testimony for the defendant. A key state eyewitness,
Mr. Alexander, trial testimony strongly supports the man
Mr. Gupta saw bleeding from the head, is the same man
Mr. Alexander testified he saw go west on Garfield, through
a front yard. That yard was Mr. Gupta's yard, and
according to the police report, the man Gupta saw was
bleeding from the head, and since the defendant had
no head wound, had no blood on any of his clothes, did not
receive any medical treatment while in police custody nor
does the defendants' arrest photo show any kind of head
wound. Despite all these facts trial Counsel failed to
investigate and call this witness for the defendant.
  Whats more glaring is the fact that Counsel deliberatly
surppressed this information from the defendant during his
trial, this information was exposed only _after_ a finding of
guilty and trial Counsels' dismissal. Therefore, the trial
and appellate Courts decision should be reversed.

[See exhibit "D." of police report showing a witness described
a suspect of the crime as bleeding from the head.]
see also defendants' letter to trial Counsel Marked exhibit "J"
Then see Counsels' response letter Marked exhibit "K"

Page "L"                     Ground ☻

Defense Counsel was incompetent where he relied on
a defense that was unavailable to him.


During trial, Counsel Choose to put detective Mitchem on
the stand, to testify about what the defendant's alibi
Witness, and employer, Velma Thomas, told him the day of
the Crime when he went to Ms. Thomases's address to
Check the defendant's alibi, here, Counsel Choose to put an
investigating detective on the stand to testify about what
an alibi witness told him. Here, trial Counsel was aware
of the importance of Velma Thomas' testimony, as reflected
by the fact that he listed her as a witness on his answer
to discovery, he subpoenaed her, and he attempted to
elicit the substance of her testimony through detective
Mitchem. The attempt was as unnecessary as it was
unsuccessful because Velma Thomas was present in the
Courtroom, and ready to give her testimony on the day
of trial. When Miller alleged that Velma Thomas was a
Crucial witness whose testimony would have Corroborated
his testimony, that he was nowhere near the burglary when
it happened, and that trial Counsel was ineffective for failing
to call her to testify, Miller stated the gist of a Constitutional
claim that is unrebutted by the record. Accordingly, Miller's

(13)

See trial Counsel's attempt to elicit the substance
of the Conversation, detective Mitchem had with
the defendants alibi witness, Velma Thomas, oppose
to putting her on to testify, on pages B107 tru B111
of the trial transcripts.

Page "M"                    Ground ⑥

Petitioners Sixth amendment right to effective assistance
of Counsel Was Violated When his trial Counselor elicited
testimony from a State Witness that Was damaging to Client.


During trial, the state Called as One of their Witnesses
Mary K. Conlon, the Owner of the burglarized house,
during the State's direct-examination of Mrs. Conlon they
never ask her about anything Concerning a dufful bag.
During the Cross-examination of Mrs. Conlon; the
defendants' trial Counselor, elicits' testimony from Mrs.
Conlon about a dufful bag. Once defense Counsel
brings this fact to the States' attention, the State then
does' a redirect-examination of this Witness Solely
on the dufful bag evidence for a page and a half of the
trial transcripts, during the States' redirect-examination
of Mrs. Conlon, its brought to light that items that were
On the dresser and in the drawers, were now inside the
dufful bag. Here, the only thing that was accomplished
by the defendants' lawyer was detrimental to his Client.
Since there was no logical reason for trial Counsel to
bring forth this type of incriminating information,
Counsel abandoned his duty as advocate for the defendant, and
assumed the role as the prosecution against the

(15)

Page "M" Cont.        Ground (6) Continued

defendant, by Volunteering incriminating information about the Crime when there was absolutely no reason to do so. Here, Sound trial Strategy is made sterner Stuff, it embraces the use of established rules of evidence and procedure to avoid, when possible, the admission of incriminating statements, harmfull Opinions, and prejudicial facts; Obviously, not demonstrated by defense Counsel here.

For the reasons stated herein, Counsel was not functioning as Counsel is required, under the sixth amendment of the u.s. Constitution. Instead, Counsel acted as an advocate for the State.

Therefore, the trial and appellate Court's decision to dismiss the defendants' post-Conviction petition, Should be reversed.

See pages B38 tru B41 for trial Counsel bringing up damging evidence against the defendant.

(16)

Page "N"                    Ground ⑦

Defense Counsel was ineffective for failing to impeach an
eyewitness with discrepancies between the initial
description she gave to police and her trial testimony.


Defendant was convicted on the basis of identification
testimony. Counsel did not introduce evidence showing
One key eyewitness, Mrs. Alexander, who made the 911 call
to the police, gave the dispatcher an initial clothing
description of the Offender as being; "Not real dark." However,
during the defendants' **trial**, Mrs. Alexander was asked; "Was
the person the police showed to you, wearing the same
Clothes, as when you seen him run by you?" She answered,
"Yes." At the time of defendants arrest, he had all black
Clothes on. At the time of trial, defense Counsel held in his
possession a Copy of the 911 dispatch report, purporting
that the Offender was wearing Not dark Clothes.
Counsel also held in possession the defendants' property
receipts, Showing all his Clients Clothes were black the
day he was arrested and bookedinto the police station,
in direct Contradiction to the eyewitness testimony, but
Counsel failed to use this evidence during the defendants'
trial.
       The Credibility of the eyewitness identification of the

Page "N" Continued          Ground 7

defendant, is Crucial to the determination of his guilt or

innocence in this matter because there was no physical

evidence linking him to the Crime, no proceeds of the

Crime were discovered in defendants' possession, and

because defendant did not make any inculpatory statements.

Thus, the only evidence linking the defendant to the

burglary of the Victims' home were the Contradicting

and impeached testimony of the eyewitnesses, Mr. and

Mrs. Alexander.

        For the reason stated herein, the attorney was

ineffective, and the trial and appellate Courts

decision should be reversed.


See exhibit "E" of the dispatch report Contradicting the eyewitness
trial testimony, also see the defendants property receipt from
the County jail, showing all his Clothes were black, not
Clothing NOT REAL DARK as the dispatch report show.
Exhibit "F" for defendants' Clothing receipt.

Page "O"                    Ground ⑧

Defense Counsel was ineffective for failing to subpoena
two additional witnesses who could have corroborated
the defendant's testimony that he did not commit the crime.

Defense Counsel had in his possession a police report
that listed two witnesses who saw the man the police were
apparently chassing. The police report list the first witness
as a person named "Gupta," and states' Gupta saw a man
running, bleeding from his head. Since the defendant was
not bleeding its obvious why counsel should have
investigated and called this witness, the same report list a
second caller by the name of "Thompson" who lived at 2142
Maple. This caller slated that a man was "running westbound
through his back yard," which opens into an alley, the same
alley the defendant was in, where he found the carpet lying
next to the dumpster. Note the address of this caller, its
2142 Maple, the defendant was behind a building, in an
alley at 2100 Ridge, the alley runs between Maple and
Ridge street, which means the defendant was at the
opposite end of the alley at the time Mr. Thompson
saw a man running through his back yard.
    The states' case hinged entirely on its identification
evidence, there was no sound strategic reason for

(19)

Ground ⑧ Continued.

failing to Call these witnesses. In addition, the defendant was prejudiced by Counsel, because, given the Closeness of the Case, there was a reasonable probability that additional witnesses would have raised a reasonable doubt of guilt. Under the Circumstances of this Case, failure to Call, or interview these witnesses Can not be part of any sound strategy. In addition, the testimony of the "disinterested" witnesses would have assisted the trial judge in determining Credibility; and therefore may have affected the Outcome of the trial.

   This error by trial Counsel, along with the Cumulative effect of the other errors denied the petitioner the Opportunity to subject the prosecutions Case to a meaningful adversarial testing. Counsel's ineffectiveness was prejudicial, in the "Strickland" Sense, because the errors Caused the adversarial process to "break down" and rendered a verdict that Cannot be relied upon as accurate. Therefore, the appellate and trial Courts' decision Should be reversed.

   SEE Exhibit "D"
also See exhibit "J" of defendants letter to his trial Counselor asking him why he with held exculpatory evidence from him, and the trial court, then See Counsel's response letter marked exhibit "K".

(26)

Page "P"                    Ground ⑨

Trial Counsel Violated the defendants' right to effective
assistance of Counsel when he stipulated, twice, that the
eyewitnesses had identified the defendant before the Court
was satisfied.


During the defendants' trial the following questions took place.
    State: All right. I will ask you to look around the Courtroom.

            Do you see this person in Court today?

    Witness: Sure, I do.

    State: Will you point him Out, please.

    Witness: Right there. (Indicating)

    State: Indicating for the record, the defendant...

The Court: Well, I don't Know... to whom are you pointing?

Witness: The gentlemen right there. (Indicating).

The Court: What is he wearing?

Counsel: We will stipulate that she has I.D,d the defendant.

The Court: Thank You.

    Here, defense Counsel stipulated to the incourt
identification of the defendant before the trial Court was
satisfied with it. Counsel again stipulated to the incourt
identification of Mr. Alexander, the states second key
eyewitness. There is no sound reason for trial Counsel to be
Stipulating to an incourt identification of the defendant

㉑

Ground ② Continued

Since both the states key eyewitnesses, Mr. and Mrs.
Alexander were in Court on the stand giving their
testimony, and he especialy should not be stipulating
when the trial Court is not satisfied with the incourt
identification of the defendant, and since this
was an identification case, and there was no
other evidence linking the defendant to the
burglary, as well as trial Counsel defense
for the defendant, was "misstaking" "identification",
shows how ineffective and incompetent he was.

   Here, trial Counsel was ineffective as well as
incompetent, because he stipulated to the incourt
identification of the defendant, before the trial Court
was satisfied with the witness identification of the
defendant. The stipulation by Counsel prevented the Court
from reaching a different result, and effectively violated
the defendants rights to a fair trial.

   Therefore, the trial and appellate Courts dismissal
of the defendants' Post-Conviction Petition should be
reversed.

See page B-17 of trial transcript of defense Counsels
stipulation of identification of defendant.

Page "Q"                    Ground ⑩

Trial Counsel was ineffective in his duties to the defendant
When he stipulated to a Conviction the defendant did not have.


Counsel was ineffective in his duties to the defendant when,
during the states aggravation argument Counsel stipulated
to a Conviction the defendant could not possibly have had.
The state argued that the defendant had a 1996 Case and
was Convicted on it in 1997.

Trial Counsel stipulated to the Conviction, this Conviction
would have been impossible, because the defendant had
a 1995 Case and was locked up on it untill July 7th of 2000,
a sentence he received from the trial Court, judge Orr, and
was on parole from that sentence, at the time of this trial.

