File Date: _June 11, 2008_

Case No: _08cv 23_

ATTACHMENT # _1_

EXHIBIT _C through H_

**TAB (DESCRIPTION)**

_____

No. 1-02-0504

### IN THE

### APPELLATE COURT OF ILLINOIS

### FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 C2 20576. |
| | ) | |
| **ROBERT MILLER,** | ) | Honorable |
| | ) | Marcia B. Orr, |
| Defendant-Appellant. | ) | Judge Presiding. |

### REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

RECEIVED
CRIMINAL APPEALS

JUL 3 1 2003

309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

MICHAEL J. PELLETIER
Deputy Defender

KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT C

No. 1-02-0504

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| -vs- | ) | No. 00 C2 20576. |
| ROBERT MILLER, | ) | Honorable Marcia B. Orr, |
| Defendant-Appellant. | ) | Judge Presiding. |

**REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT**

I.  **Because the Identification of Mr. Miller was Vague and Doubtful, the State Failed to Prove Mr. Miller's Guilt of Residential Burglary and Possession of Burglary Tools Beyond a Reasonable Doubt.**

The State maintains that the Alexanders' identification of Mr. Miller and the circumstances surrounding Mr. Miller's arrest were sufficient to prove his guilt of residential burglary and possession of burglary tools beyond a reasonable doubt. (St. Br. 13,21). However, as Mr. Miller contends in his original brief, when the Alexander's identifications of Mr. Miller are considered in light of their inadequate opportunity to view the offender, the vague description they provided to the police, and the improperly suggestive nature of the identification procedure itself, the Alexanders' identifications of Mr. Miller are vague and doubtful, and thus unreliable. (Def. Br. 13).

The State cites several cases in its brief which are distinguishable from the present case. The State cites *People v. Herrett*, 137 Ill. 2d 195, 561 N.E.2d 1 (1990), *People v. Moore*, 264 Ill. App. 3d 901, 637 N.E.2d 1115 (1st Dist. 1994) and *People v. Negron*, 297 Ill. App. 3d 519, 697 N.E.2d 329 (1st Dist. 1998), for the proposition that an eyewitness' opportunity to view the offender for a few seconds is sufficient to sustain a conviction. (St. Br. 18). The State cites to *People v. Herrett* for the additional proposition that an eyewitness' description does not have to be completely accurate, and to *People v. Negron* to support the argument that any discrepancies concerning facial features and physical characteristics in the eyewitness' description of the offender goes to its weight alone. (St. Br. 19).

In *Herrett*, the eyewitness viewed the defendant's face for a few seconds just before the defendant placed tape over his eyes. *Herrett*, 137 Ill. 2d at 204. The eyewitness identified the defendant from a photo array and at trial. *Id* at 204. In *Moore*, the two eyewitnesses, one of whom was drunk, were standing under a viaduct and observed the defendant for a matter of seconds as he exited the crime scene. *Moore*, 264 Ill. App. 3d at 903-904,909. Both eyewitnesses identified the defendant on three separate occasions, from a photo array, a lineup, and then at the trial. *Id* at 904. In *Negron*, two eyewitnesses identified the defendants after viewing them for only a few seconds during a drive by shooting. *Negron*, 297 Ill. App. 3d at 523,526,530. Both eyewitnesses picked the defendant and his co-defendant out of a lineup and then identified them at the trial, while one of the witnesses also picked the two men out of a photo array. *Id* at 523-524,526.

*Herrett*, *Negron*, and *Moore* are not controlling, however, because the facts in the present case can be distinguished in one important respect. Unlike the eyewitnesses in *Herrett*, *Negron*,

-2-

and *Moore* whose initial identifications of the defendants were made after viewing the defendant in a photo array or a lineup and in some cases both, in the present case, Mr. Miller's identification was the product of a highly suggestive one man show up where Miller was handcuffed, standing in front of a marked squad car, and in the presence of two police officers. *Herrett*, 137 Ill. 2d at 204, *Negron*, 297 Ill. App. 3d at 523-524,526, *Moore*, 264 Ill. App. 3d at 904 (R. 87-88,43-44,60,70,101). In addition, the Alexanders made their identifications of Mr. Miller from sixty feet away, inside an enclosed porch, and in each other's presence. (R-26,45,71,102,108-111).

Since Mr. And Mrs. Alexanders' identifications of Mr. Miller were unreliable, and the remaining evidence presented against Mr. Miller at the trial was insufficient to sustain his conviction, Mr. Miller's conviction must be reversed.

II.     **The Trial Court Erred When it Denied Mr. Miller's Motion For a New Trial,**
        **Because Miller's Trial Counsel Provided Ineffective Assistance When He Failed to**
        **Make a Motion to Suppress the Identification Evidence.**

In its brief, the State contends that the trial court did not abuse its discretion when it denied Mr. Miller's motion for a new trial based on trial counsel's ineffective assistance, because trial counsel's failure to make a motion to suppress the identification evidence was not objectionably unreasonable and the outcome of the trial would not have been different. (St. Br. 23).

To support its argument that counsel's representation was not objectionably unreasonable the State relies on the factual similarities of *People v. Kinzer*, 214 Ill. App. 3d 790, 574 N.E.2d 155 (1st Dist. 1991), where the eyewitness identified the defendant during two one man show ups, which took place at the scene while the defendant was sitting in a squad car and at the police station while defendant was placed alone in an adjoining room. *Kinzer*, 214 Ill. App. 3d at 792-793. (St. Br. 23-24). The court noted that while a lineup might have been a better choice, the show up identification of the defendant was permissible. *Id* at 794. However, in finding that trial counsel was not ineffective for failing to challenge the identification evidence, the court in *Kinzer* placed great weight on the fact that counsel had thoroughly cross-examined both the eyewitness and the responding officer concerning the identification and the identification procedure. *Id* at 795-796. In its brief, the State makes a similar contention that the trial record as a whole demonstrates that Miller's counsel provided effective assistance, because he vigorously cross-examined the witnesses, used police reports for impeachment, and made objections during the trial. (St. Br. 24).

-4-

However, contrary to the State's assertions and as pointed out during Mr. Miller's motion for new trial, trial counsel in the present case failed to utilize several pieces of information, which he had in his possession prior to and during the trial concerning the Alexanders' identifications of Mr. Miller and the events surrounding the incident. First, the police incident report described the lighting outside at the time the Alexanders made their identifications of Mr. Miller as dusk, while the Alexanders both testified at the trial that it was light outside. (C-10-14,R-16,49). Second, Officer Lambaseder testified that the Alexanders' initial description of the offender was male, black, short, and wearing dark clothing. (R-81). The police incident dispatch detail report indicated, however, that the Alexanders actually described the offender as male, black, short, wearing a black knit cap and clothing that was "not real dark." (C-16). Third, the Alexanders' initial descriptions of the offender were vague and failed to include any distinguishing characteristics, such as facial hair, while the police incident report, the arrest report, and an arrest photo of Mr. Miller in trial counsel's possession, all show that Miller had a noticeable goatee on the day of the burglary. (C-10-17).

Fourth, the police incident report indicated that a man matching the Alexanders' initial description of the offender who was running in the direction last reported by the Alexanders was described as bleeding from the head, and there was no evidence presented at the trial that Mr. Miller's head was bleeding. (C-10-14). Fifth, the evidence technician's report stated that no tool marks had been found at the scene of the burglary. (C-19). However, Officer Firth testified that he observed pry marks on the window frame, and the record shows that the trial court relied on Firth's testimony when it stated that the pry bar and two Swiss Army knives found in Mr. Miller's possession "could have been used in the burglary." (R-86-87,107, 171) (St. Br. 16).

-5-

Finally, the police incident dispatch report stated that Mrs. Alexander reported the burglary at 5:36 p.m., while the arrest report stated that Mr. Miller was arrested at Leonard and Ridge at 5:36 p.m., and the reply to the Public Defender's investigation request stated that the distance between the scene of the burglary and Leonard and Ridge is 2,245 feet, or roughly, a half of a mile. (C-16-17,20-21). Had counsel utilized this information it would have shown that Mr. Miller would have had to travel a half of a mile in under a minute to make his participation in the offense plausible and would have further supported Mr. Miller's innocent explanation for being in the area that day.

Thus, where the primary evidence presented against Mr. Miller at trial was the identification testimony of the Alexanders which was the product of a highly suggestive one man show up, the defense was mistaken identification, and the record as a whole does not demonstrate that Miller's counsel provided effective assistance, it cannot be said that trial counsel's failure to make a motion to suppress the identification evidence was objectionably reasonable.

The State also maintains that the outcome of Mr. Miller's trial would not have been different had the motion to suppress the identification evidence been granted by the court. (St. Br. 24-25). The State concedes that the factors which should be used to determine the reliability of an eyewitness' identification are those which were set out by the court in *Neil v. Biggers*, 409 U.S. 188, 189, 93 S. Ct. 375 (1972): (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the offender; (4) the level fo certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Neil v.

Biggers, 409 U.S. at 199-200. (St. Br. 24-25). However, as pointed out in *Manson v. Braithwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), the corrupting effect of the suggestive identification itself should also be weighed against these factors. *Id* at 114.

In the present case, when the Alexanders' identifications of Mr. Miller are considered under the totality of the circumstances, the identifications cannot be found to be reliable or to have a basis independent from the suggestiveness of the initial identification. As the defendant contends in his original brief, the Alexanders had an inadequate opportunity to view the offender because the entire incident took only seconds and they were frightened and distracted by the events taking place. (Def. Br. 26-27). The initial descriptions the Alexander's provided to the police were vague and conflicting and failed to include any distinguishing characteristics, such as facial hair, when it was clearly established that on the day of the burglary Mr. Miller had a noticeable goatee. (Def. Br. 27-28). Finally, the certainty the Alexanders displayed when making their identifications of Mr. Miller was undermined by the unnecessarily suggestive circumstances surrounding the show up identification itself, where Mr. Miller was viewed by the Alexanders while standing in front of a marked squad car, handcuffed, and in the presence of three police officers. (Def. Br. 28-29).

Thus, the motion to suppress the identification evidence would have had a reasonable likelihood of success, and since the primary evidence presented against Mr. Miller at trial was the identification testimony of the Alexanders, the outcome of the trial would have been different. Therefore, the trial court erred when it failed to grant Mr. Miller's motion for a new trial based on his trial counsel's ineffective assistance and Miller's conviction should be reversed and remanded for a new trial, or in the alternative, this case should be remanded for a hearing on the

-7-

motion to suppress.

III.  **The Mandatory Class X Sentencing Provision of 730 ILCS 5/5-5-3(c)(8) Violates the Right of a Defendant to Due Process and Trial by Jury Because it Subjects the Defendant to Increased Punishment Without Notice or a Jury Finding Upon Proof Beyond a Reasonable Doubt of the Facts Qualifying the Defendant For Sentencing as a Class X Offender.**

Robert Miller rests on his opening brief as to this issue.

IV. **This Case Should be Remanded for the Trial Court to Properly Admonish Mr. Miller Pursuant to Supreme Court Rule 605(a), Because the Court Failed to Advise Mr. Miller of His Right to File a Written Motion to Reconsider Sentence, and That This Motion was Necessary to Preserve Issues for Appellate Review.**

In its brief, the State concedes that the trial court failed to specifically advise the defendant that he had the right to file a motion to reconsider his sentence and that this motion was necessary to preserve any sentencing issues he wished to raise on appeal. (St. Br. 32). However, the State contends that Mr. Miller waived this issue. (St. Br. 31-33). In addition, the State argues that the court substantially admonished Mr. Miller of his right to appeal any errors in his sentence or sentencing hearing when it advised him that in order to "appeal the decision here," he must file a notice of appeal within 30 days. (St. Br. 31-33). Both arguments are meritless.

Mr. Miller's failure to object to the trial court's erroneous admonishments and include this error in a post-trial motion should not bar relief to Mr. Miller. The purpose of requiring the trial court to provide 605(a) admonishments is to ensure that the court makes the defendant aware of all of his appellate rights. Where the court fails to advise the defendant in accordance with Rule 605(a), as was the case here, a defendant cannot be expected to know what his appellate rights are, and thus, is in no position to object to the court's failure to advise him of them.

The trial court's admonishments in the present case are inadequate for several reasons. First, the trial court's admonishments make no reference whatsoever to a motion to reconsider sentence. Supreme Court Rule 605(a) requires that, at the time of imposing sentence, the trial

court admonish the defendant of his right to file a written motion to reconsider sentence in that court. S. Ct. R. 605(a)(3)(B) (West 2002). In the present case, the trial court failed to advise Mr. Miller that he had the right to file a written motion to reconsider sentence.

Rule 605(a) further states that the trial court must advise the defendant that the motion to reconsider sentence must be filed with the court within 30 days after he is sentenced and prior to the appeal of his conviction. S. Ct. R. 605(a)(3)(B). Although the trial court advised Mr. Miller that in order to "pursue an appeal here," he must file a notice of appeal within 30 days, the court failed to tell Mr. Miller that a written motion to reconsider sentence must also be filed with the Clerk of the Court within 30 days after he was sentenced and prior to taking an appeal.

In addition, the trial court completely failed to admonish the defendant that any issue not included in the motion to reconsider sentence would be waived on appeal. Rule 605(a) requires the trial court to admonish the defendant that he must file a written motion to reconsider sentence in order to preserve any issues relating to his sentence for appellate review. S. Ct. R. 605(a)(3)(C) (West 2002). Contrary to the State's assertion, listing sentencing errors in the notice of appeal is insufficient, because in order to preserve those errors for appellate review, a defendant must include them in the motion to reconsider sentence. As a result, Mr. Miller failed to file a motion to reconsider his sentence.

The present case is similar to *People v. Mazar*, 333 Ill. App. 3d 244, 755 N.E.2d 135 (1st Dist. 2002), where the trial court failed to admonish the defendant of his right to file a motion to reconsider sentence and that this motion was necessary in order to preserve sentencing errors for review. *Mazar*, 333 Ill. App. 3d at 254. In *Mazar*, this Court held that fundamental fairness required the case be remanded for proper admonishments and to give the defendant the

-11-

opportunity to attack his sentence, because the defendant was misinformed due to the trial court's failure to properly advise him in accordance with Supreme Court Rule 605(a). *Mazar*, 333 Ill. App. 3d at 254-259. In its brief, the State contends that *Mazar* is distinguishable from the present case, because unlike the defendant in *Mazar*, Mr. Miller was represented by counsel. (St. Br. 33). However, nothing in the language of Rule 605(a) nor the court's reasoning in *Mazar* makes a distinction between defendants that are *pro se* and defendants represented by counsel.

Although the court informed Mr. Miller that in order to "pursue an appeal here" he was required to file a notice of appeal within 30 days, it did not make any reference whatsoever to a written motion to reconsider sentence, that this motion must be filed within 30 days of his sentencing and prior to the appeal of his conviction, and that this motion was necessary in order to ensure that any sentencing issues he wished to raise on appeal were preserved. (R-250-251).

Thus, the admonishments in the present case did not substantially advise Mr. Miller of his appellate rights in accordance with Supreme Court Rule 605(a), and like *Mazar*, fundamental fairness requires that this Court remand the case to the trial court for proper admonishments and to give Mr. Miller the opportunity to attack his sentence.

-12-

V.   **The Mittimus Must be Amended to Reflect a Total of 503 Days of Credit Against the Sentence Where Mr. Miller's Credit was Erroneously Computed as 502 Days.**

The State concedes error on this issue.  Therefore, no reply is necessary and Mr. Miller rests on the arguments set forth in the original brief.