    In addition, Counsel made a stipulation between him
and the states attorney, to what the evidence technician
who processed the Crime scene would say if called on to testify,
and that was; "there were no latent finger prints found on the
window where the screen was broken, he then went to the
upper floor to the master bedroom and processed a Chest
of drawers for latent fingerprints, but was unsuccessful
in recovering any." Counsel left out the stipulation, the
fact, that the evidence technician would've also testified
that no pry marks were found at the point of entry, Since

Ground (D)

that "fact" is clearly in the evidence technicians' report.
Counsel should have brought this information to light for
several reason, it must be remembered that there was
no physical evidence to "link" the defendant to the crime,
Only, Mr. and Mrs. Alexander's vague, uncertain and
doubtful eyewitness testimony. Counsel allowed the
prosecutor to argue a fact not in evidence, without
objecting to it, he also failed to impeach Officer Firth's
testimony, when he testified there were pry marks on the
window, namely the same window the evidence technician
found none on, here, Counsel left out a critical fact from
his stipulation, which should've been used to impeach
Officer Firth and to show the state was using purjured
testimony to obtain a wrongful Conviction.

   This fact is even more glaring since it affirmatively
appears from the trial record, that the trial judge Considered
this incompetent evidence in reaching her verdict.
Omitting the fact that "No Tool Marks were found" from his
stipulation, and not introducing the evidence technicions'
report into evidence, or Calling the evidence technician
himself, to testify, Cannot, under these Circumstancies
be excused as any trial Strategy, and by Counsel not
Calling the evidence technician or using the evidence

(24)

## Ground (6)

technician   report, was detrimental to the defendant,
Counsel was ineffective for stipulating to what the evidence
technician would say, instead of calling the evidence technician
as a witness for the defendant, moreover, Counsel was
ineffective for leaving out of his "stipulation" information
that should have been used to impeach Officer Firth.
Furthermore, a stipulation is "no match for in-court live
impeachment" on a critical issue.
Counsel's actions can not be excused as _any_ strategy.

   For the reasons stated herein, Counsel was not functioning
as Counsel is required under the sixth amendment of the
u.s. Constitution. Instead, Counsel acted as an advocate for
the state. Therefore, the trial and appellate Court's decision
on the Post-Conviction petition should be reversed.


See B112 of trial transcript of defense Counsel's stipulation
to Conviction the defendant did not have, and see pg. G-3
also, see exhibit "L", for the evidence technician's
report, which should have been used to impeach
Officer Firth's testimony about pry marks being
found.

Page "R"                    Ground ⑪

Trial Counsels' failure to present "Police Fabrication" defense
Constituted ineffective assistance of Counsel.


Before the defendants' trial started, he had informed his trial
Counsel, that the police had "manufactured" their case against
him because they knew he had criminal background. The
defendant then told Counsel, it was fact, and could be proved
because several things the police were claiming in their
reports were impossible; after hearing the defendants
Complaints, Counsel went personally, and sent investigators
Out into the crime area and confirmed the defendants'
Complaints with such evidence as: Photos' of the arrest area,
Photos' of the crime scene, mesurments, interviews with the
defendants' employer and alibi witness, Velma Thomas.
In addition Counsel heard testimony from the arresting
police Officers', and held in his possession, evidence to
Contradict their trial testimony but did nothing with it,
for example, the defendant's preliminary hearing was held
on Oct. 16-2000 in front of judge Gerald T. Rohrer.
Officer Firth testified that he recovered a pry bar from
the defendant when he was brought to 2205 Sherman
for a show-up identification.
During the defendants' trial, which was held, June 14

(26)

Ground (11)

2001, in front of judge Marcia B. Orr, Officer Lambeseder testified that he was the one who recovered the pry bar, and two Swiss army knives at 2100 Ridge, or, Leonard and Ridge Street. Here, during trial, defense Counsel had in his possession the preliminary hearing transcript showing that Officer Firth gave testimony that he recovered a pry bar from the defendant, then eight months latter, he hears testimony from Officer Lambeseder, that he recovered the pry bar at a location differant than the one Officer Firth gave. Now its obvious one, or both of these Officers were lying. Yet, Counsel failed to expose this fact. It must be remembered that the defendant had informed trial Counsel that the the police had manufactured their Case against him because they knew him and knew of his Criminal back ground. This fact may not have been significant enough for defense Counsel to expose, but what is significant, especially, after being informed by the defendant that the police were manufacturing their Case against him, is the reason or motive for the lying, it was to pursuade the preliminary hearing judge to find probable Cause, and the trial judge to find the defendant guilty. The police used this tactic at differant phases of the procedings for the defendant and it was a Calculated move to misslead the trial Court

Ground ⑪

into ruling erroneously on evidence that had nothing to
do with the crime, a fact which is clearly supported by
the record, for example, Officer Firth testified "Pry marks
were found". The Evidence Technicians' report show
no tool marks at the point of entry, namely the same
window Officer Firth testified pry marks were found on.
In the Courts fact finding its stated, by the trial Court
that, "Certain tools could have been used in this burglary,"
and, "the type of tools that were used in this burglary." both
Commits by the Court are in references to the defendants
work tools, also, during trial, Mrs. Alexander testified that the
window was open. She also indicated that the door leading into
the house was left open before the burglary occured when
she testified that, "the last time she checked on the house the
door was unlocked and open, in addition, the owner of the
house, Mary K. Conlon, testified that the door was left
unlocked. Always. Here, the states own witness corroborates
the evidence technicians report that "no tool marks were
found" because you wouldn't need to break into anything
with a tool, already unlocked and open. Here, the record
Supports, the weight of the Courts ruling went to the
polices' purjured testimony, instead of the facts of the case.
Therefore, the dismissal of the defendants' Post-Conviction Petition
by the trial and appellate Court should be reversed. **See Ex. "N"**

Page's"                    Ground (12)

Trial Counsel was ineffective for failing to present "Police Fabrication," for probable Cause.


During the defendants' trial Officer Lambeseder (The arresting Officer) testified that he based his arrest of the defendant, on the information he received from the Police Communication Center, or, dispatch Center, and according to his trial testimony, that information was of a Male/Black, Short, Wearing Dark Clothes, and the direction the Offender was running was West/Bound from the 21-2200 block of Sherman.

At trial, Counsel held in his possession the dispatch report, that Officer Lambeseder alledged that he based his arrest of the defendant, that dispatch report does not say, what Officer Lambeseder testified to, and yet, Counsel did not Challange or impeach this Officer, or show that he was Committing purjury or manufacturing the states' Case against the defendant or even to show the police never had probable Cause to arrest,

For the reason stated herein, the trial and appellate Courts decision regarding petitioner's Post-Conviction Should be reversed.

[See exhibit "E" of the dispatch report, then, See exhibit "G," for Officer Lambeseder's falsified report, of what was in the dispatch report.]

Page "T"                    Ground (13)

Defense Counsel was ineffective, when he failed to investigate evidence that would have Corroborated the defendants' testimony that he did not Commit the Crime.

Prior to the defendants' trial, defense Counsel held in his possession several pieces of evidence that would have Corroborated the defendant's testimony that he did not Commit the Crime; had Counsel had those pieces of evidence tested for fingerprints and DNA, but failed to do so. Both, the State's key eyewitnesses, Mr. and Mrs. Alexander testified that the Offender had handled a bike that he ran off and left at the Crime scene. Both eyewitnesses also testified that the bike belonged to the Offender, So its reasonable to believe that the Offenders fingerprints would be someplace on that bike. Here, Counsel failed to have exculpatory evidence tested to prove actuall innocent. In addition, the eyewitnesses testified that the Offender lost his hat at the Crime scene. Officers Firth, and Lambeseder, testified the hat was inventoried. The police testified the defendant was <u>not</u> wearing a hat.
The defendant testified, that the police placed a hat on his head when he was arrested at Ridge and Leonard street. Counsel held the defendants' Clothing receipts from the

Ground ⑬

police station, and his property receipts from the County jail, both showing the defendant had a hat in his property, the same hat lost at the Crime Scene by the offender, the same hat the police lied about being inventoried, the same hat the defendant said, the police placed on his head to persuade the eyewitnesses, during a show-up identification, that, "they got their man,".

Counsel was ineffective for failing to use the defendants' property receipts to show 1. The police had lied about the hat lost at the Crime Scene being inventoried. 2. The police addmitted the defendant was not wearing a hat when he was arrestted, so what was one doing in his property. ③ Onece, the police lied about the hat being inventoried, Counsel should have used the fact that,(a hat lost at a Crime Scene, was placed into the defendants property by the police) to strengthen the defendants' testimony, that police had also placed "said" hat on the defendants head to persuade the eyewitnesses. Counsel representation fell way short of that reasonably expected of a competent attorney where he failed to investigate evidence that would have established a foundation for certain testimony(i.e., that a witness described someone other than defendant shortly after the Crime), as a spontaneous declaration. Counsel's failure likely affected the outcome of defendants trial. Therefore, the trial and appellate Courts decision on the Post-Conviction Petition should be reversed. See Ex. "H"

Page "u"                              Ground ⑭

Trial Counsel was ineffective where he advised and allowed
the defendant to be tried before a judge who was fully
aware of the Petitioners long Criminal history, Violating his
fourteenth Amendment to a fair and impartial trial, this, along
with numerous other errors Constituted ineffective assistance
of trial Counsel.

The defendant appeared in Court on a "Continuance," on Feb.13, 2001,
at that time it was learned that the defendants prior judge,
Patrick Morse, was no longer on the bench as the defendants judge.
Judge ORR, had taken the place of Morse, judge ORR was familiar
with the defendants long Criminal history, and in fact, the
defendant was on parole, from a ten year Sentence he
received from judge ORR, for the Same Offense as the one
that was before the Court. Dispite these facts, the trial Court
did not Willfully Withdraw from the defendants Case because of the
strong probability of biasness and prejudice toward the defendant,
and trial Counsel failed to move for a "Change of venue," but
instead, advised the defendant to stay in judge Orrs Courtroom
because she was a "law judge," and his, was a law Case.
Counsel should have moved for a substitute of judge. Once it
was ascertained that the defendants Criminal history was
Knowen by the trial Court, the defendant was on parole from

Ground (14)

a prior sentence imposed by the trial Court, and the prior Charge, was the same as the One on the trial Courts docket. In addition, its reflected by the record that Court was in fact, bias against the defendant as reflected in her "fact finding," the defendant testified that he waited for the Cross-trafic to Clear before Crossing the street.

The arresting Officer, Officer Lambeseder, testified he Observed the defendant fleeing westbound through some yards from where he was sitting in his patroll Car, this information was also in his Police-Report. Counsel then Showed photos of the area and spot where Officer Lambeseder was sitting in his Car, the photos showed it would be impossible for lambeseder to have seen between the buildings, and Only then, did he admit he Couldn't, dispite this fact, the Court in her fact finding stated, "the police said he was running," here, the Court ruled against the weight of the evidence, and its due to biasness against the defendant, this is only One example of the Courts biasness, it can be found throughout the trial record. Counsel was ineffective for advising the defendant to stay in a Courtroom, where he Knew the defendant was less likely to receive a fair trial. For the reasons stated herein, the trial and appellate Courts' decision on the Post-conviction petition should be reversed.