## CONCLUSION

For the foregoing reasons, Robert Miller, Defendant-Appellant, respectfully requests that this Court grant the following alternative forms of relief:

1. Pursuant to Argument I, this Court should reverse Mr. Miller's conviction;

2. Pursuant to Argument II, this Court should reverse Mr. Miller's conviction and remand this case for a new trial, or in the alternative, remand this case for a hearing on the motion to suppress the identification evidence;

3. Pursuant to Argument III, this Court should vacate Mr. Miller's sentence and remand this case for resentencing;

4. Pursuant to Argument IV, this Court should remand this case for proper admonishments pursuant to Supreme Court Rule 605(a);

5. Pursuant to Argument V, this Court should order the Mittimus amended to reflect 503 days of sentence credit.

Respectfully submitted,


MICHAEL J. PELLETIER
Deputy Defender


KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

-14-

**NOTICE**

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
rehearing or the disposition of
the same.

*Firebaugh*

FIRST DIVISION
December 8, 2003

# FILED

No. 1-02-0504

SEP 23 2005

~~DOROTHY BROWN~~
CLERK OF CIRCUIT COURT

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 00 MC2 004729 |
| | ) | |
| ROBERT MILLER, | ) | Honorable |
| | ) | Marcia B. Orr, |
| Defendant-Appellant. | ) | Judge Presiding. |

### O R D E R

Defendant, Robert Miller, was convicted after a bench trial of residential burglary and possession of burglary tools and sentenced to 18 years in prison. 720 ILCS 5/19-3 (West 2002); 720 ILCS 5/19-2 (West 2002). Defendant challenges his convictions contending that the witnesses' identification of him as the offender was vague and doubtful to the point where there is a reasonable doubt as to his guilt, and claiming that he received ineffective assistance of counsel because his attorney did not seek to suppress the identification. Defendant challenges his sentence under <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) on the grounds that he was not notified in his indictment that his prior convictions would be used against him, and that his prior convictions were not proved beyond a reasonable doubt at trial.

EXHIBIT D

C0002

Case 1:08-cv-00023    Document 26-2    Filed 06/11/2008    Page 18 of 97

1-02-0504

He also claims the trial court denied him credit for one day
spent in jail while awaiting trial. Finally, defendant requests
a remand to the trial court for proper admonishment as to the
necessity of filing a postsentencing motion to preserve his
sentencing issues for review.

The victim, two witnesses, two police officers, two
investigators and defendant testified at defendant's trial. The
following facts were elicited from their testimony.

Sometime around 5:30 p.m. on October 8, 2000, Jennifer
Alexander looked over at her neighbor's back porch, on Sherman
Avenue in Evanston, and thought she saw movement. She knew that
it could not be her neighbors as they were out of town; she and
her husband were taking care of the neighbors' pets in their
absence. Mrs. Alexander called out to her husband, Richard
Alexander, to come with her to investigate.

The Alexanders entered the porch and noticed things amiss.
A wicker table appeared to have been moved. One of the house
windows was open, and the screen covering was sliced open. The
door leading into the house was also open.

Mrs. Alexander called out, "Hello." After receiving no
response, she and her husband began to back away off the porch.
She then called out that she was calling the police.

A few moments later, a shorter, older, African-American man,
wearing dark clothes and a stocking cap came running out the back

- 2 -

C0003

1-02-0504

door, yelling and waving his hands over his head. As the man ran by her, Mrs. Alexander fell down the stairs leading up to the porch. Mr. Alexander, who had started to walk back to his house, turned around on hearing the commotion to see the man emerging from the porch, and his wife falling.

At that point, the man grabbed a bicycle leaning against the side of the porch. Mr. Alexander moved in on the man. Apparently fearing Mr. Alexander, the man walked backward with the bike toward the street in front of the house, facing Mr. Alexander the entire time. However, as he came to the fence surrounding the home, he caught the bike on the gate and became stuck. By this time, Mrs. Alexander was standing and observing the struggle at the fence. Mr. Alexander tried to jump over or around the bike, but missed, colliding with it instead. After their fall, both the man and Mr. Alexander ended up sitting on the ground, again facing each other. Sometime during all of this, the man lost his stocking cap, which fell to the ground near the bike.

The man gave up on his bike and fled, first south on Sherman Avenue and then west on Garfield through a front yard. The Alexanders called the police. The police dispatcher, based on the description provided by the Alexanders, radioed officers to be on the lookout for a short, black man in dark clothing, and advised that he was traveling west from Sherman Avenue.

- 3 -

C0004

1-02-0504

Subsequently, another police call went out indicating that the man continued to run west, and was now around Maple Street.

Upon hearing the radio calls, Officer Lambesder realized that the man was heading in his direction. A few minutes later, Officer Lambesder saw defendant emerge from between two buildings on Ridge Avenue. Defendant had been running, but proceeded to walk when he saw the police car. Defendant matched the Alexanders' description of the offender.

Officer Lambesder called out for defendant to come to him, which he did. Defendant was sweaty and breathing heavily. Officer Lambesder performed a precautionary frisk of defendant that revealed his possession of a pry bar and two Swiss Army knives. He subsequently took defendant back to the crime scene for a showup with the Alexanders. The Alexanders viewed defendant together from approximately 60 feet away and recognized him as the person they saw coming out of their neighbor's home.

At defendant's trial, the Alexanders again identified defendant as the man they saw at their neighbor's home. Mrs. Alexander explained that when the man ran by her, he came within two feet of her. She said that the reason she fell down the porch stairs was because she was focusing her attention on him. She resisted defense counsel's suggestion that she saw the man for only a brief time. She described her identification of defendant as the man as "instant recognition." Mr. Alexander

C0005

1-02-0504

testified that he was never more than 20 feet away from the man,
and ultimately was only separated from him by the length of the
man's bike, somewhere between six to eight feet away. When asked
if the person he saw at the showup was the man he saw at his
neighbor's, Mr. Alexander answered yes, "very definitely."

Mary Kay Conlon, the victim, testified that she had been
away on vacation at the time of the burglary. She found out
about the burglary when the police called her in France from her
home. On her return to Evanston, she discovered that her bedroom
had been ransacked. Contents from her dresser drawers had been
dumped into a duffel bag that was left at the top of the stairs
leading to the hall by her bedroom. She testified that she did
not know defendant and never gave him permission to be in her
house.

Defendant testified in his own defense. He claimed that he
had been working at a home nearby on Foster Street and was going
to the Foster Street el train station, but that he saw rubbish in
an alley and decided to see what he could scavenge. He explained
that he found himself on Ridge Avenue while trying to get back to
his employer's home, to see if he could get a ride to bring some
of his scavenged goods back. Defendant did admit to crossing
between two houses to get to Ridge Avenue. He claimed that the
police took him back to the crime scene and put the offender's
cap on his head, even though he told them it was not his, and

- 5 -

1-02-0504

then brought him before people he did not know for
identification.  (The Alexanders denied that defendant wore a cap
when they identified him).  He said he told the police that the
bike he owned was chained at his employer's home.  A detective
who had interviewed defendant testified that he did find a bike
chained at defendant's workplace, but that defendant never
explained that his presence on Ridge Avenue was a result of
scavenging rubbish.

At the conclusion of the evidence the trial court found
defendant guilty.  The court credited the testimony of the
Alexanders, indicating that, from the description of all the
events that happened in defendant's presence, they could have
been in contact with defendant for minutes, not just seconds.
The court discounted defendant's testimony, finding his presence
on Ridge Avenue, and his crossing over private property to get
there, more consistent with a route of escape from Sherman
Avenue, than as means of returning to Foster Street.

Defendant moved for a new trial, setting forth most of the
arguments he does in this appeal.  The trial court denied the
motion.  The court again credited the testimony of the
Alexanders, and noted that the trial testimony suggested adequate
light for a positive identification.  As to the claims of
ineffective assistance of counsel, the court praised the
performance of the public defender and suggested that any motion

- 6 -

1-02-0504

to suppress would have been frivolous.

After denying defendant's motion for a new trial, the court sentenced defendant to 18 years in prison as recommended by the State based on defendant's previous convictions making his current offense a Class X felony under Section 5-5-3(c)(8) of the Unified Code of Corrections. 730 ILCS 5/5-5-3(c)(8) (West 2002). After informing defendant of his sentence, the court admonished him of his right to appeal to this court, but did not notify defendant of the need to file a motion to reconsider his sentence to preserve those issues for review, and no sentencing motion was filed in the circuit court.

We turn first to defendant's challenge to the sufficiency of the evidence against him, based on the allegedly vague and doubtful identification of him as the offender.

To determine whether sufficient evidence was presented to sustain a conviction, a reviewing court must consider all the evidence in the light most favorable to the State, and then determine if a rational trier of fact could have concluded that the State proved the elements of the crime charged beyond a reasonable doubt. People v. Cox, 195 Ill. 2d 378, 387 (2001). A reviewing court will not retry the defendant. People v. Green, 322 Ill. App. 3d 747, 754 (2001). In a bench trial, the trial judge serves as the trier of fact, determining the credibility of the witnesses, the weight to be given to their testimony, and

- 7 -

1-02-0504

resolving any conflicts in the evidence presented.  People v.
Slim, 127 Ill. 2d 302, 307 (1989). Although the determinations of
the trier of fact are not conclusive, they are entitled to great
deference, so that a conviction will only be overturned where the
evidence "is so unreasonable, improbable, or unsatisfactory as to
justify a reasonable doubt of that defendant's guilt."  People v.
Ortiz, 196 Ill. 2d 236, 259 (2001).

     The State must prove the identity of the person who
committed the charged offense beyond a reasonable doubt.  People
v. Lewis, 165 Ill. 2d 305, 356 (1995).  A single witness
identification of the accused as the person committing the crime
may be sufficient proof when the witness viewed him under
circumstances permitting a positive identification.  Lewis, 165
Ill. 2d at 356.  But a conviction cannot stand when a witness'
identification of the accused as the criminal perpetrator is
vague and doubtful.  People v. Ash, 102 Ill. 2d 485, 494 (1984).
In People v. Slim, our supreme court said that in assessing
identification testimony we should use the factors set out in
Neil v. Biggers, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375
(1972): (1) the opportunity the witness had to view the criminal
at the time of the crime; (2) the witness' degree of attention;
(3) the accuracy of the witness' prior description of the
criminal; (4) the level of certainty demonstrated by the witness
at the identification confrontation; and (5) the length of time

- 8 -

C0009

1-02-0504

between the crime and the identification confrontation. <u>Slim</u>,
127 Ill. 2d at 307-08. However, all circumstantial facts should
be considered to determine the sufficiency of the identification.
<u>People v. Young</u>, 269 Ill. App. 3d 120, 123 (1994).

As to the Alexanders' opportunity to observe the offender,
the circuit court found that the Alexanders had ample time to
make an identification of defendant as the offender. From our
review of the record, we find nothing to justify disturbing that
finding. Defendant highlighted that the Alexanders were afraid
and had never seen the offender before. He attempted, but failed
to elicit that they only had seconds to see the offender while
they were falling down themselves. He argued to the court that
there was poor lighting that day. However, the trial court chose
to believe the Alexanders' confident testimony that they were
focused on the offender, and he on them, for a good deal of time
in adequate light. Credibility determinations are the province
of the trial court in a bench trial. <u>Slim</u>, 127 Ill. 2d at 307.
We find no error in the trial court concluding that the
Alexanders had an ample opportunity to identify defendant as the
offender.

We likewise find no error in the trial court crediting the
Alexanders' degree of attention, the second <u>Neil</u> factor. Mrs.
Alexander specifically testified that she focused her attention
on the offender. She explained that she was not distracted from

- 9 -

C0010

the offender because of her fall, but rather fell because she was looking at the offender instead of where she was walking. Mr. Alexander testified that, when he first saw the offender, he simultaneously saw his wife falling. However, Mr. Alexander went on to explain that, after that moment, he pursued the offender, with the offender staring back at him. This testimony suggests that during the time of their observation, the Alexanders were sufficiently focused on the offender to make a positive identification.

Defendant complains that the Alexanders' description of the offender was general, and did not contain notable features he had, such as his goatee. Admittedly, the description of the offender as a short, black man in dark clothing was general, but not to the point where the trial court had to discredit the Alexanders' subsequent identification of defendant. The fact that a victim gives only a general description of an offender to the police does not automatically invalidate a subsequent identification. People v. Sanders, 87 Ill. App. 3d 708, 712 (1980) (victim claimed to describe assailant only as tall, with a hair a bit longer than his own, and wearing a long coat; police officer testified that he received description of a tall man wearing a dark gray coat; subsequent identification held sufficient for conviction). Discrepancies and omissions as to the physical characteristics of an offender in a victim's

- 10 -

1-02-0504

description to police are not fatal, but only go to the weight of the victim's testimony. Slim, 127 Ill. 2d at 308. They do not, alone, create reasonable doubt if the victim makes a positive identification of the accused. Slim, 127 Ill.2d at 308. The Alexanders' description of the offender was sufficient for the trial court to conclude that the Alexanders had described the defendant to the police under the third Neil factor.

The Alexanders were certain of their identification of defendant, satisfying the fourth Neil factor. Mrs. Alexander described a feeling of "instant recognition" when defendant was brought before her. Mr. Alexander made a similarly confident statement. Defendant contends that the Alexanders' confidence is incredible as they identified him at the show-up from roughly 60 feet away. However, Mrs. Alexander specifically testified that she did not need to get closer to him to recognize him. There is no testimony in the record about any defects in the Alexanders' vision. Nothing in the record shows that the Alexanders were incapable of recognizing defendant from only 20 yards away. Therefore, we find nothing in the record to take away from the Alexanders' confidence in their identification of defendant as the offender.

Finally, the Alexanders' identification of defendant came within a short time of the offense, satisfying the fifth Neil factor. Mrs. Alexander testified that she identified defendant

- 11 -

1-02-0504

only 20 minutes after she encountered the offender.  Mr.
Alexander testified that he identified the defendant only 20
minutes after struggling with the offender.  The Alexanders'
memories would have been fresh after such a short period of time.

Based on our analysis under Neil, we conclude that the
Alexanders' identification of defendant as the offender was not
vague and doubtful.  Rather, our analysis suggests that their
identification of defendant was reliable.  We find nothing
surrounding defendant's identification that would require a
rational fact finder to conclude that he had not been proven
guilty beyond a reasonable doubt.

Defendant next claims that the trial court abused its
discretion by not granting him a new trial because his attorney
provided constitutionally deficient assistance by not moving to
suppress his identification.  We disagree.

To prevail on a claim of ineffective assistance of counsel,
a defendant must show that his attorney committed such serious
errors as to fall beyond an objective standard of reasonableness,
and that, without those objectively unreasonable errors, there
was a reasonable probability that his trial would have resulted
differently.  Strickland v. Washington, 466 U.S. 668, 687-694, 80
L. Ed. 674, 104 S. Ct. 2052, 2064-2068 (1984); People v.
Albanese, 104 Ill. 2d 504, 526 (1984).

A defendant is entitled to competent, not perfect counsel.