Page "v"                         Ground (5)

Appellate Counsel was ineffective for filing petitioner's
appeal brief, being fully aware she did not have a Complete
Copy of the trial transcript.


The Petitioner had wrote his appeal attorney a letter informing her
of the missing Court dates in his transcripts, he also informed
her that the missing Court dates showed where a Constitutional
Violation had Occured during his trial preparations. Dispite
this fact, the appeal attorney went ahead and did an appeal
brief on the defendants behalf, without Obtaining the missing
transcripts. The appeal was denied, appeal Counsel then filed
a motion for rehearing, it to was denied, appeal Counsel
then petitioned the Supreme Court for leave to appeal which
was also denied. Appeal Counsel then sent the defendant a
letter informing him, she was now Ordering Copies of the
transcripts.
       This type of error by appeal Counsel was a direct Violation
of the defendants Constitutional rights to appeal his Conviction.
In light of this grave error by the appellate Counsel.
The trial and appellate Courts denial of the defendants
post-Conviction petition should be reversed.


See exhibit "I", and Ex. M-1, M-2 and M-3.

Page 'w'                    Ground ⑯

Appellate Counsel was ineffective for failing to raise all of the issues being brought against trial Counsel in this petition.


① Appellate Counsel was ineffective for failing to raise on appeal all the issues raised by the defendant in his post-Conviction petition. The accumulated effect of these errors, as well as Counsels' failure to obtain a full and accurate transcript, prior to filing defendants' appeal brief, amounts to a denial of the defendants' Constitutional rights to appeal his Conviction.

In light of the errors Committed by appellate Counsel, the only reasonable Conclusion is that the trial and appellate Courts' denial of the defendants' post-Conviction petition, should be reversed.

Page "x"                    Ground (17)

Defendants fourteenth amendment right to a fair and impartial trial was Violated when the trial Court failed to Consider evidence Crucial to the defendants Case.


The trial Court errored when it failed to Consider the Police Dispatch, and other evidence in this Case, because it would've Supported a number of the defendants Claims in this case, the trial Court gave the following Comment in its fact finding for disregarding the dispatch report: "The dispatch note list a Caller as somebody named, Plumb, P-l-u-m-b. Plumb was not the eye -- I do not Know who Plumb is. The eyewitnesses in the Case were Mr. and Mrs. Alexander. Just because a Caller named Plumb, might have said one thing or because the dispatcher might have written something in his summary later on when typing this up, there is no use that could have been made of that at trial to impeach these witnesses."

During the defendants trial, it was established by the eyewitnesses, the Alexanders, that, Chip Plumb and Mary Kay Conlon were a married Couple, who were their next door neighbors. The Alexanders were house and Cat Sitting for the Plumbs, while the Plumbs were on Vacation, Mrs. Alexander testified, that after the offender ran away, she went into Chip and Mary Kay's house and Called 911.


36

Ground 17                                                    2

One of the Plumbs' testified for the State during the defendants'
trial.

Evidently, the plumbs didn't make the 911 Call to the police
because they were out of town at the time of the burglary,
and there is nothing in the record that someone else with the
same name as the Plumbs, reported anything to the police
regarding the burglary, and since Mrs. and Mr. Alexander
testified the 911 Call was from inside the Plumbs house by
Mrs. Alexander, then it's pretty obvious why the dispatch report
list, "Plumb" as the caller.

The 911 police emergency Computer shows the Caller's
address, phone number, and name; providing instant identification
of the Caller, when the Call is made from a resident, Mrs. Alexander
made the 911 Call on the Plumbs phone, from their address, hence,
the name P-l-u-m-b on the dispatch print-out sheet.

The trial Court's Comment about, "not Knowing who the plumbs
were "is ludicrous, and flys in the face of the evidence and
testimony given at the defendants' trial. The record reflects
that the Plumbs, is who's house was burglarized, the Plumbs
is who's house the police were Called from by Mrs. Alexander.
Moreover, One of the Plumbs testified for the State during the
defendant's trial, how could the Court not Know who the Plumbs
were when its responsibilty is to be a trier of fact.

(37)

Ground 17

Finally, the trial Court's comments about there being "no use for the dispatch report to impeach the witnesses," was against the weight of the evidence, presented at trial. The dispatch report <u>Could</u> have been used to impeach all of the states key eyewitnesses, and the police. The dispatch report show the Alexanders initial discription of the offenders' Clothing as: "Clothing not real dark."

Under highly suspicious Circumstances, the Alexanders Come to trial, and are now testifing the offender was wearing "Black Clothing." Surely, the Court Knows there is a difference between, "Not dark Clothing", and "Black Clothing", and the Court Knows that a witnesses' previous statement, which are inconsistent with his or her, trial testimony Can be used to impeach that witness, especially on a material fact. Or, at the least be used to Challenge the witnesses' believability.

Officer Lambeseder, the arresting officer in this Case, testified he arrested the defendant based on information he received over the radio from the Police Communication Center, or, dispatcher. He testified that information was the following: Description: Male/Black - short - wearing dark Clothing, and the direction the offender was fleeing was Westbound.

What the dispatch from the police Communication Center actually show is: Clothing, Not real dark, and the direction of escape was Southbound, not what the arresting officer said it was. Therefore, the dispatch print-out would have impeached the arresting officer

Ground 17                                                                    4

on a material issue, that being whether or not the police had arrested the right person, and whether the officer even had probable cause to arrest the defendant.

In addition, the dispatch report show that it would've been impossible for the defendant to be the burglar in this case because it show the time of occurrence was 5:36 P.M., the defendants arrest report show he was arrested at 5:36 P.M., more then a half a mile from the crime scene. Fleeing on foot, an impossible task. Accordingly, the trial Courts refusal to Consider this Critical evidence on the defendants behalf was an abuse of discretion, and supports the defendants claim that the trial Court was bias and prejudicial against him because of the trial Courts knowledge of the defendants Criminal history, and a violation of the defendants right to a fair and impartial trial. Therefore, the trial and appellate Courts decision on the Post-Conviction Petition should be reversed.

See exhibit E, which is the dispatch report Contradicting the eyewitness trial "description" of the offenders Clothes Color, it also Contradicts the arresting Officers testimony about the Offender fleeing (W/B) West/Bound, and his testimony about the information in the dispatch about the Offenders Clothes being Dark Clothes.

Page "Y" Ground (18)

The trial Court abused it's discretion when it denied the Cross-examination of the States' Key eyewitness on a material fact, Violating the defendants' sixth amendment to Cross-examine his accuser.

The sixth amendment to the u.s. Constitution guarantees a defendant the right to Confront and Cross-examine his accuser. During the defendants' trial, on Cross-examination of the eyewitness by the defendants' attorney, it was elicited that the eyewitness had identified the defendant in a show-up identification procedure Conducted by the police, in which there was both discrepancies and Suggestiveness. Cross-examination elicited testimony from one of the eyewitness, Mr. Alexander, that during the show-up identification, the police had said the defendant was the Offender. The following testimony took place:

Defendants' attorney:

Q. Both you and your wife agreed that was the person you were seeing?

A. Yes.

Q. The police had agreed to?

State: Objection.

Court: Sustained.

Witness: I dont Know. They said this is the person----

Court: You dont have to answer.

Here, the Court abused it's discretion when it denied a full, Cross-examination of the states' Key eyewitness which would have showen the police had engaged in

(46)

Ground 18

Coercion in their identification procedure. To forbid this
most rudimentary inquiry at the threshold is effectively
to emasculate the right of cross-examination itself.
Therefore, the trial Courts' "restricted" cross-examination of
the states' key eyewitness on a material issue violated
the defendants' sixth amendment right to cross-examine the
witness against him. Therefore, the trial and appellate Courts'
decision to dismiss the defendants post-conviction
should be reversed.

See page's B33, and B34 of the trial transcripts.

Page "Z"                    Ground (19)                           1

The trial Court abused it's discretion when it found the
defendant guilty based on it's own manufactured evidence,
Violating the defendants fourteeth amendment right to a
fair and impartial trial.


The defendant was denied a trial by an open-minded, unbiased
trier of fact where it was "plainly apparent" that the trial judge
had manufactured evidence directed at finding the defendant guilty.
The Court stated in it's fact finding the following:
"This all happened from the moment of the burglary to the
apprehension of the defendant, within ten minutes, at the most,
probably less than ten minutes actually, according to the
testimony. Certainly no more than that."
      Here is what the record reflects, the actuall testimony
was regarding the time. Mrs. Alexander testified that, from
the time she called the police, untill the police arrived was
10 to 15 minutes, and the police did not have the man in Coustody
at that time. Mr. Alexander testified it was 20 minutes.
Officer Lambeseder, the arresting officer, testified he held the
defendant in Custody, for 5 to 10 minutes at Ridge and Leonard,
while Officer Firth went back to 2205 Sherman to talk with
the eyewitnesses, the Alexanders.
      The defendant, on his own behalf,    ' testified he remained

Ground 19                                        2.

in custody at Ridge and Leonard for 5 or 10 minutes, which is clearly corroborated by Officer Lambeseder himself. The defendant also testified that he was held inside the police car for about 15 minutes, after being brought to the crime scene for an allegedly show-up identification. *It must be remembered that the time it would've taken the defendant to flee on foot from the crime scene, than be arrested more than a half a mile away, is not included here, nor is the time it took for Officer Firth to drive from the place of arrest back to the crime scene to talk to the Alexander's, while the defendant was still being held at the place of arrest, nor is the time,  · for the defendant to be transported to the crime scene for the show-up identification.

Here, the record clearly reflects the Courts conclusion regarding the time was erroneous, the time was a critical factor here because it showed the defendant couldn't have been the perpetrator of the crime.

2.      The Court went on to find that, "the defendant was definitely exiting from inbetween private property buildings onto Ridge, and the police said, the defendant was actually running through this private property."

Here, no one during trial, ever testified that the defendant was on private property when he exited from between the buildings onto Ridge street, in addition,

Ground 19                                        3

the police Officer who the Court is refiering to in her fact
finding, is obviously, Officer Lambeseder, the arresting Officer,
since he was the only police Officer throughout the trial,
who gave testimony that he saw the defendant running
between those buildings, he never gave testimony that the
defendant was on "private property" as the Court found in
her "fact finding" and he was impeached by photos of the
arrest area, showing he couldn't even see between the
buildings, moreover, after viewing the photos, he addmitted
he couldn't see between the buildings.

   Here, not only did the Court find the defendant guilty
based on facts not in evidence, she used the prejured
testimony of a police Officer, and this same Officer,
falsified his arrest report to justify arresting the defendant.
The trial Courts reliance on this Officers' purjured testimony,
lends strong support to the defendants' claim in Ground 14
of this petition, that the trial Court was in fact, bias and
prejudice, against the defendant.

   The Court then stated, "the place where the defendant
exited is right where he would come out if he were
running from 2205 Simpson Southbound onto Garfield,
Westbound, which is what Mr. Alexander testified, he would come
out right in the middle of Maple there, have to go through these
buildings and then out to Leonard or Leonard at Ridge."