C0013

1-02-0504

People v. Odle, 151 Ill. 2d 168, 173 (1992). In reviewing an attorney's actions, we should show deference to the attorney's decisions. Strickland, 466 U.S. at 689. There is a strong presumption that an attorney's actions fall within the wide range of choices that could be considered adequate counsel. Strickland, 466 U.S. at 689. Mistakes in strategy or tactics do not, alone, amount to ineffective assistance of counsel, nor does the fact that another attorney might have handled things differently. People v. Palmer, 162 Ill. 2d 565, 476 (1994). Usually, the decision whether or not to file a motion is a matter of strategy (People v. Bryant, 128 Ill. 2d 448, 458 (1989)) and counsel's strategic choices are "virtually unchallengeable." Palmer, 162 Ill. 2d at 476.

A reasonable probability that a defendant's trial would have resulted differently without attorney errors "is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In determining whether a defendant has established his attorney's unreasonable errors and the reasonable probability of a different result, a reviewing court must "consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695; People v. Follins, 196 Ill. App. 3d 680, 687 (1990) (whether attorney's failure to make a motion to suppress is ineffective assistance "depends on the circumstances of each case.").

- 13 -

1-02-0504

To determine if defense counsel's alleged error in failing
to attempt to suppress the identification of defendant would have
made a difference in the end, we must consider the circumstances
when a court will suppress an identification.  Identifications
will be suppressed when they violate a defendant's right to due
process of law, that is when the method of confrontation employed
by the police was "impermissibly suggestive [so] as to give rise
to a very substantial likelihood of irreparable
misidentification."  Simmons v. United States, 390 U.S. 377,
385,19 L. Ed. 2d 1247, 88 S. Ct. 967, 971 (1968); see also People
v. Blumenshine, 42 Ill. 2d 508, 511 (1969).  However, the use of
a suggestive confrontation procedure, alone, will not amount to a
violation of due process if there are other indicia of
reliability surrounding the identification.  Manson v.
Brathwaite, 432 U.S. 98, 114, 53 L. Ed. 2d 368, 97 S. Ct. 2242,
2253 (1977).  Whether there are such indicia of reliability is
determined by analyzing the factors set out in Neil v. Biggers,
previously mentioned in this opinion.   Neil, 409 U.S. 188 at
199-200 (opportunity of the witness to view the criminal at the
time of the crime, the witness' degree of attention, etc.);
accord People v. Santiago, 53 Ill. App. 3d 964, 968-69 (1977).
Thus, a reviewing court should look to the totality of the
circumstances to determine whether an identification comported
with the requirements of due process, weighing the indicia of

- 14 -

1-02-0504

reliability against the "corrupting effect of the suggestive
identification itself." Manson, 432 U.S. at 114.

Defendant contends that the manner of confrontation arranged
by the police was unnecessarily suggestive as they employed a
showup, rather than a lineup, and presented him to the Alexanders
in handcuffs, surrounded by police officers. Courts acknowledge
that there is a degree of suggestiveness to the showup procedure.
See, e.g., Stovall v. Denno, 388 U.S. 293, 302, 18 L. Ed. 2d
1199, 87 S. Ct. 1967, 1972 (1967); People v. McKinley, 69 Ill. 2d
145, (1977) ("This court has recognized the suggestiveness
inherent in the one-man showup."). However, neither the United
States Supreme Court, nor any court in Illinois, has ever held
that the use of the showup procedure, without more, is
impermissibly suggestive. See, e.g., People v. Simmons, 390 U.S.
at 384 ("We are unwilling to prohibit its employment *** as a
matter of constitutional requirement."); Neil, 409 U.S. at 198
("the admission of evidence of a showup without more does not
violate due process."); McKinley, 69 Ill. 2d at 151-52 (Court
affirms identification of defendant through showup). Indeed,
there are benefits to law enforcement and to suspects in the
show-up procedure: innocent suspects can be set free without
lengthy detention while awaiting identification, witnesses can
view suspects while their memories are still fresh, and police
can resume their search for the actual offender more quickly if

C0016

1-02-0504

they originally detained the wrong person.  Simmons, 390 U.S. at
385; People v. Elam, 50 Ill. 2d 214, 218 (1972); People v.
Follins, 196 Ill. App. 3d at 688.  We cannot fault the use of a
showup in defendant's case.

However, defendant raises another issue pertaining to the
particular conduct of his showup.  Defendant specifically objects
that the Alexanders were allowed to be together while viewing
him.  Defendant supports his objection with the case of People v.
Blumenshine, 42 Ill. 2d 508, 513 (1969), which relied on the
United States Supreme Court decision in Gilbert v. California,
388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967).  In both
Blumenshine and Gilbert, multiple victims of different crimes
were allowed to identify the defendant in each other's presence.
Both cases held that procedure to be improper.  Blumenshine, 42
Ill. 2d at 513; United States v. Wade, 388 U.S. 218, 234, 18 L.
Ed. 2d 1149, 87 S. Ct. 1926, 1936 (1967) (discussing holding of
Gilbert).  However, defendant's case does not present concerns of
the same magnitude.  The Alexanders observed defendant after
witnessing the commission of the same crime.  They could not have
drawn the inference by the other's presence, as the witnesses
could have in Gilbert and Blumenshine, that, as the defendant was
a suspect in other crimes, he must also have committed the
offense in his/her case.  Likewise, we do not sense the risk of
peer pressure or of following the crowd in the Alexanders'

- 16 -

1-02-0504

identification, as opposed to that in Gilbert, where over 100
people attended the lineup.  Our conclusions are further
supported by the Alexanders' testimony that they did not discuss
their impressions before identifying defendant as the offender,
nor consider the opinion of the other in making their
identification.

Left with a situation in which the nature of the
confrontation was little more suggestive than that inherent in a
showup identification, and the Neil factors provided strong
indicia of reliability, we conclude that even if defendant's
trial counsel had filed a motion to suppress, it would not have
changed the result.  The motion would have been denied and
defendant would still have been found guilty at trial.
Therefore, defendant did not receive ineffective assistance of
counsel and the court below did not abuse its discretion when it
refused to grant a new trial on that basis.

Defendant raises two challenges to his sentence.  First,
defendant makes an Apprendi challenge to his sentence.  See
Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S.
Ct. 2348 (2000) (due process requires that aggravating factors,
other than prior convictions, that increase sentence beyond that
provided for in underlying offense must be plead in indictment
and proved to fact finder beyond a reasonable doubt).  He claims
that his sentencing as a Class X offender, statutorily mandated

- 17 -

1-02-0504

due to his prior convictions, violated his due process rights.
We review this claim de novo. People v. Malchow, 193 Ill. 2d
413, 418 (2000) (constitutionality of a statute is a question of
law reviewed de novo).

Defendant was sentenced as a Class X offender based on two,
separate prior convictions for residential burglary. See 730
ILCS 5/5-5-3(c)(8). Defendant claims he could not be sentenced
as a Class X offender because his prior convictions were not pled
in his indictment, nor proven beyond a reasonable doubt at trial.
This is a familiar argument, already rejected by the appellate
court on numerous occasions. People v. Smith, 338 Ill. App. 3d
555, 559-60 (2003) (rejecting identical challenge and listing 12
other cases holding that mandatory Class X sentencing scheme does
not violate Apprendi). As we did in those other cases, we find
no merit in defendant's argument.

Defendant next points out to this court that the pretrial
custody credit calculated by the trial court is short by one day.
The State concedes the error. We direct the circuit court clerk
to correct the credit reflected on the mittimus from 502 days to
503 days. See People v. McCray, 273 Ill. App. 3d 356, 403 (1995)
(appellate court has power to order correction of the mittimus).

Finally, defendant objects that he was not properly
admonished regarding the necessity of filing a postsentencing
motion to fully preserve his appeal rights. Defendant suggests

C0019

1-02-0504

that our holding in People v. Mazar, 333 Ill. App. 3d 244 (2002)
mandates a remand for proper admonishment. However, we detect a
difference between defendant's case and Mazar: the defendant in
Mazar only requested a remand to allow the filing of a motion to
reconsider his sentence; he made no sentencing arguments before
us. Mazar, 333 Ill. App. 3d at 255. Here, defendant has
attacked his sentence in his appeal and he does not suggest that
this court lacks authority to consider his sentence challenges.
In light of our review of defendant's sentencing issues, we fail
to see the point of a remand. We would understand a defendant
wanting a remand for proper admonishment and the opportunity to
file a postsentencing motion in the event that the challenges he
would make in his appellate brief would be reduced to plain error
review as a result of the waiver rule. However, in defendant's
case, his Apprendi claim, as a constitutional challenge, is
subject to de novo review, and he successfully challenged the
trial court's pretrial custody credit calculation. Sending
defendant's case back to the trial court, to have the same issues
presented to this court again later, with the same results
attaching, would serve no purpose.

Affirmed; mittimus corrected.

McBRIDE, J., with O'MALLEY, P.J., and GORDON J., concurring.

**ORIGINAL**

No. 98200

IN THE

## SUPREME COURT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | )  Petition for Leave to Appeal from the |
| | )  Appellate Court of Illinois, First District, |
| Respondent-Appellee, | )  No. 02-0504 |
| | ) |
| | )  There heard on Appeal from the Circuit |
| -vs- | )  Court of Cook County, Illinois, |
| | )  No. 00 C2 20576 004729 |
| | )  *(h)* |
| ROBERT MILLER, | )  Honorable |
| | )  Marcia B. Orr, |
| Petitioner-Appellant. | )  Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

MICHAEL J. PELLETIER
Deputy Defender

KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

**FILED**

APR 12 2004

SUPREME COURT
CLERK

EXHIBIT E

No.

IN THE

## SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First District, |
| Respondent-Appellee, | ) | No. 02-0504 |
| | ) | |
| | ) | There heard on Appeal from the Circuit |
| -vs- | ) | Court of Cook County, Illinois, |
| | ) | No. 00 C2 20576. |
| | ) | |
| ROBERT MILLER, | ) | Honorable |
| | } | Marcia B. Orr, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

## PRAYER FOR LEAVE TO APPEAL

Robert Miller, petitioner-appellant, hereby petitions this Court for leave to appeal, pursuant to Supreme Court Rules 315 and 612, from the judgment of the Appellate Court, First District, affirming his conviction for residential burglary and possession of burglary tools and his sentence of 18 years imprisonment.

-1-

## PROCEEDINGS BELOW

The Appellate court affirmed Robert Miller's conviction on December 8, 2003. Mr. Miller filed a petition for rehearing on December 18, 2003. The Appellate court denied the petition for rehearing on March 8, 2004. On March 10, 2004, Mr. Miller filed an affidavit of intent to file a petition for leave to appeal. A copy of the appellate court's judgment is appended to this petition.

## COMPELLING REASONS FOR GRANTING REVIEW

1. Robert Miller was not properly admonished as to his appellate rights pursuant to Supreme Court Rule 605(a), where the trial court failed to advise him of his right to file a motion to reconsider sentence and that any sentencing issue not included in this motion would be waived on appeal. (Def. Br. 38-39). Despite this, the Appellate court determined that it was unnecessary to remand Mr. Miller's case to the trial court for proper appellate admonishments because Mr. Miller raised two sentencing issues in his appeal, and thus the trial court would only address the same issues and reach the same results already reached by the Appellate court. *People v. Miller*, No. 1-02-0504, 18-19 (1st Dist. December 8, 2003)( Rule 23 Order). However, the Appellate court's opinion conflicts with its own decision in *People v. Mazar*, 333 Ill. App. 3d 244, 755 N.E.2d 135 (1st Dist. 2002), as well as the Third District Appellate Court's decision in *People v. Parker*, 344 Ill. App. 3d 728, 801 N.E.2d 162 (3rd Dist. 2003), which held that the defendant's case must be remanded for proper admonishments and to give him the opportunity to file a motion to reconsider sentence, where the defendant was misinformed by the trial court's failure to properly advise him as to all of his appellate rights in accordance with Rule 605(a). *Mazar*, 333 Ill. App. 3d at 254-259; *Parker*, 801 N.E.2d at 169. Although the appellate court distinguished the present case from its opinion in *Mazar* because Mr. Miller raised sentencing issues in his appeal, while the defendant in *Mazar* did not, there is nothing in the *Mazar* court's reasoning which indicates that this would require a different result. *Miller*, Rule 23 Order at 18-19. The appellate court's opinion fails to take into consideration that Mr. Miller may have raised other sentencing issues in a motion to reconsider sentence that were based on facts outside of the present record. Further, in *Parker*, as in the present case, the defendant raised a sentencing issue

-3-

in his appeal, which the appellate court addressed. *Parker*, 801 N.E.2d at 164, 169. Thus, this Court should grant review in order to resolve these conflicts and to ensure that defendants are not penalized for raising the sentencing issues that are available to them on the record, while losing their right to raise and preserve all sentencing issues for appellate review.

    2.  Robert Miller was denied the effective assistance of counsel because his trial counsel failed to file a motion to suppress the identification evidence, where such a motion would have had a likelihood of success and the outcome of the trial would have been different. (Def. Br. 21). The primary evidence presented against Mr. Miller at his trial was the identification testimony of Mr. and Mrs. Alexander. (Def. Br. 22-23). However, the identifications were a result of an unnecessarily suggestive showup where Miller was the only person brought to the scene and viewed by the Alexanders at the same time, while standing in front of a marked squad car, handcuffed, and in the presence of three police officers. (Def. Br. 23-25). In addition, the totality of the circumstances shows that the identifications were not reliable, because the Alexanders had a limited opportunity to view the offender while they were both frightened and distracted by the events taking place, the descriptions they provided were vague and conflicting, and the certainty they displayed in making their identifications was undermined by the suggestiveness of the identification procedure itself. (Def. Br. 25-29).

## STATEMENT OF FACTS

At the conclusion of a bench trial, Mr. Miller was convicted of residential burglary and possession of burglary tools. (R-171). The court sentenced Mr. Miller to eighteen years imprisonment. (R-249).

Mrs. Alexander testified that on October 8, 2000 at 5:30 p.m., she looked out of her bedroom window and observed that someone was in the enclosed back porch of her next door neighbor's house. (R-13-16,41). Mrs. Alexander and her husband were cat sitting for the neighbors while they were out of town, and they had the key to the neighbor's back porch. (R-14-15). Mrs. Alexander stated that she and her husband went next door, used the key to unlock the door to the porch, and noticed that one of the screens was cut and the window was open. (R-17-18). Mrs. Alexander testified that the hole in the screen was four feet by three feet, and both Mr. and Mrs. Alexander stated that the cut was large enough for a person to fit through. (R-18,51). The door leading from the back porch into the house was open. (R-18-19,52). Mrs. Alexander stated that the door was open and unlocked the last time she had been over to check on the neighbor's house. (R-19).

Mrs. Alexander testified that she shouted "hello," and received no response. (R-19). Mrs. Alexander then shouted "I'm calling the police now." (R-20). At this time, Mr. Alexander had left the neighbor's porch, and was headed back towards his house. (R-52). Mrs. Alexander testified that she backed out of the porch, and began closing the back door when she heard screaming and saw a man running towards her waiving his hands. (R-20,32-33). Mrs. Alexander later identified this man as Mr. Miller. (R-21-22). Mrs. Alexander was frightened, tripped on the back porch steps, and fell to the ground. (R-20,32-33). Mr. Alexander testified that when he

heard screaming and the sound of a door slamming, he turned around. (R-53). Mr. Alexander, who was fifteen to twenty feet away, saw both his wife falling and a man standing on the back porch steps. (R-62-63). Mr. Alexander identified Mr. Miller as the man he saw on the back porch steps (R-58-59). Mr. Alexander testified that he was frightened and could see Miller's face. (R-54,63).