Ground 19                                    4

Here, there is several things wrong with the Courts ruling in its fact finding regarding these points. First of all, the Court has the address of the burglarized house wrong, according to the record, the address is 2205 Sherman, not 2205 Simpson. The reason this is significant is the defendant was arrested near Simpson Street, about a half a block from it, to be exact, hence, the reason the trial Court, ignored all the trial testimony of the eyewitnesses. Contradicting her ruling about the time it took for the Occurence of the Crime, untill the arrest of the defendant, as discussed in the beginning of this ground, the Court has the wrong address of the the Crime in her fact finding, and there can be no facts found, if the Court has the information wrong, regarding this point, and Mr. Alexander, one of the key eyewitnesses for the state; never testified where the perpetrator of the Crime would exit if he were running in any direction, as the trial Court quoted "him in her fact finding, and even if Mr. Alexander had given such testimony, it would've been highly unreliable and the Court shouldn't have Considered it, because, it would be impossible for Mr. Alexander to stand in front of his house, and determine where a person would exit, in a residential area, more then a half a mile from his house, unless he can see through buildings and other obstacles.

Ground 19                                    S

Next, the trial Court ruled as follows:

"That would be the shortest route for someone running from that scene. It isn't a reasonable route for somebody who was somewhere in the alley, in an alley going to get a ride. A more reasonable route would not be to come through private property but to go up to the line and down the next alley on the next street which would have either been, apparently Noyes or Simpson. Those are three through streets, across the road to get back to Foster."

Here, what the trial Court is suggesting is ludicrous. The defendant was arrested at 2100 Ridge AV., the building the defendant was behind Sits on Ridge av. the short-cut the defendant intended to take was through the Evanston Civic Center and the address to the Civic Center is 2100 Ridge, why is the Court suggesting the defendant walk a total of four and a quarter, blocks, to get through the Civc Center, when the building the defendant is behind, is right across the street from the Civic Center?, and if you look at the photo exhibits of the arrest area, you can see the space between the two buildings where the defendant exited, is big enough to drive a car through, there is sidewalk, which is used by pedestrians, as a short-cut to get to the next block, which is Ridge Av. without having to go all the way around as the Court Suggest.

Ground 19                                                    6

The Court next stated, regarding the description the
eyewitnesses gave.

"The description, although it isn't as complete as a description
could be, the "part" that was given matches the defendant".
Here, the Court gives an ambiguous ruling regarding the description.
What "part" of the description matches the defendant and
who gave it? There was no physical description of the perpetrator.
of the crime given, by the eyewitnesses other then a vague
clothing description, it's true that the eyewitnesses' claim to
have gotten a good look at the perpetrator of the crime, but
what they testified to and what they told the police is in
conflict, a positive identification, and getting a "good look"
at a person is not when the witness can't give the police
any physical characteristic of the offender, or even tell the
police what color the offenders cloths where, as in this case,
the only "part" of this description the defendant matches
is he is a black, male. Essentially, the trial court is saying
the defendant matched the description because he is black
and male'. . The defendant contends he was found guilty, based
on an unreasonable determination of the facts by the trial court,
in addition, the defendant contends he was not judged by
an impartial openminded trier of facts.

(47)

Ground 19

The Court next stated:

"The fact that there was a bicycle chained to the house, Miss. Thomas's house at Foster Street, does not mean that there wasn't another bicycle involved. The record is silent as to whose bicycle that was that was chained on Foster Street. And even if that had been proven or if I should assume as you are saying Mr. Goodman, that that was the defendant's bicycle, thats not to say that he couldn't have owned or had the use of another bicycle, which was what was described in the states case."

First, there was no evidence or testimony, that the defendant had the bike left at the crime scene, the fingerprints on that bike did not belong to the defendant, and the state never proved there was another bike used in the crime, as the court implied in its fact finding.

The record is not "silent" as to whose bicycle it was lock-up at 1310 Foster, the defendant's employer and alibi witness's address. Let me try to clear-up something here; the Evanston police knew the defendant owned a blue 10 speed bicycle, a similar bike was left at the crime scene by the offender; the police believed the bike left at the crime scene belonged to the defendant because of the

Ground 19                                           8

bike's similarities, this belief "was hightend, because the
police also knew the defendant had a background for burglary.
While at the police station, detective Mitchem spoke with the
defendant and informed him that his bike was recovered from
a crime scene, and that he was a suspect in that crime,
the defendant informed detective Mitchem that his bike was
at 1310 Foster where he had been working for the day replacing
a floor in the basement. Detective Mitchem then went to,
on the same day as the crime, 1310 Foster and spoke to Velma
Thomas, the owner of the house, and confirmed the information
the defendant gave him. Detective Mitchem returned to the
police station and spoke to the defendant a second time and
informed him that he went to 1310 Foster and spoke to Velma
Thomas, the lady who the defendant was working for on Oct.
8, 2004, the detective told the defendant that his alibi had
"checked out," but he couldn't be released from custody
because he had a parole hold on him. This detective also
testified for the defendant, during his trial, to what his
investagation revealed.

     The defendant also testified that the bike locked to
Velma Thomas's porch rail, was his.

     Therefore, the trial Courts Conclusion, that the record was
"silent" as to whose bike it was chained to 1310 Foster Street

(49)

Ground 19                                    9

was an error, whats even more glaring here, is the trial Court
ignored or missed a critical part of the defendants defense,
and thats, the bike left at the crime scene didn't belong to
the defendant as the police had first thought, because his
bike was exactly where he told detective Mitchem it was,
locked to the porch rail at Velma Thomases's house.

          The trial Court went on to say:
It was hard to believe, that a person leaving a days work,
suddenly decides to go scavaging in an alley. without any
equipment or transportation, the Court went on to say, if one was
really scavaging in an alley with some method of transportation
or at least same sort of container, that makes more sense to
maybe carry out what they find."

     Here, the Court missed a few facts, in its fact finding.
There was no testimony or evidence at the defendants trial
that he decided to go scavaging after he got off work, as the
trial Court is suggesting in her fact finding.
The fact and testimony was i. the defendant was on his
way home and Came across some junk in an alley; he
found some material/Carpet that he Could use to put on
the floor of Velma Thomass basement, he was on his way
back to the area where Velma Thomas lived to try and
find a ride to carry the Carpet. There was never a

## Ground 19

10

premeditated decision by the defendant to go scavaging after he left work, as the trial court erroneously concluded. There was never any evidence or testimony that the defendant planed to go scavaging, the testimony was; he came across some junk in an alley on his way home, hence being without a container to put what he found, or transportation to carry it. The defendant also testified that once he found the carpet behind the building, he was headed back to the area where Velma Thomas lived to see if he could find a ride to pick the carpet up, and when he exited from behind the building to the street, he was stopped by the police and arrested.

In Conclusion, with the trial courts numerous misstatements of the facts, it can only be concluded, the defendant did not receive a fair and impartial trial.

Page AA                    Ground (20)

The defendant's Constitutional right under Article I, Section 8,
S.H.A., Ill. Const. 1970, the Sixth and Fourteenth Amendment of
the united states Const., to be present during all Critical
Stages of his Criminal proceeding; Were Violated

The defendant is requesting that the Court take judicial
notice that after he has tried diligently to obtain the missing
transcripts regarding this issue, this argument is being made
without the benefit of an accurate, nor Complete, Official
transcript of the proceeding regarding the following issue, and
without prejudice to, or waiving the later discovery of errors
in the missing transcripts.

     During a Conference between, first public defender,
Allen Gutterman, and the defendant, the defendant was allowed
to View the entire police report, Which included page 1 of the
police report, the police report was numbered as pg. 1of4, tru,4of4
at that time the defendant informed Mr.Gutterman it was
obvious the police had manufactured their Case against him
because page one of their police report showed the police were
Claiming to be in two differant places at the same time, which
is obviously impossible, in addition, page one showed the
eyewitnesses, Mr.and Mrs. Alexander told the first Officer to
arrive at the Crime Scene, and the Officer who wrote the report,



Ground 20                                    2

that they didn't get a good look at the offender because they ran
when they <u>heard</u> Someone running down the inside stairs of the
Plumbs house, Screaming; and as the offender ran away, his back
was to them. Mr. Gutterman told the defendant he would check it out.

The defendant had Allen Gutterman as his attorney from Nov.
2000, untill, Jan, 2001. On February, 13-2001; the defendant was
appointed a differant public defender by the name of Robert
Goodman, Mr. Goodman showed the "discovery" to the defendant
which included Officer Firths' police report, at that time the
defendant noticed that page 1 of the police report was missing,
the defendant informed Mr. Goodman of this fact, and Mr.
Goodman informed the Court, and the prosecutor. The prosecutor
Conceded, that page one was in fact missing, the trial Court then
made a Comment about not being able to Continue without a
Compleat police report, and gave the state Several Continuances
to find out what happened to page one of the police report.

While the trial judge was being Subsituted for a
day, and the defendant was being held in the Courts lock-up.
or bull pen, an unidentified police Officer, <u>allegdly</u> Came
into the Court house and told the prosecutor that page 2,
was page one, apparently, the prosecutor and public defender
agreed to "stipulate" to, page 2 as being page one of the
police report. The defendant was unaware of the "Stipulation"

Ground 20                                        3

agreement, and the defendant was never informed by his attorney

of what was being done. Surely, the defendant would've never

agreed to page two as being page one, when he had seen

page one of the police report, and that page had information

that would exonerate him. Moreover, both federal and state

Constitutions affords criminal defendants the right to be

present, not only at trial, but all critical stages of the proceedings.

In this case the defendant's presence at the hearing on the

missing page of the police report was substantial to the outcome

of the proceeding. The defendant had first hand knowledge that

page two was not page one of the police report, therefore,

the defendant's absence from the proceedings on the missing

page of the police report, caused the proceeding to be unfair

and resulted in a denial of the defendant's right to know

what was being done, to make objections, and take such

action as he deems best to secure his rights and to

protect and defend himself, as well as his right to confront

the witness against him. The record (Missing transcript of this

proceeding), will demonstrate that the defendant did not

voluntarily, knowingly, intelligently, and with sufficient

awareness of the relevent circumstances and likely

consequences, waive his right to be present during the hearing

on the missing page of the police report. By the time trial

Ground 20                                    4

began it was to late for the defendant to protest the admissibility of the incomplete police report, and make objections based on the violations of his Constitutional right to be present during the hearing on the missing page of the police report, this Constitutional violation is not cured by the presence of the defendants' trial counsel, as his attorney has no power to waive defendants' right to be present.

For the reasons stated herein, it can only be concluded that the defendants Constitutional rights afforded him by Art. I, Section 8, Ill. Const. 1970, u.s. Const., 14th Amend., to be present at all critical stages of his criminal proceedings, were violated when the defendant was deprived of his rights to be present during the hearing on the missing page of the police report.

Therefore, the trial and appellate courts decision denying the post-conviction petition should be reversed.