Mrs. Alexander testified that while she was lying on the ground, Mr. Miller ran past her to get to his bike, which she described as dark. (R-33,44). The bike was on the same side of the house as the open window and cut screen. (R-22-23). Mr. Miller was two feet away from Mrs. Alexander when he ran by, and she saw his face at this time. (R-21,24-25). Mr. Alexander testified that Mr. Miller, who was still screaming, walked down the back porch steps, and walked to the side of the house to get to his bike, which Mr. Alexander described as blue. (R-53,64-65). Only a few seconds passed from the time Mr. Miller appeared on the back porch steps to the time he got to his bike. (R-34).

Mr. Alexander testified that he followed Mr. Miller when Miller began walking the bike towards the gate in between the two houses. (R-55-56). Mr. Alexander was six to eight feet away from Mr. Miller during this time. (R-55). Mr. Alexander testified that when Mr. Miller reached the gate, the bike got stuck and Miller began pulling it towards him while he backed through the gate. (R-56-57). Mr. Alexander and Mr. Miller were the bike's length apart, Miller was facing Mr. Alexander, and Mr. Alexander could see his face. (R-56-57). Mr. Alexander testified that he jumped towards Mr. Miller and hit the bike, which caused both him and Miller to fall to the ground. (R-57). While on the ground, Mr. Alexander was facing Mr. Miller. (R-57). Mrs. Alexander testified that while she was lying on the ground four to five feet away, she observed her husband struggling with Mr. Miller over the bike, and could see Miller's face. (R-23-25).

-6-

The struggle between Mr. Alexander and Mr. Miller took a few seconds. (R-34).

Both Mr. and Mrs. Alexander testified that at the time the incident occurred, it was still light outside. (R-16,49). At trial, Mrs. Alexander testified that the man who ran out of her neighbor's house was in his forties, and wearing dark clothes and a dark knit stocking or skull hat. (R-22,25). Mr. Alexander, who is six feet tall, testified that the man was much shorter than him and in his late thirties. (R-54). Mr. Alexander described the clothing the man was wearing as a black coat, and jeans that were black in nature although he did not know the exact color, as well as a wool stocking cap that was worn down over the man's forehead. (R-54,63-64). Both Mr. and Mrs. Alexander testified that they had never seen the man before. (R-34,63).

Mrs. Alexander testified that Miller left on foot going South on Sherman. (R-24). Mr. Alexander testified that Miller left on foot going South on Sherman, and he observed Miller turn West onto Garfield. (R-58-59). Both Mr. and Mrs. Alexander testified that Mr. Miller left his bike and hat behind. (R-24,58-59). Mrs. Alexander went inside the neighbor's house and called the police, and Officer Firth came to the house ten to fifteen minutes later. (R-41,25,36). Mrs. Alexander testified that ten to fifteen minutes after Firth arrived at the house, a second squad car brought a man to the house. (R-42,25-26).

Mary Conlon testified that she lives at 2205 Sherman, and was out of town on October 8, 2000. (R-74). When she returned home from her trip, Ms. Conlon observed that the drawers had been pulled out of the cabinet in her bedroom, and the items in the drawers had been scattered throughout her bedroom and the hallway. (R-75). Conlon stated that she observed a duffel bag at the top of the steps, which contained some of the contents of the cabinet drawers. (R-77-79). All of the items in the duffel bag, had either been in the cabinet drawers or on the cabinet when she left for her trip. (R-78-79). Conlon testified that she did not know Mr. Miller, and never gave

-7-

him permission to enter her house or take anything from it. (R-75). Conlon stated that nothing was taken from her home. (R-78).

On October 8, 2000 Officer Lambeseder was on patrol, alone, in uniform, and in a marked squad car. (R-80-81). At around 5:35 or 5:40 p.m., Lambeseder heard a radio message that there was a burglary in progress around the 2100-2200 block of Sherman, (R-80-81,88). The message stated that the offender was last seen going West on Sherman, and described the offender as male, black, short, and wearing dark clothing. (R-81). Lambeseder drove towards the area where he thought the offender might be running. (R-81). As he was driving, Lambeseder heard a second radio message, this one from Officer Devoy, who stated that he observed a man that matched the description of the offender running West around Maple, (R-81-82). Lambeseder testified that Maple is parallel to Sherman, and it is the first north-south street to its west. (R-82). The next street after Maple in that direction is Ridge. (R-82).

Lambeseder drove to the 2100 block of Ridge at Leonard and parked on the west side of the street facing east. (R-82-83).   Lambeseder testified that less than ten minutes later, he observed a man who was short, black, and wearing dark clothing, sprint in between some houses towards Ridge. (R-83). In Lambeseder's supplemental report, he noted that the man was running west through some yards. (R-119-121). Lambeseder identified this man as the defendant, Mr. Miller. (R-86).

After looking at photographs marked defense exhibits one through five, Lambeseder stated that the buildings he observed Mr. Miller running from were not all houses, but one was a larger building. (R-89-90). Lambeseder testified that from where he was sitting that day, he could not have seen through to the yards of those buildings or in between those buildings. (R-90-91). Lambeseder stated that he observed Mr. Miller running from the time Miller exited out from

-8-

in between the buildings to the time he reached Ridge, which was a distance of twenty feet. (R-90-92). Lambeseder testified that as Mr. Miller approached the east side of Ridge, Miller looked in his direction, stopped running, and began to walk. (R-84-85). Lambeseder observed no one else running or matching the description of the offender in the area during that time. (R-85-86).

Lambeseder testified that when he stopped Mr.Miller, he observed that Miller was out of breath and sweaty. (R-85). Lambeseder did not include this observation in his supplemental police report. (R-119-120). Lambeseder asked Miller to place his hands on the squad car, and handcuffed him. (R-86). Lambeseder told Miller that he was being stopped for burglary because he fit the description of the offender. (R 86). Lambeseder searched Mr. Miller, and found a small pry bar in his front pocket, and two Swiss army knives in his rear right pocket. (R-86-87). Lambaseder testified that none of the items recovered from Mr. Miller were the proceeds of the burglary. (R-93-94). Lambeseder stated that Mr. Miller never attempted to run from him, and complied with all of his commands. (R-92).

While Lambeseder had Mr. Miller stopped at Leonard and Ridge, Officers Firth, Santillo, and Devoy showed up. (R-96-97). Firth went to 2205 Sherman to talk to the witnesses, while Lambeseder kept Miller at Leonard and Ridge. (R-99). Officer Firth testified that when he went onto the back porch at 2205 Sherman, he observed pry marks on the window frame. (R-107). Five to ten minutes later, Firth contacted Lambeseder and told him to bring Miller to 2205 Sherman. (R-98-99). Mr. Miller was put into Lambaseder's marked squad car and taken to 2205 Sherman for a showup. (R-87-88).

At 2205 Sherman, Lambeseder had Mr. Miller get out of the squad car and stand on the curb near the sidewalk. (R-100-101). Mrs. Alexander testified that she and her husband viewed Mr. Miller through the windows of their neighbor's enclosed porch. (R-45,26). Ralph Metz, an

investigator for the Public Defender's Office testified that the distance between the enclosed porch and the street was fifty-nine feet. (R-108-111). The Alexanders never came out of the house to view Mr. Miller, and were together when they made their identifications. (R-102). While Mr. and Mrs. Alexander were making their identifications, Lambosedor, Santillo, and Devoy were outside with Mr. Miller, and Firth was on the porch with the Alexanders. (R-70,101). Mr. Alexander testified that before making his identification, he observed the officer walk Mr. Miller, who was handcuffed, around the front of the squad car. (R-60,70-71). Mrs. Alexander testified that she observed the officer take Mr. Miller out of the squad car, but could not remember if Mr. Miller was handcuffed. (R-43-44). Both Mr. and Mrs. Alexander testified that at the time they viewed Mr. Miller, he was not wearing a hat. (R-44,71). Mrs. Alexander stated that Mr. Miller was wearing the same clothing that she saw when the man ran past her earlier. (R-27).

Mr. and Mrs. Alexander identified Mr. Miller as the man they saw running out of their neighbor's house that day. (R-26-27,60-61). Mrs. Alexander stated that she identified Mr. Miller because he was the man she saw in her neighbor's house, and she did not need to be any closer to make the identification, because she could see Mr. Miller from the porch. (R-47). Both Mr. and Mrs. Alexander testified that Mr. Miller was the only person shown to them. (R-45,71). No lineup was ever conducted. (R-102).

Mr. Miller testified that on October 8, 2000, he was doing carpentry work for Velma Thomas who lives at 1310 Foster. (R-123-124). Mr. Miller testified that he was putting down a new floor for Ms. Thomas, and used a pry bar, hammer and nails to do this. (R-124). Mr. Miller finished work that day around 5:00 or 5:15 p.m., and was walking to the el station to go home when he spotted some junk in the alley between Maple and Ridge. (R-124-125,135-136). Miller

-10-

testified that he had been salvaging in that area before, so he went down the alley to look around. (R-125). In the alley behind an apartment building just in front of Ridge and Leonard, Mr. Miller discovered a roll of carpet that he thought could be put over the new flooring he installed at Ms. Thomas' house that day. (R-125,142). Miller stated that he intended to go back to the area where Ms. Thomas lived to see if he could find someone to give him a ride, and help him bring the carpet back to Ms. Thomas' house. (R-126). Miller testified that he exited the alley in between some buildings onto Ridge and Leonard, walked to the curb, and then encountered an officer who was parked at the stop sign at Ridge and Leonard. (R-127-128). Miller stated that he was not running, sweating or out of breath at this time. (R-127). Miller testified that he brought the pry bar with him that he used to put down the flooring at Ms. Thomas' house that day, and always carried the Swiss Army knives with him because they were a gift from Ms. Thomas. (R-124-125). Miller stated that all of the property recovered from him by the officer that day belonged to him. (R-128). Miller testified that he did not burglarize the house that day. (R-129-130).

Miller stated that the officer kept him at Leonard and Ridge for five to ten minutes, before he was taken in the squad car to 2205 Sherman. (R-128). Miller testified that while he was handcuffed and held at Leonard and Ridge, one of the officers put a hat on his head and said "here's the hat you lost at the scene." (R-128-129). Miller told the officers that the hat did not belong to him, and tried to remove it after he was put into the squad car. (R-129). At 2205 Sherman, Miller waited in the squad car for fifteen minutes while the officers went inside the house. (R-129). Miller stated that the officer stood him outside the door of the squad car, put the hat back on his head, and turned him around to face some houses. (R-129).

Miller stated that he was taken from 2205 Sherman to the police station where he spoke to Detective Mitchem. (R-130-131). Miller told Mitchem that he owned a blue Rally two speed

-11-

bike, but it was locked to the porch at 1310 Foster. (R-130). Detective Mitchem testified that he went to 1310 Foster that same day, and saw a Rally bike chained to the front porch at 1310 Foster. (R-146-148).

The parties stipulated that Mr. Miller was convicted of residential burglary in 1997 and 1992, and felony theft in 1990. (R-150). The parties stipulated that if called to testify, evidence technician James Ptroe would state that on October 8, 2000, he went to 2205 Sherman and processed the window and chest of drawers in the bedroom for fingerprints, but no fingerprints were recovered. (R-144-145).

Mr. Miller was convicted of residential burglary and possession of burglary tools. (R-171). The court appointed private counsel to represent Mr. Miller for the post-trial motions. (R-185,189). In the motion for a new trial, Mr. Miller's counsel argued, among other things, that Miller's trial counsel was ineffective for failing to make a motion to suppress the identification evidence. (R-211-221,C-146-162). To support the arguments in the motion, Miller's counsel attached exhibits labeled A through G. (C-10-21). The following information was contained in those exhibits and was available to Mr. Miller's trial counsel prior to and during the trial. (R-217-18, C-10-21).

The police incident report, exhibit A, described the lighting at the time of the burglary as dusk. (C-10-14). Exhibit B, an arrest photograph of Mr. Miller taken on October 8, 2000, showed that Mr. Miller had a goatee on the day the burglary occurred. (C-15). The police incident report and the officer's arrest report, exhibits A and D, both described Mr. Miller as having a beard or beard and mustache. (C-10-14,17). According to the police incident report, exhibit A, the officers received a call shortly after the burglary in which the caller stated that a short, black, male wearing dark clothing was seen running west on Garfield from Sherman and

was bleeding from the head. (C-10-14).  Exhibit C, the police incident dispatch detail report, stated that Mrs. Alexander called and reported the burglary at 5:36 p.m. (C-16).  The arrest report, exhibit D, stated that Mr. Miller was arrested at Leonard and Ridge at 5:36 p.m. (C-17).  The reply to the Public Defender's investigation request, exhibit G, stated that the distance between 2205 Sherman and Leonard and Ridge is 2,245 feet. (C-20-21).   Exhibit F, the evidence technicians report, stated that the technician found no tool marks on the window frame at 2205 Sherman. (C-19).

The court denied Mr. Miller's motion for a new trial, and sentenced Mr. Miller to eighteen years imprisonment with 502 days of credit for time served. (R-235,249).

On direct appeal, Mr. Miller argued that: (1) the State failed to prove his guilt of residential burglary and possession of burglary tools beyond a reasonable doubt; (2) the trial court erred in denying his motion for a new trial; (3) his sentence was unconstitutional under *Apprendi*; (4) the trial court failed to properly admonish him of his appellate rights pursuant to Supreme Court Rule 605(a); and (5) the mittimus should be corrected to reflect the proper amount of sentence credit. (Def. Br. 13-41).  On December 8, 2003, the appellate court affirmed Mr. Miller's conviction and sentence, but ordered the mittimus corrected to reflect the proper amount of sentence credit. *People v. Miller*, No. 1-02-0504 (1ˢᵗ Dist. December 8, 2003) (Rule 23 Order).  On March 8, 2004, the appellate court denied Mr. Miller's petition for rehearing.  This petition for leave to appeal follows.

## ARGUMENT

I.    This Court Should Grant Leave to Appeal Because the Appellate Court's Determination That It Was Unnecessary to Remand Robert Miller's Case to the Trial Court for Proper Admonishments Pursuant to Supreme Court Rule 605(a) Conflicts With Its Own Opinion in *People v. Mazar,* as well as the Third District Appellate Court's decision in *People v. Parker,* and Fails to Take into Consideration That Had Mr. Miller Been Properly Advised, He May Have Raised Sentencing Issues in a Motion to Reconsider Sentence Based on Facts Outside the Present Record.

On appeal, Robert Miller argued that he had not been properly admonished as to his appellate rights pursuant to Supreme Court Rule 605(a), where the trial court failed to advise him of his right to file a motion to reconsider sentence and that any sentencing issue not included in this motion would be considered waived on appeal. (Def. Br. 38-39). In addition to this argument, Mr. Miller raised two sentencing issues in his appeal--that his sentence was unconstitutional under *Apprendi* and the mittimus should be corrected to reflect the proper amount of sentence credit. (Def. Br. 32-37, 40-41 ). The court affirmed Mr. Miller's conviction and sentence, but ordered the mittimus corrected to reflect the proper amount of sentence credit. *People v. Miller,* No. 1-02-0504 (1st Dist. December 8, 2003) (Rule 23 Order).