See exhibit I, J, M:1 - M2 and M3, also Ex. "O"

(55)

Page 88                         Ground (21)                              ,

Defendant's sixth Amendment right to effective assistance of
Counsel was violated when his trial Counsel stipulated, that
page two, was page one of the police report without investigating
any of the facts and circumstances surrounding the missing
page from the police report.


The defendant informed his trial attorney that page one of the
police report was missing, and that he had seen page one of
the police report during an attorney - Client Conference with
another public defender by the name of Allen Gutterman,
dispite having being informed by the defendant that page
one of the police report did in fact exist, trial Counsel, Robert
Goodman, in Collusion with the prosecutor; based on an alleged,
unnamed police Officers' allegations, that, page two, is page one
of the police report, "stipulated" that page two was page one
of the police report. The trial Court had given the state
several Continuances in the Course of 4 or 5 months to locate
the missing page of the police report; it also must be remembered
that the state admitted that the page was missing when it
was first brought to their attention, and the defendant had
informed trial Counsel that he had seen page 1 of the
police report when he had Allen Gutterman as his attorney
and that page had exonerating information in it. Dispite these

Ground 21

facts, trial Counsel, in Collusion with the State, Stipulated, before a substitute judge, who had no idea of what was going on about the missing page of the police report, that page two was page one. Counsel never investigated the facts and Circumstances of the missing page of the police report, trial Counsel never Contacted the initail public defender, Allen Gutterman, or investigated his Files for Confirmation of the information provided by the defendant Concerning the missing page of the police report. Trial Counsels failure to investigate the facts and Circumstanes of the missing page from the police report was not based on trial Strategy, but on a Startling ignorance of the law and Criminal procedure, but more importantly, a total disregard for his duty to investigate all facts relevant to the merits of the defendants' case. Page one of the police report did exist, and showed that the police had no probable Cause to arrest the defendant; it also show police used fabrication in arresting the defendant, and, moreover, it shows the eyewitnesses had some major discrepancies from what they initially stated to the police, and what they testified to at trial. This Clearly show that the defendants' trial Counsel neglected his duty to make a reasonable decision that the particular investigation was not necessary. In this regard the defendants' trial

Ground 21                                    3

Counselor's performance was deficient and outside the wide range of professionally, competent assistance and as a result of trial counsels actions, the defendant suffered severe prejudice, where if not for trial counsels incompetence, the outcome of the defendants' trial would have been different.

   Therefore, the decision of the trial and Appellate Courts decision to dismiss the defendants' Post-conviction petition should be reversed.

See exhibit I, M-1, M-2, and M-3, also Ex. "O"

Exhibit A

2180 - Served
2280 - Not Served
2380 - Served By Mail
Subpoena - Subpoena Duces Tecum                    58              (Rev. 12-88) CCG-6

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

                 v.

ROBERT MILLER

No. 00-C2-20576

-TO APPEAR

**SUBPOENA**

To: VELMA THOMAS
1310 W. FOSTER STREET
EVANSTON, IL

JUDGE ORR

**YOU ARE COMMANDED** to appear to testify before the Honorable . . . . . . . . . . . . . . . . . . . . . . . . . . .
207          5600 OLD ORCHARD ROAD, SKOKIE
in Room . . . . . . . ., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Illinois on**
JUNE 14,          01          9:30A
. . . . . . . . . . . . . . . . . . . . . . . . . . 20 . . ., at . . . . . . . . . . . . . . . . . . . . .m.

YOU ARE COMMANDED ALSO to bring the following:

- **YOU MUST APPEAR** -

PERSONAL APPEARANCE REQUIRED.

in your possession or control.

      **YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO
PUNISHMENT FOR CONTEMPT OF THIS COURT.**

WITNESS . . . . . . . . . . . . . . MAY 16, . . . . . . . . . . ., 20 . . 01

*Dorothy Brown*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Clerk of Court

Atty No.          30295
Name          ROBERT GOODMAN, ASST. P.D.
Attorney for          ROBERT MILLER, DEFENDANT
Address          5600 OLD ORCHARD ROAD, RM. #245
City          SKOKIE, IL 60077          *refused*
Telephone          (847) 470-7400          *to sign*

I served this subpoena by handing a copy to . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .on 5/21/01 . . . . . . . .20 . . . I paid the witness
$ . . . NONE . . . . . . . . . . . . . . . . . . . . . . . . . .for witness and mileage fees.

. . . . . . . . . . . . . . . . . . . . . . . . . . . *Mary Rogut*
INVESTIGATOR

Signed and sworn to before me . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . , 20 . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Notary public

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

CASE: R. MILLER

## INVESTIGATION PROGRESS REPORT

CASE NUMBER : OOCV 20576

ATTORNEY: _____

Exhibit B    59

| DATE | TIME | LOCATION/ACTIVITY |
|------|------|-------------------|
| 1)-<br>19- | → | 2205 SHERMAN PHOTO'D FRONT PORCH FROM OUTSIDE 'AS NO ONE WAS HOME.<br>MEASUREMENT FROM DOOR TO STREET 59" |
| 1-<br>5-01<br>X | | 1310 FOSTER, EVANSTON - VELMA THOMAS ~~SAYS A ONE ROOM DOWN~~, DID ROOF ~~REPAIRS DOWN~~ (DENT REPLACED) ~~WAS ROUTING WINDOW~~ - SLEPT ON PORCH - FOR 2 MO. APPROX. HAS NO IDEA WHEN A DID WORK, CAN'T RECALL. MET A THROUGH HER GRANDSON'S FATHER. 869-9029 (847)<br>~~BICYCLE WAS LOCKED UP ON RAILING~~ FOR GLOVES, THEN WAS STOLEN. LOCK WAS CUT - NO POLICE REPORT.<br>KATIE'S # IS 847-328-1263 |
| | → | DISTANCE IS APPROX 1mi. FROM 1310 FOSTER TO 2205 SHERMAN. |

Exhibit C

60

1    removed and dumped over on to the bed and the

2    other ones were just pulled out.

3        Q.    Did you have occasion to go to the back

4    porch of the house?

5        A.    Yes.

6        Q.    Did you notice any damage to any screen

7    on that porch?

8        A.    Yes.

9        Q.    Describe that to us.

10       A.    There the scene was cut, and the window

11   was open.

12       Q.    Did you have occasion to look at the

13   window and the window frame where that was the

14   window that would match up with that screen?

15       A.    Yes.

16       Q.    What did you notice about the window

17   frame?

18       A.    The window was open.

19       Q.    Other than open, did you notice

20   anything else?

21       A.    There was some pry marks.

22       MR. LERNER: No further questions.

23       THE COURT:  Cross.

24       MR. GOODMAN: I have no questions.

## M.O. INFORMATION

### 101 Non-Residential
0 ☐ DNA
1 ☐ Retail
2 ☐ Drug
3 ☐ Medical
4 ☐ Financial
5 ☐ Construction
6 ☐ Church/School
7 ☐ Public Bldg.
8 ☐ Restaurant
9 ☐ Wholesale
10 ☐ Fast Food
11 ☐ Other

### 102 Residential
0 ☐ DNA
1 ☐ Apartment
2 ☐ Duplex
3 ☐ Hotel/Motel
4 ☒ House
5 ☐ Condo
6 ☐ Other

### 103 Level of:
Entry / Exit
0 ☐ DNA ☐
1 ☐ Basement ☐
2 ☒ Ground ☐
3 ☐ Upper ☒

### 104 Target(s)
0 ☐ DNA
1 ☐ Cash Register
2 ☐ Display
3 ☐ Person
4 ☐ Safe/Box
5 ☐ Sales Area
6 ☐ Vending Machine
7 ☐ Attic
8 ☐ Basement
9 ☐ Bathroom
10 ☐ Bedroom
11 ☐ Den
12 ☐ Family Room
13 ☐ Garage/Carport
14 ☐ Kitchen
15 ☐ Living Room
16 ☐ Storage
17 ☐ Vehicle
18 ☐ Other

### 105 Exact point of:
Entry / Exit
0 ☐ DNA
1 ☐ Unknown
2 ☐ Door ☒
3 ☒ Window
4 ☐ Transom
5 ☐ Wall
6 ☐ Roof
7 ☐ Front
8 ☐ Rear
9 ☐ Side
10 ☐ Other

### 106 Means of Entry
0 ☐ DNA
1 ☐ Unknown
2 ☐ Unlocked Door
3 ☐ Key
4 ☒ Tool Used
5 ☐ Unlocked Window
6 ☒ Broke Window/Door
7 ☐ Slash Screen
8 ☐ Transom
9 ☐ Other

### 107 Point of Entry/Exit Visible From
0 ☐ DNA
1 ☐ Adjacent Structure
2 ☐ Alley
3 ☐ Street
4 ☐ Not Visible

### 108 Security Used
0 ☐ DNA
1 ☐ Alarm
2 ☐ Bar/Grate
3 ☐ Dog
4 ☐ Ext. Light
5 ☐ Guard
6 ☐ Int. Light
7 ☐ Locked Doors
8 ☐ Locked Windows
9 ☐ Neighbor/Watch
10 ☐ Photo/Camera
11 ☐ Fence
12 ☐ Other

### 109 Place of Attack
0 ☐ DNA
1 ☒ Structure
2 ☐ Street/Alley
3 ☐ Lot/Park/Yard
4 ☐ Other

### 110 Victim/Offender Relationship
0 ☐ DNA
1 ☐ Unknown
2 ☐ Family
3 ☐ Acquaintance
4 ☐ Friend
5 ☒ Stranger
6 ☐ Ex Paramour
7 ☐ Other

### 111 Description of Surrounding Area
0 ☐ DNA
1 ☒ Residential
2 ☐ Business
3 ☐ Indust./Mfg.
4 ☐ Recreational
5 ☐ Institutional
6 ☐ Open Space
7 ☐ Other

### 112 Lighting
1 ☐ Unknown
2 ☐ Dawn
3 ☐ Daylight
4 ☒ Dusk
5 ☐ Dark (lighted)
6 ☐ Dark (unlighted)

### 113 M.O.
0 ☐ DNA
1 ☐ Unknown
2 ☐ Bound Victim
3 ☐ Blindfolded Victim
4 ☐ Disabled Phone
5 ☐ Ate/Drank
6 ☐ Hid
7 ☐ Injured Victim
8 ☐ Sex Acts
9 ☐ Defecated
10 ☒ Ransacked
11 ☐ Smoked
12 ☐ Took Money
13 ☐ Took Vehicle
14 ☐ Threats
15 ☐ Had Lookout
16 ☐ Demand Note
17 ☐ Used Matches
18 ☐ Used Tools
19 ☐ Vandalized
20 ☐ Vehicle Needed To Remove Property
21 ☐ Was Neat
22 ☐ Snatched Purse
23 ☐ Took Bike
24 ☐ Fled in Vehicle
25 ☐ Fled on Foot
26 ☐ Other