In determining that it was unnecessary to remand Mr. Miller's case to the trial court for proper appellate admonishments pursuant to Rule 605(a), the appellate court reasoned that since Miller raised two issues on appeal attacking his sentence, both of which were subject to *de novo* review and not plain error analysis under the waiver doctrine, a remand to the trial court would be pointless because the trial court would only address the same issues and reach the same results

-14-

that were already reached by the appellate court. *Miller*, Rule 23 Order at 18-19. However, the appellate court's decision conflicts with its own opinion in *People v. Mazar*, 333 Ill. App. 3d 244, 755 N.E.2d 135 (1st Dist. 2002), as well as the Third District Appellate Court's holding in *People v. Parker*, 344 Ill. App. 3d 728, 801 N.E.2d 162 (3rd Dist. 2003), and fails to take into consideration that Mr. Miller may have raised other sentencing issues in a motion to reconsider sentence that were based on facts outside of the present record.

In *Mazar*, the court held that the case must be remanded for proper admonishments and to give the defendant the opportunity to attack his sentence because the defendant was misinformed due to the trial court's failure to properly advise him of his right to file a motion to reconsider sentence and that this motion was necessary in order to preserve sentencing errors for review in accordance with Rule 605(a). *Mazar*, 333 Ill. App. 3d at 254-259. Similarly, in the present case, Mr. Miller was misinformed by the admonishments of the trial court at his sentencing hearing because the court made no mention whatsoever of his right to file a motion to reconsider sentence or that any sentencing issue not included in this motion would be waived on appeal. (Def. Br. 39).

In the present case, the appellate court found that this case was distinguishable from *Mazar*, because unlike the defendant in Mazar, Mr. Miller raised two issues in his appeal attacking his sentence. *Miller*, Rule 23 Order 18-19. Although it is true that Mr. Miller raised sentencing issues in his appeal while the defendant in *Mazar* did not, there is nothing in the *Mazar* court's reasoning that indicates that this would require a different result. This is especially true when it is considered that had Mr. Miller been properly advised as to all of his appellate rights, he may have raised sentencing issues in a motion to reconsider sentence pertaining to facts outside of the present record, a fact that was disregarded by the appellate court

-15-

when it reasoned that remanding Mr. Miller's case would be pointless because the trial court would just address the same sentencing issues and reach the same results already reached by the appellate court. *Miller*, Rule 23 Order at 19.

Further, the appellate court's decision is in conflict with the Third District Appellate Court's holding in *Parker*, where the court, relying on *Mazar*, remanded the defendant's case for proper 605(a) admonishments and to give the defendant an opportunity to file a motion to reconsider sentence, while also addressing a sentencing issue that the defendant raised in his appeal concerning the proper amount of sentence credit. *Parker*, 801 N.E.2d at 164,169. In the present case, just as in *Parker*, Mr. Miller raised sentencing issues in his appeal that were addressed by the appellate court. However, unlike the court in *Parker*, the appellate court in the present case determined that this fact made it unnecessary to remand Mr. Miller's case for proper 605(a) admonishments. Accordingly, there is a clear conflict between decisions of the appellate court on this issue.

Thus, this Court should grant review in order to resolve these conflicts and to ensure that defendants are not penalized for raising the sentencing issues that are available to them on the record, while losing their right to raise and preserve all sentencing issues for appellate review.

**II.    The Trial Court Erred When It Failed to Grant Robert Miller's Motion for a New Trial, Because Miller's Trial Counsel was Ineffective for Failing to File a Motion to Suppress the Identification Evidence.**

In determining that the trial court did not abuse its discretion when it denied Robert Miller's motion for a new trial, the appellate court found that counsel was not ineffective for failing to file a motion to suppress the identification evidence, where the identification procedure was "little more suggestive than that inherent in a showup identification," and the Alexanders'

-16-

identifications of Mr. Miller were reliable. *Miller*, Rule 23 Order at 17. However, the court's findings were incorrect.

The record shows that the identifications were the product of an unnecessarily suggestive showup, where Mr. Miller was viewed by the Alexanders at the scene shortly after the burglary occurred, while he was standing alone, in front of a marked squad car, handcuffed, and in the presence of three police officers. (Def. Br. 22-25). *People v. Carroll*, 12 Ill. App. 3d 869, 874, 299 N.E.2d 134 (1973); *People v. Wright*, 126 Ill. App. 2d 91, 94, 261 N.E.2d 445 (1st Dist. 1970); *People v. Lee*, 44 Ill. 2d 161, 168-169, 254 N.E.2d 469 (1969) (all finding that one-man showup where the defendant was viewed by the witnesses while handcuffed was unnecessarily suggestive). At the time the Alexanders viewed Miller, they were standing inside of their neighbor's enclosed front porch nearly sixty feet away, and the lighting outside was dusk. (Def. Br. 24-25). The Alexanders also made their identifications of Mr. Miller in each others presence, and could not recall if they had made them at the same time or if one of them had identified Miller first. (Def. Br. 24). *See People v. Blumenshine*, 42 Ill. 2d 508, 513, 250 N.E.2d 152 (1969) (improper to allow multiple witnesses to view the defendant for identification at the same time and place).

The record additionally shows that the identification evidence did not have a basis independent from the suggestive procedure. The Alexanders had a limited opportunity to view the offender under chaotic circumstances. Mrs. Alexander first observed the offender as he was running straight for her, waiving his arms over his head and screaming. (Def. Br. 26). Mrs. Alexander was so startled, she tripped down the porch steps and fell to the ground, where she saw the offender from two feet away as he ran past her and again from four to five feet away as he struggled with her husband over a bike. (Def. Br. 26). Mr. Alexander, who was fifteen to

-17-

twenty feet away, turned around after he heard screaming and a door slamming, just in time to see both his wife falling from the porch and the offender standing on top of the porch steps. (Def. Br. 26). Mr. Alexander followed six to eight feet behind, as the offender walked towards his bike and began leading it towards the gate. (Def. Br. 26). He saw the offender's face as he jumped and tripped over the bike knocking both himself and the offender to the ground, and the offender immediately got up, turned around, and ran from the scene. (Def. Br. 26). The entire incident took only seconds. (Def. Br. 26). The descriptions the Alexanders provided of the offender were both vague and conflicting. Immediately following the burglary, the Alexanders described the offender as male, black, short, and wearing dark clothing, although the police incident dispatch detail report indicates that they actually described the offender as male, black, short, wearing a black knit cap and clothing that was "not real dark." (Def. Br. 27). It was only at the trial that Mrs. Alexander stated that the offender was in his forties, wearing dark clothing and a dark stocking hat, while Mr. Alexander testified that the offender was in his late thirties, shorter than six feet tall, and wearing a stocking hat, dark jeans, and a black coat. (Def. Br. 27). The descriptions failed to include any distinguishing characteristics, such as facial hair, when it was clearly established that on the day of the burglary Mr. Miller had a noticeable goatee. (Def. Br. 27). Although the Alexanders were certain in their identifications, this was undermined by the unnecessarily suggestive circumstances surrounding the showup identification itself. (Def. Br. 28-29).

The remaining evidence showed only that Mr. Miller was stopped by the officer after exiting an alley in the general area where the burglary occurred. (Def. Br. 29). No fingerprints were found at the scene, none of the proceeds from the burglary were found in Miller's possession, and although Miller was found with a pry bar and two Swiss army knives and the

-18-

officer testified that he saw tool marks around the window at the scene, the evidence technicians report indicated that no tool marks were in fact found. (Def. Br. 29-30). Miller testified that he was in the area that day because he was doing carpentry work for a woman who lived nearby, and he saw a carpet in the alley on his way home that he thought he could use. (Def. Br.30). When the officer stopped him, Miller was on his way back to his employer's house to find someone to help transport the carpet. (Def. Br. 30). The police records indicate that the report of the burglary and Miller's arrest both occurred at 5:36 p.m., and the distance between the two locations is a half of a mile. (Def. Br. 30). Thus, Miller would have had to travel a half of a mile in under a minute to make his participation in the offense plausible. (Def. Br. 30). However, the evidence showed that the officer only saw Miller running from the time he exited the alley to the time he reached the street, which was a distance of twenty yards, and although the officer stated that Miller was out of breath and sweaty when he stopped him, this was not included in his report. (Def. Br. 30). Finally, the police report showed that the officers received a call shortly after the burglary occurred from a witness who saw a man matching the offender's description who was bleeding from the head and running in the direction last reported by the Alexanders, however, no evidence was presented that Miller's head was bleeding on the day of the burglary. (Def. Br. 30).

Trial counsel's failure to file a motion to suppress the identification evidence was ineffective assistance. The record shows that the Alexanders' identifications of Mr. Miller were the product of an unnecessarily suggestive one-man showup and when viewed under the totality of the circumstances, were unreliable. Thus, there was a reasonable probability that a motion to suppress this evidence would have succeeded, and since the identification testimony of the Alexanders was the primary evidence presented against Mr. Miller at trial, the outcome would have been different. Therefore, Mr. Miller's motion for a new trial should have been granted.

-19-

## CONCLUSION

Robert Miller, petitioner-appellant, respectfully requests that this Court grant leave to

appeal

Respectfully submitted,


MICHAEL J. PELLETIER
Deputy Defender


KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

## STATE OF ILLINOIS
## SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the tenth day of May, 2004.

Present: Mary Ann G. McMorrow, Chief Justice
Justice Charles E. Freeman       Justice Thomas R. Fitzgerald
Justice Robert R. Thomas         Justice Thomas L. Kilbride
Justice Rita B. Garman           Justice Philip J. Rarick

On the twenty-sixth day of May, 2004, the Supreme Court entered the following judgment:

No. 98200

People State of Illinois,

    Respondent

    v.

Robert Miller,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
First District
1-02-0504
00MC2004729

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this seventeenth day of June, 2004.

*Juleann Hornyak*

Clerk,
Supreme Court of the State of Illinois



813 N.E.2d 226 (Table)                                                                    Page 1
209 Ill.2d 594, 813 N.E.2d 226 (Table), 286 Ill.Dec. 169
**(Cite as: 209 Ill.2d 594)**

**H**
People v. Miller
Ill. 2004.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)
                    Supreme Court of Illinois
                              People
                                v.
                          **RobertMiller**
                          **NO. 98200**

                       MAY TERM, 2004
                        May 26, 2004

Lower Court: No. 1-02-0504

Disposition: Denied.

Ill. 2004.
People v. Miller
209 Ill.2d 594, 813 N.E.2d 226 (Table), 286
Ill.Dec. 169

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT F**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DISTRICT-SECOND MUNICIPAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br>PLAINTIFF-RESPONDENT | )<br>)<br>) |
| | ) POST CONVICTION |
| V. | ) No. 00 C 220576 |
| | )<br>) |
| ROBERT MILLER,<br>DEFENDANT-PETITIONER | )<br>) |

## ORDER DISMISSING PETITION FOR POST-CONVICTION RELIEF

Petitioner Robert Miller was charged with Residential Burglary and Possession of

Burglary Tools.  He was found guilty in a bench trial and sentenced to 18 years

imprisonment.  An appeal was denied on December 8, 2003.

Petitioner alleges ineffective assistance of Counsel at trial and on appeal.

Petitioner completely rehashes his bench trial.  He seeks to relitigate each and

every fact that the State sought to introduce at trial.  Nothing new is raised in the Petition.

The evidence against the Defendant is overwhelming.

The Petition for Post-Conviction Relief completely fails to state a claim and is

patently without merit.

The Petition is hereby dismissed.

The Clerk of the Court shall serve Petitioner with a copy of this order within 10

days.

Dated January 24, 2005

_____
Timothy J. Chambers
Associate Judge of the Circuit Court of Cook County
Municipal Department
Second Municipal District

**FILED**

JAN 24 2005

**DOROTHY BROWN**
**CLERK OF CIRCUIT COURT**

EXHIBIT G

C0161

No. 1-05-0585

## IN THE

## APPELLATE COURT OF ILLINOIS

## FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 C2 20576. |
| | ) | |
| ROBERT MILLER, | ) | Honorable |
| | ) | Timothy Chambers, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT

MICHAEL J. PELLETIER
Deputy Defender

EMILY S. WOOD
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

ORAL ARGUMENT REQUESTED

RECEIVED
CRIMINAL APPEALS

OCT 2 4 2006

309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

EXHIBIT H

POINTS AND AUTHORITIES                          Page

I.      Robert Miller stated the gist of a meritorious constitutional claim that trial
        and post-trial counsel were ineffective for failing to call an alibi witness on
        Mr. Miller's behalf .............................................. 11

        *People v. Coleman*, 183 Ill. 2d 366 (1998) ................... 11, 12, 14, 18

        *People v. Edwards*, 197 Ill. 2d 239 (2001) ...................... 11, 12, 17

        *People v. Gaultney*, 174 Ill. 2d 410 (1996) ......................... 11, 12

        *People v. Dredge*, 148 Ill. App. 3d 911 (4th Dist. 1986) ................. 11

        *People v. Jones*, 168 Ill. App. 3d 925 (1st Dist. 1988) ................... 12

        *People v. Smith*, 326 Ill. App. 3d 831 (1st Dist. 2001) .................. 12

        *People v. Ledbetter*, 342 Ill. App. 3d 285 (4th Dist. 2003) ............... 12

        U.S. Const., amends. VI, XIV ..................................... 13

        Ill. Const. 1970, art. I, sec. 8 ................................... 13

        *Strickland v. Washington*, 466 U.S. 668 (1984) ......................... 13

        *People v. Albanese*, 104 Ill. 2d 504 (1984) ........................... 13

        *People v. Plummer*, 344 Ill. App. 3d 1016 (1st Dist. 2004) ......... 14, 12, 19

        *People v. Brown*, 336 Ill. App. 3d 711 (1st Dist. 2002) .............. *passim*

        *People v. Paleologos*, 345 Ill. App. 3d 700 (1st Dist. 2003) ......... 14, 15, 16

        *People v. King*, 316 Ill. App. 3d 901 (1st Dist. 2000) ............... 14, 18

        *People v. Shevock*, 353 Ill. App. 3d 361 (4th Dist. 2004) ............. 17, 19

        *People v. Morris*, 335 Ill. App. 3d 70 (1st Dist. 2002) .................. 18

        *People v. Britz*, 174 Ill. 2d 163 (1996) ............................. 19

II.     Robert Miller stated the gist of a meritorious constitutional claim that trial
        and post-trial counsel were ineffective for failing to investigate two
        exculpatory witnesses and that appellate counsel was ineffective for failing
        to raise this issue on direct appeal ................................ 20

*People v. Boclair*, 202 Ill. 2d 89 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Edwards*, 197 Ill. 2d 239 (2001) . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. King*, 316 Ill. App. 3d 901 (1st Dist. 2000) . . . . . . . . . . . . . . . . 20, 22

*People v. Enis*, 194 Ill. 2d 361 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Smith*, 326 Ill. App. 3d 831 (1st Dist. 2001) . . . . . . . . . . . . . . . . . . 21

*People v. Ledbetter*, 342 Ill. App. 3d 285 (4th Dist. 2003) . . . . . . . . . . . . . . . 21

*People v. Shevock*, 353 Ill. App. 3d 361 (4th Dist. 2004) . . . . . . . . . . . . . 21, 24

*People v. Morris*, 335 Ill. App. 3d 70 (1st Dist. 2002) . . . . . . . . . . . . . . . . . . 21

*People v. Montgomery*, 327 Ill.App.3d 180 (1st Dist. 2001) . . . . . . . . . . . 21, 22

*People v. Plummer*, 344 Ill. App. 3d 1016 (1st Dist. 2003) . . . . . . . . . . . . . . . 21

*People v. Coleman*, 183 Ill. 2d at 380 (1998) . . . . . . . . . . . . . . . . . . . . . . 22, 25

*People v. Brown*, 336 Ill. App. 3d 711 (1st Dist. 2002) . . . . . . . . . . . . 22, 23, 25

*People v. Paleologos*, 345 Ill. App. 3d 700 (1st Dist. 2003) . . . . . . . . . . . . . . 23

*People v. Scott*, 143 Ill. App. 3d 540 (1st Dist. 1986) . . . . . . . . . . . . . . . . . . . 26

*People v. Perez*, 115 Ill. App. 3d 446 (1st Dist. 1983) . . . . . . . . . . . . . . . . . . . 26

## NATURE OF THE CASE

Robert Miller, Petitioner-Appellant, appeals from a judgment summarily dismissing his petition for post-conviction relief at the first stage of proceedings.