### 114 Type Lock Defeated
0 ☐ DNA
1 ☐ Chain/Bolt
2 ☐ Deadbolt
3 ☐ Padlock
4 ☒ Other _window lock_

### 115 Weapons
0 ☐ DNA
1 ☒ Unknown
2 ☐ None
3 ☐ Handgun
4 ☐ Revolver
5 ☐ Automatic
6 ☐ Dark Steel
7 ☐ Silver Steel
8 ☐ Long Barrel
9 ☐ Short Barrel
10 ☐ Shotgun
11 ☐ Pump Action
12 ☐ Double Barrel
13 ☐ Knife
14 ☐ Other

### 116 Gang
IS INCIDENT GANG RELATED/ MOTIVATED?
0 ☐ DNA
1 ☐ YES
2 ☒ NO
3 ☐ UNKNOWN AFFILIATION

## ADM.

117 ET Required: ☒ Yes ☐ No
118 Further Action Required   Roe 214   ☐ Yes ☒ No
119 Attention:
120 CEF Submitted: ☐ Yes ☒ No

### 121 Report Status
☐ (0) Unfounded
☐ (1) Referred to Other Jurisdiction
☐ (2) Pending Investigation
☒ (3) Cleared by Adult Arrest
☐ (4) Cleared by Juvenile Arrest
☐ (5) Cleared-No Prosec.-Adult
☐ (6) Cleared-No Prosec.-Juvenile
☐ (7) Cleared by Other Means-Adult
☐ (8) Cleared by Other Means-Juvenile
☐ (9) No further Action

## NARRATIVE

122

In Summary: On 10/8/00 at 1736 hours, Rlo responded to a burglary in progress at 2205 Sherman. The caller, Jennifer Alexander, lives at 2201 Sherman and called stating that a subject had just broke into the house at 2205 Sherman and was now fleeing from the scene on foot. (Male/Black, Short, Dark Clothing)

As Rlo and other officers were checking the area, a caller who lives at 2146 Sherman, (Gupta TX/864-5472) stated that a short Black/male wearing Dark clothing was running w/B on Gaffield from 2146 Sherman. The caller also said that the subject was bleeding from the head.

A second call came in from 2142 Maple minutes later (Thompson TX/869-6203) from a person stating that a Male/Black, Short wearing Black clothing was running w/B through his back yard.

Review Officer

Revised 1197

Date Run 06/14/2001
Time Run 10:39:56

Evanston
Incident Dispatch Detail Report

Page 1
ID-IMP310

RD #: EV 00-40004

## DISPATCH INFORMATION

Location
2205 Sherman Avenue

Beat/Subeat Source    Priority    Shift
76  /0140    E911    High    2

Code / Description
0600    Burglary
Burglary M/B BLK KNIT CAP KINDA SHORT
CLOTHING NOT REAL DARK M/S/W SHERMAN
THEY GOT HIS BIKE
(Caller:PLUMB)

Dispatch Assignment Area    (847) -
Dispatch Code: D
Disp:10/08 17:36:52  Enrt:10/08 17:36:52
Onsc:10/08 17:39:46  Comp:10/08 19:34:46
(76)

## DISPOSITION INFORMATION

Ucr Code    Description
0600    Burglary

Service    Description
Code
3    Report required - 3

Dispo Star: 1244 Firth
Remarks Continued Area

Call Received    Sun 10/08/2000 17:36:521219  Bickford, Randall D
Call Dispatched  Sun 10/08/2000 17:36:521219  Bickford, Randall D

Incident Dispatch Block Listing

| Unit | Star# | Dispatch Time | En-Route Time | On-Scene Time | Complete Time |
|------|-------|---------------|---------------|---------------|---------------|
| 76 | 1244 Firth | 10/08/00 17:36:52 | | | |
| 73 | 1349/1093 Wozniak | 10/08/00 17:37:16 | | | 10/08/00 18:15:03 |
| 76 | 1343 Miller | 10/08/00 17:37:20 | | | 10/08/00 17:43:07 |
| 60 | 1298 Rom | 10/08/00 17:37:22 | | | 10/08/00 18:02:34 |
| 77 | 1313 Lambredo | 10/08/00 17:38:09 | | 10/08/00 17:39:46 | 10/08/00 18:24:46 |
| | | | | | 10/08/00 18:15:03 |

EXHIBIT

E

Property Receipt
Exhibit "F"

Reg. # 20000 78 768    Date 10/11/00

Name: Miller, Robert

Fine $ _____ Sentence: _____

CLOTHING & BED ROLL RECEIVED: _____

Number of items stored: _____

HAT - CAP: _____
                    size        color        condition        brand

OVERCOAT: _____

JACKET: BLACK        color        condition        brand

SWEATER: _____        color        condition        brand

TROUSERS: _____ size        color        condition        brand

SHIRT: Blue        size        color        condition        brand

UNDERSHIRT-SHORTS _____
                    size        color        condition        brand

SOCKS: _____        size        color        condition        brand

SHOES: _____        size        color        condition        brand

SIGNATURES

OFFICER: _____ STAR# _____

INMATE: _____ miller _____

FCP REVISE FEB. 97

Evanston Police Department          Exhibit "G"   69
FIELD SUPPLEMENTARY REPORT

| ORIGINAL OFFENSE | | | 2. BEAT OR CALL RANGE | 3. BEAT RESPONSE |
|---|---|---|---|---|
| Burglary | | | 76 | 77 |
| 4. OFFENSE CHANGED TO | | | 5. DATE AND TIME OF THIS REPORT | |
| | | | 10-08-00/1930 hrs | |

| 6. VICTIM   LAST | FIRST | MIDDLE | ADDRESS | CITY/STATE | AREA/PHONE |
|---|---|---|---|---|---|
| Conlon, Mary Kay | 2205 Sherman | | Evanston, IL | | 847-869-6047 |

| 7. DATE OF ORIGINAL REPORT | 8. | 9. | |
|---|---|---|---|
| 10-08-00 | PAGE __1__ OF __1__ PAGES | CEF | ☐ SUBMITTED   ☐ YES  ☐ CANCELED   ☐ NO |

| 10. REPORT STATUS | 11. |
|---|---|
| ☐ FURTHER ACTION REQUIRED | |
| ☐ NO FURTHER ACTION REQUIRED | ATTENTION: |

ALL DESCRIPTIONS AND STATEMENTS ON THIS PAGE ARE APPROXIMATIONS OR SUMMATIONS UNLESS INDICATED OTHERWISE

12 NARRATIVE/SUMMARY

R/O responded to the area of 2205 Sherman reference a Residential Burglary. Comm. Center gave a description as a M/B wearing dark clothing running westbound from 2205 Sherman. R/O went to 2100 Ridge and sat at the corner of Leonard/Ridge and waited to see if the subject would run to Ridge Ave. While R/O was at the corner R/O observed a subject matching the description of the offender running westbound through some yards running directly towards R/O. The subject later identified as Miller, Robert Lee (08-09-56 1928 Jackson #3A, Evanston, IL) observed R/O and stopped running and began to walk acros the street. R/O stopped Miller and took him into custody. Miller was taken to the 2200 Block of Sherman where he was positively identified by Jennifer Alexander and Richard Alexander who were witnesses to the Burglary.

A search incident to arrest revealed a short pry bar in Miller's left front pocket. Also two Swiss Army Knives were located in Miller's Back Right pocket. Miller's bicycle was also recovered at the scene and everything was put into evidence.

Comm. Center also advised R/O that Miller had a Dept. Of Corrections Warrant for a Parole Violation for Burglary. Miller was transported to EPD and processed for Residential Burglary and Possession Of Burglary Tools.

| 13. REPORTING OFFICER | 14 SUPERVISOR APPROVING |
|---|---|
| R. Lambeseder #186 | |
| 15 REVIEW OFFICER | 16 INCIDENT NUMBER |
| | 00-40004 |

Revised 06/98

Property Receipt

Exhibit H

# EVANSTON POLICE DEPARTMENT
# PRISONER PROPERTY RECEIPT

Prisoner's Name ROBERT Lee MilleR  Cell_____  Case __OO_____

Date Arrested _____ 10/8/00 _____  Time 6:00pm

Date Released _____  Time_____

| Currency/Negotiables: | | Inventoried | | | Inventoried |
|---|---|---|---|---|---|
| Bills_____  Coins _____ | | ( ) | Key(s) ONE SET | | ( ) |
| Checkbook | _____ | ( ) | Belt | _____ | ( ) |
| Other Checks | _____ | ( ) | Shoes | _____ | ( ) |
| ATM/Credit Cards | | ( ) | Coat | _____ | ( ) |
| Other _____ | | ( ) | Other Clothing ████ | _____ | ( ) |
| _____ | | ( ) | SUN glasses | | ( ) |
| | | | _____ | | ( ) |
| Purse | _____ | ( ) | Lighter | _____ | ( ) |
| Wallet | _____ | ( ) | RX Medication | _____ | ( ) |
| Pager | _____ | ( ) | Glasses/contacts | _____ | ( ) |
| Cellphone | _____ | ( ) | Other Items_____ | | ( ) |
| Watch | _TIMEX_ | (X) | CIGARETTE CASE | | ( ) |
| Ring(s) | _____ | ( ) | _____ | | ( ) |
| Earring(s) | _____ | ( ) | _____ | | ( ) |
| Bracelet(s) | _____ | ( ) | _____ | | ( ) |
| Necklace(s) | OUR | (X) | _____ | | ( ) |
| Other Jewelry | _____ | ( ) | | | |

INVENTORIED

**Officer Receiving Property**

_____ Star 1211

I UNDERSTAND THAT ANY DEMAND FOR THIS PROPERTY SHALL BE MADE WITHIN THREE MONTHS FROM THE DATE HEREOF AND THAT UNCLAIMED PROPERTY WILL BE DISPOSED OF AS PROVIDED BY STATUTE. I HEREBY CERTIFY THAT THE ABOVE LIST IS A CORRECT RECORD OF ITEMS REMOVED FROM MY PERSON AT THE TIME I WAS TAKEN INTO CUSTODY.

SIGNED REFUSED _____  DATE_____  TIME_____

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

OFFICER RELEASING PROPERTY_____  STAR_____

I HEREBY ACKNOWLEDGE RETURN OF THE ABOVE ITEMS ON THIS LIST THAT ARE NOT MARKED FOR INVENTORY. I UNDERSTAND THAT THE INVENTORIED ITEMS WILL BE HELD FOR ME FOR THREE MONTHS FROM THE DATE HEREOF AFTERWHICH THEY WILL BE DISPOSED ACCORDING TO LAW.

SIGNED X _____  DATE 10-10-00  TIME_____

Revised 9/99        white - Records        yellow - Prisoner



## OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

**203 NORTH LASALLE STREET**
**24TH FLOOR**
**CHICAGO, ILLINOIS 60601**
**TELEPHONE: 312/814-5472**
**FAX: 312/814-1447**

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

April 5, 2004

**KARI K. FIREBAUGH**
ASSISTANT APPELLATE DEFENDER

Mr. Robert Miller
Register No. A-50043
Taylorville Correctional Center
P.O. Box 1000
Taylorville, IL 62568

Dear Mr. Miller:

This is a response to your most recent letter. In the petition for leave to appeal, I raised two issues. First, I argued that the appellate court was incorrect when it determined that it was unnecessary to remand your case for proper Rule 605(a) admonishments. Second, I maintained that the motion for a new trial should have been granted because your trial counsel's failure to file a motion to suppress the identification evidence was ineffective assistance. I plan to file the petition with the Illinois Supreme Court by April 12, and will send you a copy as soon as this is done.