No issue is raised concerning the charging instrument. However, an issue is raised concerning the sufficiency of the post-conviction pleadings.

## ISSUES PRESENTED FOR REVIEW

1.    Whether Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to call an alibi witness on Mr. Miller's behalf.

2.    Whether Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to investigate two exculpatory witnesses and that appellate counsel was ineffective for failing to raise this issue on direct appeal.

## JURISDICTION

Robert Miller, Petitioner-Appellant, appeals the dismissal of his *pro se* post-conviction petition. The judgment being appealed was entered on January 24, 2005. (PC-158).[1] Notice of appeal was timely filed on January 31, 2005. (PC-162). Jurisdiction therefore lies in this Court pursuant to Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rule 651(a).

---

[1]"PC" refers to the common law record for the first-stage post-conviction proceeding. "PR" refers to the report of the first-stage post-conviction proceeding. "PC Supp" refers to the disposition of the direct appeal. "R" and "C" refer to the report of proceedings at trial and the common law record at trial, respectively.

## STATEMENT OF FACTS

At the conclusion of a bench trial, Robert Miller was convicted of residential burglary and possession of burglary tools. (R-171). The court sentenced Mr. Miller as a Class X offender to 18 years' imprisonment. (R-249). His conviction was affirmed on direct appeal. *People v. Miller*, No. 1-02-0504 (Rule 23 Order, December 8, 2003). Mr. Miller subsequently filed a *pro se* post-conviction petition, which was summarily dismissed on January 24, 2005. (PC-158).

### Facts Adduced at the Bench Trial

Mrs. Jennifer Alexander testified that on October 8, 2000 at 5:30 p.m., she was at her home at 2201 Sherman, Evanston, Illinois. (R-14). She looked out of her bedroom window and observed that someone was in the enclosed back porch of her next door neighbor's house at 2205 Sherman. (R-13-16,41). The neighbor was out of town, and Mrs. Alexander and her husband, Richard, had the key to the neighbor's back porch. (R-14-15). Mrs. Alexander and her husband went next door, used the key to unlock the door to the porch, and noticed that one of the screens was cut and the window was open. (R-17-18). Mrs. Alexander backed out of the porch, and began closing the back door when she heard screaming and saw a man running towards her waving his hands. (R-20,32-33). Mrs. Alexander later identified this man as Mr. Miller. (R-21-22). Mr. Richard Alexander also identified Mr. Miller as the man he saw on the back porch steps. (R-58-59).

Mr. Miller then went to the side of the house and retrieved a bicycle. When Mr. Miller reached the gate, the bike got stuck and Miller began pulling it towards him while he backed through the gate. (R-56-57). Mr. Alexander testified that he jumped towards Mr. Miller and hit the bike, which caused both him and Miller to fall to the ground. (R-

-4-

57). Miller got up and left on foot going south on Sherman, leaving the bike at the scene. (R-24). Mr. Alexander then saw Miller turn west onto Garfield. (R-58-59). Mrs. Alexander went inside the neighbor's house and called the police, and an officer came to the house 10 to 15 minutes later. (R-41,25,36). Mrs. Alexander testified that 10 to 15 minutes after that, a second squad car brought Miller to the house, where they identified him as the man in the house. (R-42,25-26).

Mary Conlon testified that she lives at 2205 Sherman, and was out of town on October 8, 2000. (R-74). When she returned home from her trip, Ms. Conlon observed that the drawers had been pulled out of the cabinet in her bedroom, and the items in the drawers had been scattered throughout her bedroom and the hallway. (R-75). Conlon testified that she did not know Mr. Miller, and never gave him permission to enter her house or take anything from it. (R-75). Conlon stated that nothing was taken from her home. (R-78).

On October 8, 2000, Officer Ryan Lambeseder was on patrol, alone, in uniform, and in a marked squad car. (R-80-81). At around 5:35 or 5:40 p.m., Lambeseder heard a radio message that there was a burglary in progress around the 2100-2200 block of Sherman. (R-80-81,88). Lambeseder drove to the 2100 block of Ridge at Leonard and parked on the west side of the street facing east. (R-82-83). Lambeseder testified that less than 10 minutes later, he observed a man who was short, black, and wearing dark clothing, sprint in between some houses towards Ridge. (R-83). Lambeseder identified this man as Mr. Miller. (R-86).

Lambeseder testified that when he stopped Mr.Miller, he observed that Miller was out of breath and sweaty. (R-85). Lambeseder placed Miller in custody and told him that he was being stopped for burglary because he fit the description of the offender. (R-

86). Lambeseder searched Mr. Miller, and found a small pry bar in his front pocket, and two Swiss army knives in his rear right pocket. (R-86-87). Lambeseder testified that none of the items recovered from Mr. Miller were the proceeds of the burglary. (R-93-94). Mr. Miller was then put into Lambeseder's marked squad car and taken to 2205 Sherman for a show-up. (R-87-88).

Mr. Miller testified that on October 8, 2000, he was doing carpentry work for Velma Thomas who lives at 1310 Foster. (R-123-124). Mr. Miller testified that he was putting down a new floor for Ms. Thomas, and used a pry bar, hammer and nails to do this. (R-124). Mr. Miller stated that he has a bicycle, but that on that day the bike was locked up on the front step of Velma Thomas' house. (R-130). When Mr. Miller finished work that day around 5:00 or 5:15 p.m., he walked to the el station to go home when he spotted some junk in the alley between Maple and Ridge. (R-124-125,135-136). Miller testified that he had been salvaging in that area before, so he went down the alley to look around. (R-125). In the alley behind an apartment building just in front of Ridge and Leonard, Mr. Miller discovered a roll of carpet that he thought could be put over the new flooring he installed at Ms. Thomas' house that day. (R-125,142). Miller stated that he intended to go back to the area where Ms. Thomas lived to see if he could find someone to give him a ride, and help him bring the carpet back to Ms. Thomas' house. (R-126). Miller testified that he exited the alley in between some buildings onto Ridge and Leonard, walked to the curb, and then encountered an officer who was parked at the stop sign at Ridge and Leonard. (R-127-128). Miller stated that he was not running, sweating or out of breath at this time. (R-127). Miller testified that he brought the pry bar with him that he used to put down the flooring at Ms. Thomas' house that day, and always carried the Swiss Army knives with him because they were a gift from Ms.

-6-

Thomas. (R-124-125). Miller stated that all of the property recovered from him by the officer that day belonged to him. (R-128). Miller testified that he did not burglarize any house that day. (R-129-130).

Miller stated that he was taken from 2205 Sherman to the police station where he spoke to Detective Carlos Mitchem. (R-130-131). Miller told Mitchem that he owned a blue Rally two speed bike, but it was locked to the porch at 1310 Foster. (R-130). Trial counsel called Detective Mitchem to testify that Mitchem went to 1310 Foster that same day, and saw a Rally bike chained to the front porch at 1310 Foster. (R-146-148). Trial counsel also attempted to elicit from Mitchem the substance of his conversation with Velma Thomas. (R-145). The trial court sustained the State's objections and told trial counsel that "the entire conversation is hearsay and just knowing the questions without her answer is not helpful to me anyway." (R-147).

The parties stipulated that Mr. Miller was convicted of residential burglary in 1997 and 1992, and felony theft in 1990. (R-150).

Mr. Miller was convicted of residential burglary and possession of burglary tools. (R-171).

### Post-Trial Motion

The court appointed private counsel to represent Mr. Miller for post-trial motions. (R-185,189). In the motion for a new trial, Mr. Miller's post-trial counsel argued, among other things, that Miller's trial counsel was ineffective for failing investigate and present exculpatory evidence on Mr. Miller's behalf. (R-216, 234, 235, C-149-156). At the hearing on the motion, post-trial counsel argued that a neighbor of the burglarized house called the police and reported a man was running through the yards and was bleeding from the head, but that Mr. Miller was not cut or bleeding from

the head. (R-216, 234). Post-trial counsel also argued that there was a lot more trial counsel could have done on Mr. Miller's behalf because "there was a lot of information available to defense counsel via the police report and via sending out investigators and so much work he could have brought pretrial motion or better examined the State's witnesses or at least put on independent evidence presented by the State." (R-235). To support the arguments in the motion, post-trial counsel attached several exhibits, including Exhibit A, the police incident report. (C-10-21). According to the police incident report, Exhibit A, the officers received a call shortly after the burglary from a man identified as "Gupta" who stated that a short, black, male wearing dark clothing was seen running west on Garfield from Sherman and was bleeding from the head. An additional caller known as "Thompson" also stated that he saw a short, black male wearing black clothes running west through his back yard. (C-10-14).

The court denied Mr. Miller's motion for a new trial, and sentenced Mr. Miller to 18 years' imprisonment. (R-235,249).

### Direct Appeal

Appellate counsel on direct appeal challenged Mr. Miller's conviction and sentence based on the following arguments: 1) the State's failure to prove Mr. Miller's guilt beyond a reasonable doubt when the identification of Mr. Miller as the offender was vague and doubtful; 2) the trial court erred when it denied Mr. Miller's motion for a new trial when trial counsel provided ineffective assistance by failing to move to suppress the identification evidence; 3) the mandatory Class X sentencing provision violates due process; 4) the trial court's failure to properly admonish Mr. Miller pursuant to Supreme Court Rule 605(a); and 5) the mittimus did not accurately reflect the number of days' credit due Mr. Miller for time spent in pre-trial custody.

-8-

This Court amended the mittimus to correctly reflect Mr. Miller's pre-trial custody credit. In affirming Mr. Miller's conviction, this Court stated that "admittedly, the description of the offender as a short, black man in dark clothing was general, but not to the point where the trial court had to discredit the Alexanders' subsequent identification of defendant." (PC Supp-10). This Court also found that had trial counsel filed a motion to suppress the identification evidence, the motion would have failed and Mr. Miller would have still been found guilty at trial. Thus, trial counsel was not ineffective for failing to file the motion. (PC Supp-18).

### Post-Conviction Petition

Mr. Miller's *pro se* post-conviction petition was filed and docketed on October 26, 2004. (PC- 50). In his petition, Mr. Miller raises several claims regarding ineffective assistance of trial, post-trial, and appellate counsel. (PC-61-134). With respect to trial counsel, Mr. Miller's allegations include claims of ineffective assistance of counsel for failing to: 1) call Velma Thomas as an alibi witness (PC-60) and 2) investigate and call "Gupta" and "Thompson" as potential exculpatory witnesses (PC-64, 70). Miller also alleged ineffective assistance of appellate counsel for, among other reasons, failing to challenge the ineffectiveness of trial and post-trial counsel on appeal (PC-100).

Mr. Miller's *pro se* post-conviction petition was summarily dismissed on January 24, 2005. (PC-158). In the order dismissing the petition, the circuit court stated that Mr. Miller "seeks to relitigate each and every fact state [*sic*] sought to introduce at trial. Nothing new is raised in the petition. The evidence against the defendant is overwhelming. The petition for post-conviction relief completely fails to state a claim and is patently without merit." (PR-9, PC-158).

The panel attorney assigned to the appeal of the trial court's ruling through the Office of the State Appellate Defender filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This Court denied the motion on June 9, 2006. This appeal follows.

## ARGUMENT

I.    **Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to call an alibi witness on Mr. Miller's behalf.**

Following a bench trial, Robert Miller was convicted of residential burglary. Trial counsel presented an alibi and misidentification defense. In his *pro se* post-conviction petition for relief, Miller alleged, in part, that trial and post-trial counsel were ineffective when they failed to call Velma Thomas, his employer at the time of the incident, as a critical alibi witness. (PC-61-2). This claim is not rebutted by the record and when taken as true - as must be done at this stage of the proceedings - states the gist of a constitutional claim. *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). Accordingly, the trial court erred when it summarily dismissed Miller's claim that trial and post-trial counsel were ineffective for failing to call a critical alibi witness in presenting the alibi defense, and this Court must remand this matter for second-stage post-conviction proceedings. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

It is well settled that to avoid a first-stage dismissal, a petition need only state the gist of a claim that the petitioner's constitutional rights were violated. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). In deciding whether a petition meets this test, the trial court must accept as true all well-pleaded facts not positively rebutted by the record. *Gaultney*, 174 Ill. 2d at 418. The "gist" standard is "a low threshold." *Id*. The standard is low because "petitioners are often persons of limited education ...[and] requiring *pro se* petitioners to state their claims in greater detail than this would have the practical effect of depriving many such persons of their right of meaningful access to the courts." *People v. Dredge*, 148 Ill. App. 3d 911, 913 (4th Dist. 1986). To set forth the gist of a constitutional claim, a *pro se* post-conviction petition need only present a limited

amount of detail and need not set forth the claim in its entirety. *Edwards*, 197 Ill. 2d at 244. Furthermore, the petition need not include legal arguments or citations to legal authority. *Id; see also People v. Jones*, 168 Ill. App. 3d 925, 936 (1st Dist. 1988).

In addition, at the first stage of post-conviction proceedings, petitioners are not required to prove that their claims would ultimately entitle them to relief. Substantive questions relating to the issues raised in the post-conviction petition are not to be addressed at the first stage of the proceedings. *People v. Smith*, 326 Ill. App. 3d 831, 839-840 (1st Dist. 2001) (reversing and remanding the summary dismissal of defendant's post-conviction petition based on ineffective assistance of counsel, finding that it was not necessary to determine if the petitioner would be entitled to relief, but only if he stated the gist of a constitutional claim); *see also People v. Ledbetter*, 342 Ill. App. 3d 285, 286-287 (4th Dist. 2003) (where the court declined to consider the State's argument that the errors alleged in defendant's post-conviction petition were not prejudicial because the only relevant inquiry was whether the petition presented a gist of a constitutional claim). Where the petitioner states the gist of a meritorious constitutional claim, counsel must be appointed and the petition must advance to the second stage for further proceedings pursuant to sections 122-4 through 122-6 of the Post-Conviction Hearing Act. *Gaultney*, 174 Ill. 2d at 418.

The summary dismissal of a *pro se* post-conviction petition should be reviewed *de novo. Coleman*, 183 Ill. 2d at 388-89.

Here, Miller has met this low "gist" standard because his *pro se* post-conviction petition, taken as true and liberally construed, presented the gist of a meritorious constitutional claim of ineffective assistance of trial and post-trial counsel based on trial counsel's failure to call a crucial witness to Miller's alibi defense and post-trial counsel's

-12-

failure to include this issue in his post-trial motion. In his *pro se* petition, Miller alleged

that Velma Thomas would have testified that Miller was working for her on the day of

the burglary and that he left her house at 1310 Foster Avenue just a few minutes before

the burglary took place on 2205 Sherman, about half a mile away (C-21). (PC-61-2).