I was also able to obtain your record from the court. Enclosed you will find a copy of the information that you requested. I have also ordered a copy of the transcripts from October 16, 2000 and February 13, 2001. I will send these to you as soon as I receive them.

If you have any further questions or concerns, please feel free to write to me.

Sincerely,

KARI K. FIREBAUGH
Assistant Appellate Defender

on
6-29-03

Exhibit J 67

6-29-03

To: Robert Goodman
Cook County Public Defender
5600 Old Orchard Road
Skokie, IL 60077

From: Robert Miller - A.500
Western IL. Corr. Center
P.O. Box 1000
Mt. Sterling, IL 62353
Regarding Case # 00C 220057

Dear Mr. Goodman,

I am in the process of my appeal, and if the need should arise I will be seeking "Post-Conviction Relief," however there are some documents I will need from you to proceed.
The documents are:

(1). An affidavit stating the reason why you faild to call my alibi witness (Velma Thomas) to corroborate my alibi dispite the fact, she being in court to do so. Instead you relied on the testimony of detective Mitchem; to testify to what Velma told him during his investigation, which was hearsay and inadmisable. Feel free to explaine that in the affidavit if you wish to do so.

(2). Why you advised me to stay with a judge (Judge Orr), who was fully aware of my criminal background, but whats more important a judge who's parole I was on for the same charge as the one at trial.

(3). Why police reports such as: Arrest reports, Evidence Technician reports, Dispatch reports, The report about the bleeding from the hea etc. all contradicting the eyewitnesses testimony and the states case were not used in my defense, and whats more important; why you never told me about those reports or showed them to m

Robert Goodman

Exhibit "K"

LS

**Law Office of the**
**COOK COUNTY PUBLIC DEFENDER**
5600 OLD ORCHARD ROAD • DISTRICT 2 • SKOKIE, IL 60077 • (847) 470-7400 TEL • (847) 470-7523 FAX

Edwin A. Burnette • Public Defender

7/10/03

Robert Miller,

I just received your letter
today regarding affidavits and
other materials you want from
me to help in your appeal.
Unfortunately, when
you filed a Motion For New
trial (after we lost the trial),
you made certain allegations
against me, including incom-
petence of counsel. Another attorney
was appointed for you to look
into those allegations. At that
point, you and I were in legal
conflict with each other.

        I do not believe at this
time it would be appropriate
for me to provide any materials
you request because our legal

Exhibit L

# EVANSTON POLICE DEPARTMENT    69    EVIDENCE TECHNICIAN REPORT

| | | | | | |
|---|---|---|---|---|---|
| **INCIDENT** Residential Burglary | **LOCATION OF INCIDENT** 2205 Sherman | | | **DATE AND TIME PROCESSING** 08 OCT 2000    1800hrs | |

| **CASE** | **NAME** CONLON, Mary Kay | | | VICTIM | X | **LOCATION OF PROCESSING** 2205 Sherman |
|---|---|---|---|---|---|---|
| | | | | SUSPECT | | |
| | **ADDRESS** 2205 Sherman | | | | | **PHONE NUMBER** (847) 869-6047 |

| **EVIDENCE** | NO EVIDENCE SUITABLE FOR COMPARISON WAS OBTAINED | | | SEXUAL ASSAULT KIT | | BLOOD ALCOHOL | | PLAT / DIAGRAMS | |
|---|---|---|---|---|---|---|---|---|---|
| | LIFTS | | VIDEO | PHOTOS | | CASTS | BODY FLUIDS | POST MORTEM | OTHER EVIDENCE | X |
| | INK F/P | | AUDIO | WEAPON(S) | | HAIRS | GSR: AA / SEM | TRACE / FIBERS | SEE NARRATIVE | X |

| **WEAPON** | **TYPE** DNA | **MAKE** DNA | **SIZE / CALIBER** DNA. | **SERIAL NUMBER** DNA | |
|---|---|---|---|---|---|
| | **MODEL** DNA | | **DESCRIPTION / FINISH** DNA | **LEADS / NCIC** | |
| | | | | **ATF TRACE** | |

| **METHOD** | **POINT OF ENTRY** Window on N/E corner of house | **METHOD OF ENTRY** Cut window screen and forced window open |
|---|---|---|
| | **TOOL MARKS** None observed | **POINT OF EXIT** Back door on East side of house |

| **VEH.** | **MAKE** DNA | **MODEL** DNA | **COLOR** DNA | **YEAR** DNA | **LICENSE NO., STATE, YR.** DNA | **VIN** DNA |
|---|---|---|---|---|---|---|

| **LAB** | RECOMMENDATIONS: |
|---|---|

**NARRATIVE**

On the above date and time R/ET was in the area of a burglary that had just occurred. EPD units had been checking the area and receiving updates over the radio, of the offender's direction of travel. Officer R. Lambeseder advised dispatch that he had a subject in custody matching the description of the offender in front of the Evanston Civic Center located at 2100 Ridge. The subject was brought back to the scene where the witnesses made a positive I.D. Officer Lambeseder recovered from the person on **Robert Lee MILLER** (SUSPECT) (2) pocketknives, a ZIPPO type lighter, and a pry bar approximately (10) inches long. Officer Lambeseder had the items placed it into evidence. R/ET then responded to 2205 Sherman to process the scene. R/ET observed a window to an enclosed porch open and the screen cut. R/ET processed the window for latent prints but was unable to locate any. R/ET then observed that the master bedroom on the upper floor had been disturbed. R/ET processed a chest of drawers next to the bed where (5) drawers had been removed for latent prints, but was unsuccessful in recovering any. INVESTIGATION TO CONTINUE.

| **ADMIN** | **PAGE NO:** 1 OF 1 | **EVIDENCE TECHNICIAN COORDINATOR** #961 | **REVIEW OFFICER** | **OUTSIDE AGENCY NO:** N/A | **EXHIBIT** |
|---|---|---|---|---|---|
| | **EVIDENCE TECHNICIAN** J. P. Roe | **STAR** #214 | **SUPERVISOR APPROVING** | **EVANSTON CASE NO:** 00- 40004 | E |

REVISED 7/98    WHITE TO RECORDS    YELLOW TO E.T. COORDINATOR    BLUE TO INVESTIGATOR

Exhibit 14

2·24·03

Mr. Robert Miller
Register No. A·50043
Western Illinois Correctional Center
P.O. Box 1000
Mt. Sterling, IL 62353

RE: People v. Robert Miller
Case No.: 00C2205 76
Appeal No.: 1·02·0504

Dear Ms. Firebaugh,

I am writing to inform you that I've gone over
my trial transcripts I received from your Office,
and I have discovered that several Court dates
are missing. From November, 8th, of 2000, tru June,
14th, 2001, those missing transcripts are extremely
important, because they show the Public Defender
(Robert Goodman) Violated my Constitutional
right to be present at a Critical stage of my trial,
those same transcripts will show Mr. Goodman also
stipulated to facts, Known to be untrue by him,
and that is; that page 2, was page 1 of the Police Report.
Also, the trial transcript does not accurately reflect
testimony at trial. The trial Court was made aware
of this fact, and told me to address the issue with
my appellate attorney, (see page J·40 of the transcripts),
Its extremely important that these issues be addressed
before the filing of my appeal brief.
Thank You

Sincerly
Robert F Miller A·50043

Exhibit "M"₂"

3-24-04

To, the Honorable Marcia B. Orr.
Re: Transcripts to Case No. 00C220576.

From: Robert Miller, No. A-50043
Taylorville Correctional Center
Taylorville, Illinois, 62568
P.O. Box 1000

I am in need of missing transcripts between the
dates of November, the 8th, of 2000, and June the
14th, of 2001, that's seven (7) months of missing
transcripts. Some where in those 7 months of
transcripts, my lawyer, Mr. Robert Goodman of the
Public Defenders Office, violated my Constitutional
right to be present at a critical stage of my trial
when he made; or agreed to a stipulation. without
me being present in the Court room, this stipulation
was conveniently done while you were being substituted
by another judge, and I was being held in the Courts
lock-up. Also missing is the Court date for Jan, 25, 2002.
These missing transcripts are extremely important for
me to properly prepare my Post-Conviction motion.
Also find inclosed Copies of pages from the transcripts
where there was problems with the transcripts before (trial'
and after trial, I continue to have problems with the way
the Court reporters put together the transcripts of my
trial.

P.S. See Copies of transcript and letter to Public
Sincerly, Defender (Robert Goodman). trying to get the transcript
Robert Miller and of the Court being informed
about the problem, before and
after sentencing.

Copy of letter sent to Appeal Counsel Exhibit "M"<sub>.3</sub>

72

From: Robert Miller
Reg. No. A-50043
Taylorville Correctional Center
P.O. Box 1000
Taylorville, Illinois 62568


To: Kari K. Firebaugh
Assistant Appellate Defender
RE: People v. Robert Miller
Indictment No. 00C220576


Dear Ms. Firebaugh:

I am in the process of filing a Post-Conviction on my case. I need for you
to send me a copy of the Information so I can verify that it is blank and
unsigned.

I had spoken to you regarding this fact before you filed my appeal brief,
and asked you to include it in my brief, and you informed me it would be
an issue best brought up in a Post-Conviction.

I am now doing the Post-Conviction. So please send a copy of the information
so that I may show the court that my copy as well as all others were blank.
I will appreciate your quick response to this letter, as it will be the only
issue delaying the filing of the Post-Conviction.


                                        Thank you for your help
                                        Sincerely,

                                        Robert F Miller

22nd day January, 2004

                    Maria Nachtwey
                    NOTARY PUBLIC

"OFFICIAL SEAL"
Maria Nachtwey
Notary Public, State of Illinois
My Commission Exp. 04/24/2007

Exhibit M3 73

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS by the State's Attorney of Cook Count through his Assistant State's Attorney, after first being duly sworn on h oath, deposes and swears that the foregoing TWO count(s) in this information has/have been read and subscribed by him as evidenced by his signature below and that the same in each count hereby incorporated is true.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Assistant State's Attorney

Subscribed and sworn (or affirmed) to before me . . . . . . . . . . . . ., 20. . . .
by . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Notary Public

The bail is fixed at . . . . . . . . . . . . . . . . . . . . . . . . . . .

JUDGE: . . . . . . . . . . . . . . . . . . . . . . . . . . .
Enter

—

**AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

Defendant raised the fact that
the information/indicment
was blank and unsigned in his
Post conviction Petition, but
the trial Court never addressed
addressed it. See Ex M3

M. F. N. T.          Exhibit N

Motion for New trial by David Meyerson

-74-

fitting that description.