Velma Thomas would have also testified that Miller's pry bar was used to work on her

floor, that she gave him the pocket knives as gifts, and that Miller's bicycle was chained

to her front porch and not left at the crime scene. (PC-61-2, R-124-5). Although Velma

Thomas' testimony would have corroborated Miller's alibi defense, trial counsel failed

to call her to the stand to testify. (PC-61). The record reveals that trial counsel listed

Thomas as a potential witness on Miller's answer to discovery (C-32) and subpoenaed

her for the day of trial (PC-135). Despite the fact that Thomas was present in the

courtroom on the day of trial, trial counsel never called her to the stand to testify. (PC-

61). The record reflects that trial counsel viewed the substance of Velma Thomas'

testimony as important because he tried to elicit the same information through Detective

Carlos Mitchem when he questioned Mitchem regarding Mitchem's conversation with

Thomas. (R-145-8). Assuming the truth of Miller's allegations, as is required for a first-

stage post-conviction proceeding, he stated the gist of a constitutional claim that he was

denied his Sixth Amendment right to counsel.

A defendant is guaranteed the right to effective assistance of counsel under the

United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970,

art. I, sec. 8; *Strickland v. Washington*, 466 U.S. 668, 688-9 (1984); *People v. Albanese*,

104 Ill. 2d 504, 526 (1984). In the context of the ineffective assistance claim, at the first

stage of post-conviction proceedings, the issue to be determined is whether the petition

alleges the gist of a constitutional deprivation that is unrebutted by the record. *People v.*

*Plummer*, 344 Ill. App. 3d 1016, 1020 (1st Dist. 2004); *People v. Brown*, 336 Ill. App. 3d

711, 720 (1st Dist. 2002); *People v. Paleologos*, 345 Ill. App. 3d 700, 705 (1st Dist.

2003). A petitioner need not prove that his claims of ineffectiveness of counsel meet the

*Strickland* standard in order to state the gist of constitutional claim. *Plummer*, 344 Ill.

App. 3d at 1024 (finding that the petitioner stated the gist of a constitutional claim of

ineffectiveness of counsel, and specifying that "We take no position on defendant's

ability to prove his ineffective assistance claims; however, we find his petition and the

record warrant proceeding to the second stage of the post-conviction process. Defendant

alleged the gist of a constitutional deprivation which was substantively unrebutted by the

record"). In the instant case, Miller stated the gist of a claim that trial counsel was

ineffective for failing to call Velma Thomas who would have corroborated Miller's

testimony that he was a half a mile away from the robbery when it took place. (PC-61-2).

Illinois courts recognize that a criminal defendant's right to a fair trial is violated

by trial counsel's failure to investigate and present favorable witnesses, especially where

the witnesses are known to trial counsel and their testimony may be exonerating.

*Coleman*, 183 Ill. 2d at 398. Failure to present a known exculpatory witness supporting

an otherwise uncorroborated defense may be deemed ineffective. *People v. King*, 316

Ill. App. 3d 901, 913 (1st Dist. 2000). Here, trial counsel was aware of the importance of

Velma Thomas' testimony, as reflected by the fact that he listed her as a possible witness

on his answer to discovery (C-32), he subpoenaed her (PC-135), and he attempted to

elicit the substance of her testimony through Detective Mitchem (R-145-8). The attempt

to elicit the information from Mitchem was as unnecessary as it was unsuccessful

because Velma Thomas was present in the courtroom on the day of trial. (PC-61-2).

When Miller alleged that Velma Thomas was a crucial witness whose testimony would

-14-

have corroborated Miller's testimony that he was nowhere near the burglary when it happened, that the pry bar and knives were not burglary tools and that trial counsel was ineffective for failing to call her to testify, Miller stated the gist of a constitutional claim that is unrebutted by the record. Accordingly, Miller's petition should advance to second-stage proceedings.

While counsel's decision of whether to present a particular witness is generally a matter of strategic decision-making, this decision constitutes ineffective assistance of counsel when it is unreasonable and results in "counsel's failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense." *People v. Brown*, 336 Ill. App. 3d 711, 718 (1st Dist. 2002). Here, the record reveals no obvious strategic reason for counsel's failure to call Velma Thomas to testify. Indeed, doing so would have been consistent with his trial strategy, and in light of the fact that he unsuccessfully attempted to elicit the same information through Mitchem, further proceedings are required to determine whether it was unreasonable not to call Velma Thomas to the stand since she was already present in the courtroom. *See Brown*, 336 Ill. App. 3d at 720; *Paleologos*, 345 Ill. App. 3d at 705 (stating a constitutional deprivations that is unrebutted by the record is sufficient to require the circuit court to appoint counsel for second-stage proceedings).

In *Brown*, this Court held that circuit court improperly summarily dismissed petitioner's *pro se* post-conviction petition where the petition alleged that trial counsel failed to present alibi witnesses. In light of the exculpatory nature of the alibi witness testimony and because trial counsel was aware of these witnesses, the failure to call the witnesses could not be dismissed as trial strategy based on the record before this Court.

-15-

*Brown*, 336 Ill. App. 3d at 720-721

　　　Just as in *Brown*, the failure to call Velma Thomas as an alibi witness cannot be determined to be a strategic choice based on the current record. *Brown*, 336 Ill. App. 3d at 720. Here, trial counsel's theory of the case was that Miller was nowhere near the scene of the burglary, and that the Alexanders were mistaken in their identification of Miller as the offender. Additional evidence that Miller left Velma Thomas' house on Foster between 5:00 and 5:15 p.m. would have bolstered Miller's testimony that he had an alibi and that he was misidentified. Velma Thomas would have supplied that testimony. (PC-61-2). The record reflects that trial counsel was aware of the importance of Velma Thomas' testimony because he listed her as a possible witness on the answer to discovery (C-32), he subpoenaed her (PC-135), and he attempted to elicit the substance of her testimony through Detective Mitchem (R-145-8). The corroborating evidence trial counsel sought was Velma Thomas' testimony, and could have been introduced simply by calling her to the stand, as she was already present in the courtroom. (PC-61-2). As in *Brown*, further proceedings are necessary to determine whether trial counsel's failure to call Velma Thomas constituted trial strategy. Thus, Miller alleged a constitutional deprivation in that counsel's failure to call Velma Thomas to testify when her testimony would have corroborated Miller's defense constituted ineffective assistance of counsel. At this stage in the proceeding, Miller meets the pleading requirements for advancement to second-stage proceedings because this gist of a constitutional claim is unrebutted by the record. Accordingly, the matter should be remanded for second-stage post-conviction proceedings. *See Brown*, 336 Ill. App. 3d at 720-721; *Paleologos*, 345 Ill. App. 3d at 705 (when the petition alleges a constitutional deprivation unrebutted by the record, the petition is rendered neither frivolous or

patently without merit and must be advanced).

Moreover, this error was of such a magnitude that post-trial counsel should have noted this in his post-trial motion for a new trial. Post-trial counsel argued that trial counsel could have done a lot more on Miller's behalf, referring to information available to trial counsel through the police reports. Thus, the record indicates that post-trial counsel examined discovery materials as well as the transcripts in drafting his post-trial motion. In doing so, post-trial counsel would have seen the fact that Velma Thomas was listed as a potential witness on trial counsel's answer to discovery, that he subpoenaed Thomas, and that he unsuccessfully attempted to elicit the information that Velma Thomas possessed through Detective Mitchem. These documents, along with a conversation with Miller in which Miller could confirm that Thomas was present in court on the day of trial, give rise to an additional reason to argue ineffective assistance of counsel at the hearing on the motion for a new trial. Post-trial counsel was ineffective for failing to do so.

Miller has demonstrated the gist of a claim of ineffective assistance of counsel and, as a *pro se* first-stage petitioner, need not demonstrate prejudice. *People v. Shevock*, 353 Ill. App. 3d 361, 365 (4th Dist. 2004). Because a "gist" is "something less than a completely pled or fully stated claim[,]" *Edwards*, 197 Ill. 2d at 245, at this stage a petitioner need allege only a "factual element" underlying petitioner's claim of counsel's deficient performance such that the petition appears to have "potential merit." *Shevock*, 353 Ill. App. 3d at 365. Miller has amply demonstrated the factual element underlying his claim of ineffective assistance of counsel where counsel failed to call a crucial alibi witnesses.

Even though Miller is not required to demonstrate prejudice at the gist stage,

-17-

prejudice is readily apparent. Miller has shown that Velma Thomas was an alibi witnesses who was present at trial and willing to testify on his behalf, and that he was prejudiced by trial counsel's failure to call her to the stand. *People v. Morris*, 335 Ill. App. 3d 70, 85 (1ˢᵗ Dist. 2002) (petitioner's allegations of ready and willing alibi witness meets the second prong of *Strickland* in the context of post-conviction proceedings). This is especially true in light of the exculpatory nature of the witnesses described in the petition. *Brown*, 336 Ill. App. 3d at 720 (strength of the evidence could not foreclose post-conviction claim of ineffective assistance of counsel for failing to present alibi witnesses in light of the exculpatory nature of the evidence). There is no question that where an additional witness would have testified that Miller was about a half a mile away from the burglary, trial counsel's failure to present this testimony, as alleged in the petition, prejudiced Miller. Finally, Miller was prejudiced by post-trial counsel's failure to include this issue in the post-trial motion, especially in light of the fact that the record indicates the trial court may have been bothered by the fact that the evidence upon which post-trial counsel was relying was not introduced at trial. An additional argument regarding what trial counsel failed to introduce might have concerned the trial court enough to order a new trial. (R-217).

At this stage, it is not Miller's burden to establish conclusively trial or post-trial counsel's ineffectiveness nor to prove the eventual outcome of a trial, but rather to merely state the gist of a constitutional claim. *Coleman*, 183 Ill. 2d at 380, n.2 (1998). Here, Miller's petition states the gist of a constitutional claim, unrebutted by the record, that trial counsel's failure to call a crucial alibi witness constituted ineffective assistance of counsel.

Notably, in summarily dismissing the petition, the trial court stated that Miller

"seeks to relitigate each and every fact State sought to introduce at trial. Nothing new is raised in the petition. The evidence against the defendant is overwhelming. The petition for post conviction relief completely fails to state a claim and is patently without merit." (PR-9). However, Miller's claim that he received ineffective assistance of counsel involve matters outside the trial record, such as Velma Thomas' subpoena and the fact that she was present in the courtroom on the day of trial, and are therefore cognizable in a post-conviction petition. *See People v. Britz*, 174 Ill. 2d 163, 178-79 (1996) (holding that challenges to counsel's representation is cognizable in a post-conviction petition if the claim regards a matter outside the trial record). Moreover, although the circuit court ends its discussion by mentioning the "gist" standard, it engages in the sort of substantive analysis which is not appropriate at this stage. Rather than considering whether Miller's petition contained the gist of a claim that counsel was ineffective, the court prematurely engaged in a substantive analysis of the merits of the claim when it stated that "the evidence against the defendant is overwhelming." (PR-9). This Court made clear in *Brown* that the strength of the State's evidence at trial does not foreclose the question of whether there has been a constitutional deprivation. *Brown*, 336 Ill. App. 3d at 721. Here, the petition plainly more than meets the "gist" standard required to survive summary dismissal in stating the gist of an ineffective assistance of counsel claim when it asserts that trial and post-trial counsel's error undermined Miller's alibi defense and trial strategy of mistaken identity. (PC-61-2).

Miller's allegation of ineffective assistance of counsel states the gist of a cognizable claim in a post-conviction petition, and the trial court erred in summarily dismissing his petition. Thus, this Court should reverse the summary dismissal of Miller's post-conviction petition and remand for second-stage proceedings.

-19-

**II.    Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to investigate two exculpatory witnesses and that appellate counsel was ineffective for failing to raise this issue on direct appeal.**

Robert Miller's *pro se* post-conviction petition states the gist of a claim that he was denied his right to effective assistance of counsel when trial and post-trial counsel failed to investigate two exculpatory witnesses, and that appellate counsel was ineffective for failing to raise this issue on direct appeal. Because the exculpatory witnesses would have bolstered Miller's claim that he was misidentified, any appeal of this issue would have had merit. Miller's petition correctly asserts that the failure to raise this issue was ineffective assistance of counsel. The circuit court's summary dismissal of the petition was thus improper, and this Court should reverse and remand for the appointment of counsel and second-stage proceedings.

At the first stage of a post-conviction petition, the petition need only present "the gist of a constitutional claim" in order to avoid summary dismissal. *People v. Boclair*, 202 Ill. 2d 89, 99-100 (2002); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001); 725 ILCS 5/122-1, *et seq.* (2005). Claims of ineffective assistance of counsel in a post-conviction petition are measured by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 688-9 (1984). *People v. King*, 316 Ill. App. 3d 901, 912 (1st Dist. 2000). Under *Strickland*, to establish a claim for ineffective assistance of trial or appellate counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's actions resulted in prejudice to the defendant. *Strickland*, 466 U.S. at 687; *People v. Enis*, 194 Ill. 2d 361, 377 (2000). Although counsel's tactical decisions are given great deference under *Strickland*, "they may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he is aware." *King*, 316 Ill. App. 3d at 913. At a first-stage post-conviction

proceeding, however, the petitioner need not prove a claim of ineffectiveness, but instead, must only state the gist of such a claim. *Edwards*, 197 Ill. 2d at 245-47. Substantive questions relating to the issues presented in the *pro se* post-conviction petition are not to be addressed at the first stage of the proceedings. *People v. Smith*, 326 Ill. App. 3d 831, 839–40 (1st Dist. 2001); *see also People v. Ledbetter*, 342 Ill. App. 3d 285, 286–87 (4th Dist. 2003) (declining to consider the State's argument that the errors alleged in petitioner's post-conviction petition were not prejudicial because the only relevant inquiry was whether the petition presented the gist of a constitutional claim). Thus, in the present case, Miller need only demonstrate that his claim of ineffective assistance of counsel had "potential" merit such that it stated the "gist" of a claim. *People v. Shevock*, 353 Ill. App. 3d 361, 364-365 (4th Dist. 2004); *Edwards*, 197 Ill. 2d at 254.

Here, Miller meets this low standard by stating the gist of a claim that he was denied his constitutional right to counsel at trial and on appeal. Miller alleged in his petition that information was known to trial and post-trial counsel through the police report that two additional witnesses, identified as "Gupta" and "Thompson," saw a man run from the area of the burglary, and that the man could not have been Miller because the man was bleeding from the head and Miller was not, but that trial and post-trial counsel failed to investigate and call these witnesses. (PC-65). Miller also alleged that as these documents were available to appellate counsel through the trial record, appellate counsel was ineffective for failing to raise this issue on direct appeal. (PC-70).

In order to be effective, trial counsel has a duty to conduct both factual and legal investigations on behalf of his client. *People v. Morris*, 3 Ill. 2d 437, 452 (1954); *People v. Montgomery*, 327 Ill. App. 3d 180, 185 (1st Dist. 2001). *See also People v. Plummer*,

344 Ill. App. 3d 1016, 1023-1024 (1st Dist. 2003) (petitioner presented gist of constitutional claim where he asserted ineffective assistance of counsel for trial counsel's failure to investigate).　Illinois courts recognize that a criminal defendant's right to a fair trial is violated by trial counsel's failure to investigate and present favorable witnesses, especially where the witnesses are known to trial counsel and their testimony may be exonerating. *Coleman*, 183 Ill. 2d at 398.　Failure to present a known exculpatory witness supporting an otherwise uncorroborated defense may be deemed ineffective. *King*, 316 Ill. App. 3d at 913.