In addition, the Evanston Police Department Offense/Incident Report reflects that a caller living at 2146 Sherman observed a male black wearing dark clothing fleeing westbound on Garfield "bleeding from the head." See Exhibit A, p. 2. There is no evidence of record which indicates that Defendant was bleeding from the head when he was arrested by the Evanston Police Department. This fact also calls into question whether the Evanston Police arrested the right person.

Crucially, Defendant was detained by the Evanston Police Department before the Evanston Police Department had made initial contact with the Alexanders. (R. B59-B61). Officer Lambseder was asked the following questions and he gave the following answers:

> Q: So, Officer Firth saw that you had detained Mr. Miller, went back to the Sherman address to talk to the witnesses; and you waited there at Leonard and Ridge?
>
> A: Yes.
>
> Q: Did you have contact with Officer Firth at that time who said come back to Sherman now?
>
> A: Yes.
>
> Q: And he had told you that he had talked to the witnesses?
>
> A: Yes.

Thus, the record establishes that the Evanston Police Department detained Defendant approximately one half mile from the crime scene pursuant to a radio call containing a very vague and general description of a "male black, short, dark clothing" even before the eyewitnesses were interviewed. In other words, the State's case against Defendant was developed after Defendant was taken into custody.

In addition, according to the Evanston Police Department Offense/Incident report, the

**Evanston Police Department**
**FIELD SUPPLEMENTARY REPORT**    EXHIBIT "O" 75

| 1 ORIGINAL OFFENSE | | 2 BEAT OF OCCURRENCE | 3 BEAT ASSIGNED |
|---|---|---|---|
| Residential Burglary | | 76 | 76 |

| 4 OFFENSE CHANGED TO | 5 DATE AND TIME OF THIS REPORT |
|---|---|
| | 10/8/00  1736 |

| 6 VICTIM   LAST    FIRST    MIDDLE    ADDRESS | CITY/STATE | (AREA) PHONE |
|---|---|---|
| Conlon, Mary Kay   2205 Sherman | Evanston | 869-6077 |

| 7 DATE OF ORIGINAL REPORT | 8 | 9 | ☐ SUBMITTED ☐ YES ☑ DNA |
|---|---|---|---|
| 10/8/00 | PAGE 2 OF 4 PAGES | C.E.F. ☐ CANCELLED ☐ NO | |

| 10 REPORT STATUS | 11 |
|---|---|
| ☐ FURTHER ACTION REQUIRED  ☑ NO FURTHER ACTION REQUIRED | ATTENTION: N/A |

ALL DESCRIPTIONS AND STATEMENTS ON THIS PAGE ARE APPROXIMATIONS OR SUMMATIONS UNLESS INDICATED OTHERWISE

**12 NARRATIVE / SUMMARY**

At this time, Officer Devroy advised that he observed a subject matching this description in the alley at 2100 Maple.

Officers continued to check the area, and Officer Lambeseder located a subject fitting the description at 2100 Ridge. (See Lambeseder's supplement) This subject was identified as Robert Lee Miller (dob/8-9-56)

Miller was transported to 2205 Sherman where he was positively identified by Richard and Jennifer Alexander as being the person who was inside of said residence and had fled the scene. They further stated that the owners of the house (Mary Kay Conlon) were out of town and that Miller did not belong at 2205 Sherman.

Miller was transported to the station where he was processed and placed into lock up.

R/O called evidence technician Roe #214 to the scene for processing while R/O continued to interview Richard and Jennifer Alexander.

| 13 REPORTING OFFICER | 14 SUPERVISOR APPROVING |
|---|---|
| B.V.  103 | |
| 15 REVIEW OFFICER | 16 INCIDENT NUMBER |
| | 00-40004 |

Revised 06/98

**EVANSTON POLICE DEPARTMENT**
**ARREST REPORT**

ARREST REPORT

00-40004

7. A.K.A. Miller, Robert Lee

8. ALIAS D.O.B. 08 / 09 / 56

9. PHOTO NO.

YEAR 56

8. ALIAS D.O.B. 04 / 09 / 56

15. SOC. SEC. NO. 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

18. DOCUMENT CONTROL NUMBER 1233217636

5. LOCATION OF ARREST: 2100 Ridge

6. DOCKET NO./CITATION NO.

10. RESIST — YES / NO  x
11. SOBER — YES / NO  x
12. DRUG USE — YES. UNK. NO  x
13. ARMED — YES x NO
14. WEAPON — USED / RECOVERED — NONE

7.A.KA. Miller, Bob

15. RESIDENCE ADDRESS: 1928 Jackson #3A  APT. NO.  CITY & STATE Evanston, IL  (AREA) PHONE unk

16. SECOND ADDRESS  APT. NO.  CITY & STATE  COUNTRY  (AREA) PHONE

22. PLACE OF BIRTH - CITY - STATE - COUNTRY  Ackerman, MS, USA

23. DRIVERS LICENSE NO.  None

17. PRECAUTIONS/NOTES: DNA

17A. GANG AFFILIATION: None

20. EMPLOYER - SCHOOL/CITY: Self Employed

21. OCCUPATION: Laborer

DNA

26. RACE B  27. SEX M  23. AGE 44  28. HT. 508  29. WT. 135

30. MARITAL STATUS S

24. SCARS, MARKS, DEFORMITY, TATOOS, DISABILITY - LOCATION/DESCRIBE: None

24A. AS ABOVE: none

25. FACIAL HAIR — BEARD / DK/LD MUSTACHE

31. BUILD med  32. HAIR blk  33. EYES bro  34. COMPLEX

33A. MAJOR STATE

34. COMPLEX

32. HAIR blk

33. EYES bro

24B. ACCENT - IMPED - NORMAL x

24C. HANDED R / L

33. GLASSES / CONTACTS / DNA

36. REASON FOR ARREST: Residential Burglary

38. VEHICLE OF ARRESTEE — OWNER / DRIVER / PASSENGER  YEAR  MAKE  BODY  COLOR  LIC. NO.  STATE  YEAR
DNA

40. FORMAL CHARGES-STATUTE-CLASS-COUNTS: 720 ILCS 5/19-3-1 Felony-1ct

42. PREVIOUS RECORD: Burglary, Assault, Larceny, Drugs

720 ILCS 5/19-4 Felony-1ct

41. TRIAL DATE - ROOM - KEY - TIME: 10-08-00

37. DATE: 10-08-00

43. LEADS - NCIC - WARRANTS: 10-16-00-106-1 0900 h

CLEAR / HIT — EXPLAIN Dept. of Correctio

Parole Violation

44. WITNESS TO ARREST: DNA  ADDRESS - CITY - STATE  (AREA) PHONE

46. FINAL DISPOSITION - DATE

45. ARRESTED WITH - LIST ADULT ONLY: DNA  ADDRESS - CITY - STATE  (AREA) PHONE

45. ARRESTED WITH - LIST ADULT ONLY: DNA  ADDRESS - CITY - STATE  (AREA) PHONE

47. COMPLAINANT: DNA  ADDRESS - CITY - STATE  (AREA) PHONE

47A. COMPLAINANT NAME: Conlon, Mary  ADDRESS - CITY - STATE  2205 Sherman Evanston, Il
(AREA) PHONE 869-6047

48. RELATIVE(S): Ofc. Firth #103  Refused  NAME  ADDRESS  AGE  RELATIONSHIP

49A. WARRANT ARREST: LOCAL / OUTSIDE
AGENCY
JUDGE
BOND
SHERIFF #
TOD
S D LOG
AGENCY DOCKET/CASE NO.

49. NARRATIVE SUMMARY:

Miller was arrested for Residential Burglary. See field general for details.

50. ARRESTING OFFICER - NAME AND STAR NO.: R. Lambeseder #186

50A. SIGNATURE

51. OFFICER(S) NEEDED IN COURT: Firth #103

52. SUPERVISOR

50B. SOC.

ASSIST. OFFICER - NAME AND STAR NO.: Devroy

ASSIST. OFFICER - NAME AND STAR NO.:

54. NOTATIONS, BOND, RECEIPT NO. DATE/TIME RELEASED, TOT, ETC.: 10-10-00 800 NOT STOLE  EPPD-156

55. REVIEW OFFICER: Flynn

56. □ HOLD DEFENDANT FOR: Detective Bureau

57. CODES - CLASSIFICATIONS - UCR
PRIMARY:

57A. SECONDARY

52. F.P. TAKEN BY

CORRECT CARBON COPIES

REV 5/90 6/88

COOK COUNTY Exibit 77

# OFFICE OF THE PUBLIC DEFENDER

## REPLY TO INVESTIGATION REQUEST

(s) Name Robert Miller

Res. Burglary

ted by Goodman

E Report 4/13/01

igator Assigned: Kogut

of Report: Pending

ise discussed with Attorney

Case No. 00C2 20576

Return Date 5/3/01

Date 4/6/01

Judge Orr

Date Assigned 4/6/01

Complied

### SUMMARY OF INVESTIGATION

In response to the request to take photos
f the Leonard/Ridge area in Evanston, the
ollowing is submitted:

Summary:

On 4/12/01, this investigator accompanied
PD Goodman to the corner of Leonard and
idge in Evanston. Upon arrival, five (5) photos
ere taken. Those photos were turned
ver to APD Goodman.

This investigation is closed until further
tice. mx

Exhibit 78

# COOK COUNTY

## OFFICE OF THE PUBLIC DEFENDER

### REPLY TO INVESTIGATION REQUEST

Client(s) Name  Robert Miller

Case No.  00220576

Charge  Res. Burglary

Return Date  6/14/01

Requested by  Goodman

Date  6/14/01

Date of Report  6/26/01

Judge  Orr

Investigator Assigned:  Kogut

Date Assigned  6/14/01

Status of Report:  Pending _____  Complied _____

Date case discussed with Attorney _____

### SUMMARY OF INVESTIGATION

As per the request to measure the distance from 2205 Sherman to Leonard and Ridge, the following is submitted:

On 6/14/01, this investigator proceeded to 2205 Sherman and determined the following distances with the well wheel:

315.6 ft from 2205 Sherman to the corner of Sherman and Gaffield,

20+2 ft from Sherman and Gaffield to the alley,

566.8 ft. through the alley to Gaffield and Maple,

3432 ft. from Gaffield & Maple to Maple,

251.11 ft down Maple, and

565.9 ft. to Leonard and Ridge.

Summary:

The distance from 2205 Sherman to Leonard and Ridge is approximately 2245 ft.

Ridge

451.9ft.

Apartmen

251.11ft.

Maple

Gqffield+Maple

343.2ft.

Alley

178ft.

Alley

155ft.

Alley

233.8ft.

Gqffield

201.8ft.

Gqffield

316.6ft.

Sher man

105194

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2007


Mr. Robert Miller
Reg. No. A-50043
Taylorville Correctional Center
P. O. Box 900
Taylorville, IL 62568

No. 105194 - People State of Illinois, respondent, v. Robert
            Miller, petitioner.  Leave to appeal, Appellate
            Court, First District.


The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on January 4, 2008.