　　　　Counsel's failure to investigate or call "Gupta" and "Thompson" constituted inadequate performance and cannot be explained away as trial strategy at this initial summary dismissal stage. *Montgomery*, 327 Ill. App. 3d at 189.　According to the petition, which must be taken as true, trial and post-trial counsel did not make a strategic decision not to call these witnesses to testify, but rather failed to even interview or attempt to contact the witnesses to ascertain the content of their testimony.　(PC-64).　*See People v. Brown*, 336 Ill.App.3d 711, 718 (1st Dist. 2002) (advancing a *pro se* post-conviction petition to second-stage proceedings where trial counsel was aware of exculpatory witnesses because in light of the exculpatory nature, the failure to call them could not be dismissed as trial strategy at the first stage because the claims were unrebutted by the record).

　　　　In his *pro se* post-conviction petition, Miller alleged that his trial and post-trial counsel's failure to investigate two exculpatory witnesses was prejudicially unreasonable, and that appellate counsel's failure to raise this issue on direct appeal also constituted ineffective assistance of counsel.　(PC-64, 70).　These claims, taken as true at this stage in the proceedings, are unrebutted by the record.　Under the low pleading

standard applicable to this proceeding, Miller states the gist of a constitutional claim such that the petition must be advanced to second-stage proceedings. *See Brown*, 336 Ill. App. 3d at 720; *People v. Paleologos*, 345 Ill. App. 3d 700, 705 (1st Dist. 2003) (both holding that when *pro se* post-conviction claims of ineffective assistance allege a constitutional deprivation that is unrebutted by the record, the petition must be advanced to second-stage proceedings). Trial counsel's theory at trial was that Miller was nowhere near the crime scene and that he was simply misidentified. In light of the very general description of the offender, the fact that Miller did not really match it and the fact that the show-up was highly suggestive, there was support for trial counsel's theory that Miller was not the offender.

Additional evidence exists to support the theory that Miller was misidentified. Two people called the police moments after Mrs. Jennifer Alexander called the police. The additional callers were identified as "Gupta" and "Thompson." "Gupta" reported seeing a short black male running westbound on Garfield, and that the man was bleeding from the head. "Thompson" reported that he saw a short black man running through his back yard. (PC-141). "Gupta" and "Thompson" gave the same description as the offender as initially provided by Mrs. Alexander. However, this man had a head wound. As the head wound could have been sustained during the struggle with Mr. Alexander, it is more reasonable to think that this man was the offender rather than Miller, who was about a half a mile away. Although investigating "Gupta" and "Thompson" as potential witnesses would have been consistent with his misidentification defense, trial and post-trial counsel failed to do so.

Post-trial counsel argued in his post-trial motion for a new trial that trial counsel was ineffective for failing to investigate and call these witnesses. Post-trial counsel

-23-

argued that "there was a lot of information available to defense counsel via the police report and via sending out investigators and so much work.... at least put on independent evidence...." To support the argument that there was enough information in the police reports to require further investigation, post-trial counsel attached Exhibit A, the police incident report that includes the information supplied by "Gupta" and "Thompson." (C-11). The existence of "Gupta" and "Thompson" as potential exculpatory witnesses were thus made a part of the trial court record.

On direct appeal, appellate counsel argued that the identification of Miller was vague, doubtful and uncertain such that it failed to prove Miller guilty beyond a reasonable doubt. Appellate counsel also argued that trial counsel was ineffective for failing to move to suppress the identification process. Clearly, appellate counsel sought to challenge the identification of Miller. However, despite the fact that the trial record reflected that "Gupta" and "Thompson" provided information that supported appellate counsel's theory that Miller was misidentified, appellate counsel failed to raise any issue associated with "Gupta" and "Thompson."

Miller has demonstrated the gist of a claim of ineffective assistance of counsel and, as a *pro se* first-stage petitioner, need not demonstrate prejudice. *People v. Shevock*, 353 Ill. App. 3d 361, 365 (4th Dist. 2004). Because a "gist" is "something less than a completely pled or fully stated claim[,]" *Edwards*, 197 Ill. 2d at 245, at this stage a petitioner need allege only a "factual element" underlying petitioner's claim of counsel's deficient performance such that the petition appears to have "potential merit." *Shevock*, 353 Ill. App. 3d at 365. Miller has amply demonstrated the factual element underlying his claim of ineffective assistance of counsel where trial and post-trial counsel failed to investigate potential exculpatory witnesses.

Even though Miller is not required to demonstrate prejudice at the gist stage, prejudice is readily apparent. Miller has shown that "Gupta" and "Thompson" were potentially two exculpatory witnesses whose testimony could have supported the defense's theory of misidentification. The exculpatory nature of the witnesses, *i.e.*, that they saw a short black man in dark clothes running from the area of the burglary and that "Gupta" saw that the man was bleeding from his head, was of such a magnitude that trial counsel's failure to investigate and call these witnesses constituted ineffective assistance of counsel. *See Brown*, 336 Ill. App. 3d at 720 (strength of the evidence could not foreclose post-conviction claim of ineffective assistance of counsel for failing to present alibi witnesses in light of the exculpatory nature of the evidence). There is no question that where additional witnesses could have testified that the man they saw fleeing from the direction of the burglary - shortly after the burglary- and that he was bleeding, counsel's failure to explore this defense, as alleged in the petition, prejudiced Miller.

At this stage, it is not Miller's burden to establish conclusively trial and post-trial counsel's ineffectiveness nor to prove the eventual outcome of a trial, but rather to merely state the gist of a constitutional claim. *Coleman*, 183 Ill. 2d at 380, n.2 (1998). Here, Miller's claim that trial and post-trial counsel's failure to investigate and call two witnesses whose description of a man they saw running suggests that the true offender got away constituted ineffective assistance of counsel states a constitutional deprivation not rebutted by the record.

Notably, in summarily dismissing the petition, the trial court stated that Miller "seeks to relitigate each and every fact State sought to introduce at trial. Nothing new is raised in the petition. The evidence against the defendant is overwhelming. The petition for post conviction relief completely fails to state a claim and is patently without merit."

(PR-9).  However, Miller's claim that he received ineffective assistance of trial and appellate counsel involve constitutional questions appropriately reviewed under the Post Conviction Hearing Act.  *People v. Scott*, 143 Ill.App.3d 540, 541 (1st Dist. 1986); *People v. Perez*, 115 Ill.App.3d 446, 451 (1st Dist. 1983) (both holding that challenges to appellate counsel's representation is cognizable in a post-conviction petition because it raises a constitutional issue).  Additionally, although the circuit court ends its discussion by mentioning the "gist" standard, it engages in the sort of substantive analysis which is not appropriate at this stage.  Rather than considering whether Miller's petition contained the gist of a claim that counsel was ineffective, the court prematurely engaged in a substantive analysis of the merits of the claim when it stated that "the evidence against the defendant is overwhelming."  (PR-9).  Moreover, the trial court dismissed the *pro se* post-conviction petition on the 90th day from the filing and docketing of the petition and without the benefit of actually hearing the case.  (PR-8-9, R-209, 249).  The petition plainly more than meets the "gist" standard required to survive summary dismissal in stating the gist of an ineffective assistance of counsel claim when it asserts that trial and post-trial counsel's error undermined Miller's alibi defense and trial strategy of mistaken identity.  (PC-61-2).

The circuit court erred when it did not find that Robert Miller's post-conviction petition stated the gist of a claim that his constitutional rights were violated when trial and post-trial counsel failed to investigate two exculpatory witnesses and that appellate counsel failed to raise this issue on appeal.  Accordingly, this Court should reverse the summary dismissal of Miller's post-conviction petition and remand for second-stage post-conviction proceedings.

## CONCLUSION

For the foregoing reasons, Robert Miller, Petitioner-Appellant, respectfully requests that this Court reverse the summary dismissal and remand the post-conviction petition for second-stage proceedings.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

EMILY S. WOOD
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

## CERTIFICATE OF COMPLIANCE

I, Emily S. Wood, certify that this brief conforms to the requirements of Supreme Court

Rule 341(a) and (b). The length of this brief, excluding the appendix is <u>29</u> pages.


EMILY S. WOOD
Assistant Appellate Defender

## **APPENDIX TO THE BRIEF**

Index to the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Written Circuit Court Order Dismissing Petition for Post-Conviction Relief . . . . . . . . . . . . A-5

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6

## INDEX TO THE RECORD

**Common Law Record ("C")** **Page**

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pro Se* Motion for Reconsideration (August 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pro Se* Motion for Status (September 21, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Motion for Trial Transcripts and Common Law Records (March 29, 2004) . . . . . . . . . . . . . . 21

Letter from Defendant Robert Miller to Assistant Public Defender Robert Goodman
regarding his appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Record Receipt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Letter from Defendant Miller to Assistant Appellate Defender Kari Firebaugh regarding
appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Motion for Reconsideration (August 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Motion to Proceed in Forma Pauperis (October 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Motion for Appointment of Counsel (October 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Pro Se* Petition for Post-Conviction Relief (October 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . 53

Order Dismissing Petition for Post-Conviction Relief (January 24, 2005) . . . . . . . . . . . . . . . 158

*Pro Se* Notice of Appeal (February 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163


**Supplemental Record ("SR")**

Appellate Court Rule 23 Order in Appeal No. 1-02-0504 (September 23, 2005) . . . . . . . . . . . 2


**Report of Proceedings ("R")**

| | Direct | Cross | Redir. | Recr. |
|---|---|---|---|---|
| September 24, 2004 | | | | |
| Motion for Trial Transcripts - Denied | | | | 6 |
| January 24, 2005 | | | | |
| Petition for Post-Conviction Relief - Denied | | | | 9 |

**Direct Appeal Record**
**Common Law Record ("SC")**                                                    **Page**

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

Complaints for Preliminary Examination (October 10, 2000) . . . . . . . . . . . . . . . . . . . . . . . . 4,6

Arrest Report (October 8, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Information (November 1, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

State's Motion for Discovery (November 8, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Defendant's Answer to Discovery (May 15, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Jury Waiver Form Signed (June 14, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Pro Se Motion for New Trial (July 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Presentence Investigation Report (July 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

Transfer Order to Presiding Judge for Appointment of Counsel (August 13, 2001) . . . . . . . . 141

Appearance (September 14, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

Court's Order to Prepare Trial Transcripts on June 14, 2001 (September 14, 2001) . . . . . . . 143

Court's Order to Prepare Trial Transcripts on June 15, 2001 (October 12, 2001) . . . . . . . . . 144

Letter from Defendant to Judge Orr . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145

Motion for New Trial (January 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146

Court's Order of the Law Firm of Addis, Greenberg Schultz & Elizer, LLC is Relieved from
Appointment of Counsel (February 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Sentencing Order (February 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 164

Notice of Appeal (February 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166

**Direct Appeal**
**Report of Proceedings ("SR")**

|  | **Direct** | **Cross** | **Redir.** | **Recr.** |
|---|---|---|---|---|
| November 8, 2000 - Arraignment |  |  |  | 3 |
| June 14, 2001 |  |  |  |  |

|  |  | **Direct** | **Cross** | **Redir.** | **Recr.** |
|---|---|---|---|---|---|
| **Bench Trial** |  |  |  |  |  |
| Jury Waiver Signed |  |  |  |  | 9 |
| Opening Statement |  |  |  |  |  |
|  | Mr. Lerner (State) |  |  |  | 11 |
| State Witnesses |  |  |  |  |  |
|  | Jennifer Alexander | 13 | 28 | 46 |  |
|  | Richard Alexander | 48 | 61 | 73 |  |
|  | Mary Conlon | 74 | 76 | 78 |  |
|  | Off. Lambeseder | 79 | 88 | 102 |  |
|  | Off. Firth | 104 |  |  |  |
| State Rests |  |  |  |  | 108 |
| Defense Witnesses |  |  |  |  |  |
|  | Ralph Metz | 108 | 111 | 113 |  |
|  | Mary Kogut | 114 | 117 |  |  |
|  | Off. Lambeseder | 118 | 121 |  |  |
|  | Robert Miller | 123 | 133 | 144 |  |
| Stipulation |  |  |  |  | 144 |
|  | Carlos Mitchem | 145 |  |  |  |
| Defense Rests |  |  |  |  | 148 |
| State Witness |  |  |  |  |  |
|  | Off. Mitchem | 148 | 149 |  |  |
| Stipulation |  |  |  |  | 150 |
| State Rests |  |  |  |  | 150 |
| Closing Arguments |  |  |  |  |  |
|  | Mr. Goodman (Defense) |  |  |  | 157 |

A-3

|                              | **Direct** | **Cross** | **Redir.** | **Recr.** |     |
|------------------------------|------------|-----------|------------|-----------|-----|
| Mr. Lerner (State)           |            |           |            |           | 165 |
| Finding of Guilt             |            |           |            |           | 171 |
| Motion for New Trial - Denied |           |           |            |           | 241 |
| Sentencing Hearing           |            |           |            |           |     |
| Argument in Aggravation      |            |           |            |           | 242 |
| Argument in Mitigation       |            |           |            |           | 243 |
| Allocution                   |            |           |            |           | 245 |
| Imposition of Sentence       |            |           |            |           | 249 |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DISTRICT-SECOND MUNICIPAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,                )
         PLAINTIFF-RESPONDENT                )
                                        )
                                        ) POST CONVICTION
               V.                     ) No. 00 C 220576
                                        )
                                        )
ROBERT MILLER,                                              )
         DEFENDANT-PETITIONER            )

### ORDER DISMISSING PETITION FOR POST-CONVICTION RELIEF

Petitioner Robert Miller was charged with Residential Burglary and Possession of Burglary Tools. He was found guilty in a bench trial and sentenced to 18 years imprisonment. An appeal was denied on December 8, 2003.

Petitioner alleges ineffective assistance of Counsel at trial and on appeal.

Petitioner completely rehashes his bench trial. He seeks to relitigate each and every fact that the State sought to introduce at trial. Nothing new is raised in the Petition. The evidence against the Defendant is overwhelming.

The Petition for Post-Conviction Relief completely fails to state a claim and is patently without merit.

The Petition is hereby dismissed.

The Clerk of the Court shall serve Petitioner with a copy of this order within 10 days.

Dated January 24, 2005

_____
Timothy J. Chambers
Associate Judge of the Circuit Court of Cook County
Municipal Department
Second Municipal District

**FILED**

JAN 2 4 2005

DOROTHY BROWN
CLERK OF CIRCUIT COURT

C0161

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DISTRICT - SECOND MUNICIPAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,     )
     Plaintiff-Respondent,           )
                           )
                           )
   VS.                                )   POST CONVICTION
                           )   No. 00 C 220576
                           )
ROBERT MILLER,                        )
     Defendant-Petitioner.

## NOTICE OF APPEAL

An appeal is taken from the order or judgment described below:

(1) Court to which appeal is taken: Appellate of Illinois First District, 160 N. LaSalle Street, Chicago, Illinois 60601.

(2) Name of appellant and address to which notice shall be sent:

Name: Robert Miller A50043

     P. O. Box 900, Taylorville, Illinois 62568.

(3) Name and address of appellant's attorney on appeal:

     Name:  None
     Address: None

     If appellant is indigent and has no attorney, does he want one appointed?
Appellant is indigent and want an attorney appointed by the court.

(4) Date of judgment or order: January 24, 2005.

(5) Offense of which convicted: Residential Burglary and Possession of Burglary Tools.

(6) Sentence: 18 years

(7) If appeal is not from a conviction, nature of order appealed from: This appeal is from the dismissal of a Post Conviction Petition.

                              *Robert J Miller*
                                 Signed

C0169