File Date: _June 11, 2008_

Case No: _08cv 23_

ATTACHMENT # _3_

EXHIBIT _K through M_

## TAB (DESCRIPTION)

_____

NOTICE

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

First Division
August 6, 2007

JULIE NIKOLAEVSKAYA

No. 1-05-0585

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

07-878

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | |
| v. | No. 00 C2 20576 |
| ROBERT MILLER, | Honorable Timothy J. Chambers, |
| Defendant-Appellant. | Judge Presiding. |

### O R D E R

Defendant Robert Miller appeals a trial court order summarily dismissing his pro se petition for relief under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 et seq.) (West 2004)). On appeal, defendant contends his petition stated the gist of a constitutional claim for ineffective assistance of trial counsel, post-trial counsel, and appellate counsel. Specifically, defendant contends that (1) his trial counsel and post-trial counsel were ineffective for failing to call an alibi witness and for failing to investigate two exculpatory witnesses, and (2) his appellate counsel was ineffective for failing to raise that trial counsel and post-trial counsel were ineffective for failing to investigate exculpatory witnesses. We affirm.

At trial, Jennifer Alexander testified that on October 8, 2000, at around 5:30 p.m. she saw movement on the back porch of a

1-05-0585

house located at 2205 Sherman Avenue in Evanston. Jennifer, who lived next door, knew that the owners, Chip Plumb and Mary Kay Conlon, were out of town and went with her husband, Richard Alexander, to investigate. When they arrived, Jennifer noticed that a wicker table was askew, a window was open, and there was a large hole cut in a screen. Jennifer yelled "[h]ello," and then after hearing no response shouted, "I am calling the police now." As she was closing the door to the porch, Jennifer heard someone screaming, saw defendant, tripped over a stair, and fell to the ground. From the ground, Jennifer saw defendant run past her, screaming and waving his hands. Defendant, who was wearing dark clothes and a dark knit skull cap, ran for his bicycle, which was leaning against the house. Richard then caught defendant and struggled with him. Eventually, both men fell to the ground and defendant fled on foot. In the meantime, Jennifer had called the police. Shortly after the police arrived, Jennifer was standing on Plumb and Conlon's front porch when she saw defendant taken out of a squad car. She immediately identified defendant as the man who was in the Plumb-Conlon house.

Richard testified that when Jennifer first opened the door to the back porch, he did not notice anything unusual; however, after Jennifer shouted "hello," he noticed that a table was out of place and one of the screens had been cut. Then, Richard saw that the door to the remainder of the house was open and he and

1-05-0585

Jennifer said to each other, "Something is not right. Let's get out of here. Someone is in the house." Richard walked down the steps and proceeded to his back yard where he heard a scream or a yell and the door slamming. When he turned to see what was happening, Richard saw Jennifer falling down the stairs. He also saw defendant, who was wearing a black coat, dark jeans, and a wool night cap, walk down the steps, walk around the side of the house, and grab a bicycle. Richard approached defendant on the sidewalk between the houses as defendant was walking his bicycle by the handle bars. As defendant was trying to get his bicycle through a gate, Richard jumped towards him and struck defendant's bicycle. The impact caused both Richard and defendant to fall to the ground. Defendant then fled the scene on foot, leaving his bicycle and wool cap on the sidewalk. About 20 minutes later, the police brought Richard and Jennifer to the front porch of the Plumb-Conlon house for the express purpose of viewing a person they had in custody. From the front porch, Richard saw the police walking defendant around the front of a squad car and to the curb. Richard identified defendant as the person he saw come from the house.

Officer Lambeseder, an officer for the Evanston police department, testified that on October 8, 2000, at around 5:40 p.m. he responded to a radio message that there was a burglary in progress and the perpetrator was fleeing Westbound from the 21-

1-05-0585

2200 block of Sherman Avenue. The description of the suspect was
that he was a short, black male wearing dark clothing. Officer
Lambeseder parked his squad car a couple of blocks west of the
location and waited. Fewer than 10 minutes later, Officer
Lambeseder saw defendant sprinting between some houses.
Defendant then came out onto the street, looked in Officer
Lambeseder's direction, and started walking. Defendant fit the
description of the suspect because he was short, black and
wearing dark clothing. Officer Lambeseder stopped defendant,
finding him out of breath and sweating. Later, Officer
Lambeseder admitted that he did not include that defendant was
out of breath or sweating in his supplemental report. Officer
Lambeseder then handcuffed defendant, explained that he was being
stopped for a burglary, and conducted a search. The search
revealed that defendant had a small pry bar and two Swiss Army
knives in his possession. Thereafter, Officer Lambeseder took
defendant to the scene of the crime where the officer brought
defendant out of the car for a show-up identification.

Officer Firth, an officer for the Evanston police
department, testified that on October 8, 2000, at around 5:35
p.m., he responded to a radio message about a burglary at 2205
Sherman Avenue. While Officer Firth was at the scene, he noticed
pry marks on a window frame on the back porch. He also noticed
that the adjoining window was open and the screen had been cut.

1-05-0585

Further, when another officer brought defendant for a show-up identification, the Alexanders positively identified defendant as the man who was in the Plumb-Conlon house.

Defendant testified that on October 8, 2000, he worked for Velma Thomas from 8 or 9 a.m. until about 5:15 p.m. at 1310 Foster in Evanston. After work, defendant walked towards the el station located at the corner of Maple and Foster. Defendant was carrying a pry bar, a hammer, some nails, and a Swiss Army knife because he had been doing carpentry work for Thomas. On the way to the el station, defendant went down an alley where he saw some floor carpet that he wanted to get for Thomas. Defendant exited the alley, deciding to go back towards Thomas' house to see if he could get someone to help him with the carpet. Once on the street, a police officer approached defendant and took him into custody. Defendant never ran nor was he sweating or out of breath. The officer took defendant to 2205 Sherman where he put a hat on defendant, stood him outside the car, and turned him around to face the houses. Defendant denied ever being in the area of the burglary, but admitted that he had a blue Rally two-speed bicycle locked up on the front porch of Thomas' house at the time of the incident. At the police station, defendant told Detective Carlos Mitchem that his bike was at 1310 Foster and that he was on his way to get the carpet.

Detective Mitchem testified that he spoke with defendant on

1-05-0585

October 8, 2000.  Defendant did not mention anything about
carpeting he found during their conversation.  After speaking
with defendant, Detective Mitchem went to Thomas' house, spoke
with her, and saw a Rally bicycle chained to her front porch.

The parties stipulated that defendant was convicted of
residential burglary in 1992 and 1996; and in 1990, defendant was
convicted of felony theft.

The court convicted defendant of residential burglary and
possession of burglary tools.  In so holding, the court noted
that "the only question here is whether or not I believe the
defendant's explanation of what he was doing there."  The court
found that defendant's explanation regarding his route back to
Thomas' and his motivation for going into the alley was
unreasonable.  Also, the court expressly stated that even if it
was proven that the bicycle at 1310 Foster belonged to defendant,
"that's not to say that he couldn't have owned or had the use of
another bicycle which was what was described in the State's
case."

Defendant initially filed a pro se motion for a new trial
alleging, inter alia, that his trial counsel was ineffective.
Subsequently, the assistant Public Defender withdrew and the
court assigned a private attorney (post-trial counsel) to
represent defendant.  Post-trial counsel filed a motion for a new
trial on behalf of defendant that alleged, in relevant part, that

- 6 -

1-05-0585

trial counsel was ineffective for failing to file a motion to quash the arrest, failing to file a motion to challenge the identification, and failing to establish that the identification was insufficient. The court denied defendant's motion, stating that trial counsel did "an excellent job," and that there was no basis to challenge either the arrest or the show-up identification. The court then sentenced defendant, based on his criminal background, to 18 years' imprisonment, noting 502 days of credit.

On direct appeal, defendant unsuccessfully asserted, in relevant part, that the State failed to prove him guilty of residential burglary and possession of burglary tools beyond a reasonable doubt and his trial counsel was ineffective because he did not seek to suppress a show-up identification. We affirmed defendant's conviction and sentence, and ordered his mittimus to be corrected to reflect an additional day of presentencing credit. People v. Miller, No. 1-02-0504 (2003) (unpublished order under Supreme Court Rule 23).

On October 26, 2004, defendant filed a pro se post-conviction petition under the Act, alleging, inter alia, that trial counsel and post-trial counsel were ineffective for failing to call Thomas as an alibi witness. According to defendant's petition, Thomas would have corroborated defendant's trial testimony that he was working for her on October 8, 2000. In

1-05-0585

support of this allegation, defendant attached Thomas' trial subpoena and his sworn verification to his petition.

Moreover, defendant's petition alleged that his trial counsel and post-trial counsel were ineffective for failing to investigate "Gupta" and "Thompson" as exculpatory witnesses. The individuals identified as Gupta and Thompson were noted on a police report, which defendant attached to his petition. According to the report, Gupta saw a man, who was bleeding from the head, running westbound near the Plumb-Conlon house on October 8, 2000. This, defendant maintains, would have corroborated his defense of misidentification because he was not bleeding when he was taken into custody. Further, defendant's petition reiterated that in the police report, Thompson, who also lived in the vicinity of the burglary, saw a man running through his back yard on the day of the incident. Defendant advanced that this information also corroborates that he was not the offender.

The last relevant allegation in defendant's petition is that his appellate counsel was ineffective for failing to raise that trial counsel and post-trial counsel were ineffective for failing to investigate Gupta and Thompson.

On January 24, 2005, the trial court summarily dismissed defendant's petition as completely without merit, stating that "[n]othing new [was] raised in the [p]etition." Defendant filed

1-05-0585

a notice of appeal and his court-appointed attorney, who represented defendant on appeal, filed a motion to withdraw as counsel under Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), which this court denied.

On appeal, defendant first contends that his petition stated the gist of a meritorious constitutional claim that his trial counsel and post-trial counsel were ineffective for failing to call Thomas as an alibi witness and for failing to investigate Gupta and Thompson as exculpatory witnesses.

We review the trial court's summary dismissal of a post-conviction petition de novo. People v. Dedrick Coleman, 183 Ill. 2d 366, 389 (1998).

At the first stage of the proceedings, a defendant's pro se petition will be dismissed as frivolous and patently without merit only where the allegations in the petition, taken as true and liberally construed, fail to present the gist of a meritorious constitutional claim. People v. Edwards, 197 Ill. 2d 239, 244 (2001). A post-conviction petition must be both verified by an affidavit (725 ILCS 5/122-1(b) (West 2004)) and accompanied by "affidavits, records, or other evidence" supporting the allegations in the petition (725 ILCS 5/122-2 (West 2004)). These two requirements are separate and distinct in that the sworn verification confirms the truth of the allegations while the "affidavits, records, or other evidence"

- 9 -

provides those verified allegations with an independent source of
authentification. <u>People v. Collins</u>, 202 Ill. 2d 59, 67 (2002).
Where the "affidavits, records, or other evidence" are absent
from the petition, a defendant must provide the trial court with
an explanation as to their omission. 725 ILCS 5/122-2 (West
2004). "Failure to provide the necessary attachments or to
explain their absence is 'fatal' and by itself justifies the
petition's summary dismissal." <u>Collins</u>, 202 Ill. 2d at 66.

Here, defendant unquestionably failed to submit the proper
affidavits of both his alibi witness (Thomas) and his exculpatory
witnesses (Gupta and Thompson). Instead, defendant relies solely
on the allegations in his post-conviction petition, which were
supported by his own sworn statement, Thomas' trial subpoena, and
a police report. Even though a defendant's sworn verification
satisfies the pleading requirement of the Act, it does not serve
as a substitute for the "affidavits, records, or other evidence"
required pursuant to section 122-2. <u>Collins</u>, 202 Ill. 2d at 67.

Furthermore, Thomas' subpoena and the police report each
fail to provide an independent source of authentification as
required under <u>Collins</u>. First, Thomas' subpoena merely shows
that Thomas was called to testify at trial, but it does not
verify the substance of Thomas' alleged alibi testimony.
Nevertheless, defendant does not even allege that Thomas would
have provided an alibi for him at the time of the burglary but,

1-05-0585

rather, maintains that Thomas would have testified that defendant worked for her on October 8, 2000. Second, the police report attached to defendant's petition was insufficient because it failed to show what Gupta and Thompson would have testified to if called as witnesses at trial. In addition, defendant's petition does not explain why he failed to attach affidavits from Thomas, Gupta, and Thompson. Without the necessary supporting documentation or an explanation as to its absence, defendant's petition was properly dismissed.

Defendant next contends that his appellate counsel was ineffective for failing to raise that his trial counsel and post-trial counsel were ineffective for failing to investigate Gupta and Thompson.

Ineffective-assistance-of-appellate-counsel claims are evaluated under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2068, 80 L. Ed. 2d 674 (1984); People v. Oliver, 367 Ill. App. 3d 826, 831-32 (2006). To prevail on an ineffective assistance of counsel claim under Strickland, a defendant must (1) show that counsel's performance fell below an objective standard of reasonableness and (2) demonstrate that there is a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. Strickland 466 U.S. at 694. A defendant does not suffer any prejudice due to appellate counsel's failure to raise

1-05-0585

an issue on appeal where the challenged issue is without merit.
People v. Alton Coleman, 168 Ill. 2d 509, 523 (1995).

Defendant's allegation that trial counsel was ineffective
for failing to investigate Gupta and Thompson as exculpatory
witnesses is without merit, and thus, defendant's claim that
appellate counsel was ineffective for failing to raise this issue
did not prejudice defendant on appeal. Trial counsel's failure
to interview a witness may indicate a deficiency, especially
where the witness was known to counsel and the testimony may be
exonerating. Dedrick Coleman, 183 Ill. 2d at 398. "Whether
failure to investigate amounts to incompetency depends on the
value of the evidence to the case." People v. Steidl, 177 Ill.
2d 239, 256 (1997).

Here, the evidence was not closely balanced. The
Alexanders, who each had a close encounter with the suspect at
the Plumb-Conlon house, both positively identified defendant as
the offender at the show-up identification and at defendant's
trial. Officer Lambeseder testified that he saw defendant
sprinting behind houses and when he apprehended him, defendant
was out of breath and sweating. Moreover, the trial court
expressly stated that it based its decision on the credibility of
witnesses, finding defendant's explanation for why he was coming
out of the alley unreasonable. Therefore, we find that trial
counsel and post-trial counsel's failure to investigate Gupta and

- 12 -

1-05-0585

Thompson did not prejudice defendant at trial.  Accordingly, we reject defendant's claim that appellate counsel was ineffective because defendant's claim that trial counsel and post-trial counsel were ineffective for failing to investigate Gupta and Thompson is without merit.

For the foregoing reasons, we affirm the trial court's dismissal of defendant's <u>pro</u> <u>se</u> post-conviction petition.

Affirmed.

McBRIDE, P.J., with GARCIA and R. GORDON, JJ., concurring.

No.

IN THE

SUPREME COURT OF THE STATE OF ILLINOIS

| PEOPLE OF THE STATE OF ILLINOIS | ) | · Petition for Leave to Appeal from the Appellate Court of the _First_ Judicial District. |
|---|---|---|
| Plaintiff-Appellee, | ) ) ) ) | No. 1-05-0585 there on appeal from the Circuit Court for the _____ Judicial Circuit, |
| -Vs- | ) ) ) | _Cook_ County. |
| Robert Miller ............., | ) ) ) | No. 00 c 2 20576 Honorable: _Timothy J. Chambers_ |
| Defendant-Appellant-Petitioner. | ) ) ) | Presiding Judge. |

## Petition for Leave to Appeal

To the Honorable Justices of the Supreme Court

### Prayer for leave to Appeal

Robert Miller, petitioner-Appellant, hereby petitions this court for leave to Appeal, pursuant to Supreme Court rules 315 and 612, from the judgement of the Appellate Court, First District, affirming the dismissal of Petitioner's Post-Conviction Petition by the trial Court.

### Opinions And Proceeding Below

At the Conclusion of a bench trial, Mr. Miller Was Convicted of residential burglary and possession of burglary tools (R-171). The Court Sentenced Mr. Miller

EXHIBIT L

to eighteen years imprisonment, (R-249).

the Appellate Court affirmed Mr. Miller's Conviction on December 8, 2003. Mr. Miller filed a Petition for rehearing on December 18, 2003. The Appellate Court denied the Petition for rehearing on March 8, 2004. On March 10, 2004, Mr. Miller filed an affidavit of intent to file a Petition for leave to Appeal. April 9, 2004, the Petition for leave to appeal Was filed and denied by the Illinois Supreme Court.

On October 26, 2004, Mr. Miller filed a Pro Se Post-Conviction Petition Which was Summarily dismissed January 24, 2005. Mr. Miller filed a Notice of Appeal and his Court-appointed attorney, Who represented Miller on appeal, filed a motion to Withdraw as Counsel under Pennsylvania v. Finley 481 U.S. 551, Which the Appellate Court denied.

New Counsel was appointed, briefs were filed, and the Appellate Court affimed the Summaily dismissal of the Post-Conviction Petition, August 6, 2007. An affidavit of intent to file a Petition for leave to appeal, which is attached hereto.

5

## Notic to the Court .

      Mr. Miller is informing the Court that due to his lack of **Knowledge** in this legal proceeding, and lack of legal assistance from anyone trained in the law, he is attaching his Appeal Brief, done by the assistant appellate defender, Emily S. Wood in Support of his Petition for leave to Appeal. See attached hereto.

                Respectfully Submitted

                Robert Miller

No. 1-05-0585

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 C2 20576. |
| | ) | |
| **ROBERT MILLER,** | ) | Honorable |
| | ) | Timothy Chambers, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT**

MICHAEL
Deputy Defe

EMILY S. WOO
Assistant Appella
Office of the State ,
203 North LaSalle S            Floor
Chicago, Illinois  606
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

**ORAL ARGUMENT REQUESTED**

## POINTS AND AUTHORITIES                                   Page

I.   Robert Miller stated the gist of a meritorious constitutional claim that trial
     and post-trial counsel were ineffective for failing to call an alibi witness on
     Mr. Miller's behalf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     *People v. Coleman*, 183 Ill. 2d 366 (1998)  . . . . . . . . . . . . . . . . . . . 11, 12, 14, 18

     *People v. Edwards*, 197 Ill. 2d 239 (2001)  . . . . . . . . . . . . . . . . . . . . . . 11, 12, 17

     *People v. Gaultney*, 174 Ill. 2d 410 (1996)  . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

     *People v. Dredge*, 148 Ill. App. 3d 911 (4th Dist. 1986) . . . . . . . . . . . . . . . . . 11

     *People v. Jones*, 168 Ill. App. 3d 925 (1st Dist. 1988)  . . . . . . . . . . . . . . . . . . 12

     *People v. Smith*, 326 Ill. App. 3d 831 (1st Dist. 2001)  . . . . . . . . . . . . . . . . . . 12

     *People v. Ledbetter*, 342 Ill. App. 3d 285 (4th Dist. 2003)  . . . . . . . . . . . . . . . 12

     U.S. Const., amends. VI, XIV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     Ill. Const. 1970, art. I, sec. 8  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     *Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . 13

     *People v. Albanese*, 104 Ill. 2d 504 (1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     *People v. Plummer*, 344 Ill. App. 3d 1016 (1st Dist. 2004)  . . . . . . . . . 14, 12, 19

     *People v. Brown*, 336 Ill. App. 3d 711 (1st Dist. 2002)  . . . . . . . . . . . . . . *passim*

     *People v. Paleologos*, 345 Ill. App. 3d 700 (1st Dist. 2003)  . . . . . . . . . 14, 15, 16

     *People v. King*, 316 Ill. App. 3d 901 (1st Dist. 2000)  . . . . . . . . . . . . . . . . 14, 18

     *People v. Shevock*, 353 Ill. App. 3d 361 (4th Dist. 2004)  . . . . . . . . . . . . . 17, 19

     *People v. Morris*, 335 Ill. App. 3d 70 (1st Dist. 2002)  . . . . . . . . . . . . . . . . . . 18

     *People v. Britz*, 174 Ill. 2d 163 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

II.  Robert Miller stated the gist of a meritorious constitutional claim that trial
     and post-trial counsel were ineffective for failing to investigate two
     exculpatory witnesses and that appellate counsel was ineffective for failing
     to raise this issue on direct appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Boclair*, 202 Ill. 2d 89 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Edwards*, 197 Ill. 2d 239 (2001) . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. King*, 316 Ill. App. 3d 901 (1st Dist. 2000) . . . . . . . . . . . . . . . . . 20, 22

*People v. Enis*, 194 Ill. 2d 361 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Smith*, 326 Ill. App. 3d 831 (1st Dist. 2001) . . . . . . . . . . . . . . . . . . . 21

*People v. Ledbetter*, 342 Ill. App. 3d 285 (4th Dist. 2003) . . . . . . . . . . . . . . . 21

*People v. Shevock*, 353 Ill. App. 3d 361 (4th Dist. 2004) . . . . . . . . . . . . . . 21, 24

*People v. Morris*, 335 Ill. App. 3d 70 (1st Dist. 2002) . . . . . . . . . . . . . . . . . . . 21

*People v. Montgomery*, 327 Ill.App.3d 180 (1st Dist. 2001) . . . . . . . . . . . . 21, 22

*People v. Plummer*, 344 Ill. App. 3d 1016 (1st Dist. 2003) . . . . . . . . . . . . . . . 21

*People v. Coleman*, 183 Ill. 2d at 380 (1998) . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*People v. Brown*, 336 Ill. App. 3d 711 (1st Dist. 2002) . . . . . . . . . . . . 22, 23, 25

*People v. Paleologos*, 345 Ill. App. 3d 700 (1st Dist. 2003) . . . . . . . . . . . . . . 23

*People v. Scott*, 143 Ill. App. 3d 540 (1st Dist. 1986) . . . . . . . . . . . . . . . . . . . 26

*People v. Perez*, 115 Ill. App. 3d 446 (1st Dist. 1983) . . . . . . . . . . . . . . . . . . 26

## NATURE OF THE CASE

Robert Miller, Petitioner-Appellant, appeals from a judgment summarily dismissing his petition for post-conviction relief at the first stage of proceedings.

No issue is raised concerning the charging instrument.  However, an issue is raised concerning the sufficiency of the post-conviction pleadings.

## ISSUES PRESENTED FOR REVIEW

1.      Whether Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to call an alibi witness on Mr. Miller's behalf.


2.      Whether Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to investigate two exculpatory witnesses and that appellate counsel was ineffective for failing to raise this issue on direct appeal.

## JURISDICTION

Robert Miller, Petitioner-Appellant, appeals the dismissal of his *pro se* post-conviction petition. The judgment being appealed was entered on January 24, 2005. (PC-158).[1]  Notice of appeal was timely filed on January 31, 2005.  (PC-162). Jurisdiction therefore lies in this Court pursuant to Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rule 651(a).

---

[1]"PC" refers to the common law record for the first-stage post-conviction proceeding. "PR" refers to the report of the first-stage post-conviction proceeding. "PC Supp" refers to the disposition of the direct appeal.   "R" and "C" refer to the report of proceedings at trial and the common law record at trial, respectively.

## STATEMENT OF FACTS

At the conclusion of a bench trial, Robert Miller was convicted of residential burglary and possession of burglary tools. (R-171). The court sentenced Mr. Miller as a Class X offender to 18 years' imprisonment. (R-249). His conviction was affirmed on direct appeal. *People v. Miller*, No. 1-02-0504 (Rule 23 Order, December 8, 2003). Mr. Miller subsequently filed a *pro se* post-conviction petition, which was summarily dismissed on January 24, 2005. (PC-158).

### *Facts Adduced at the Bench Trial*

Mrs. Jennifer Alexander testified that on October 8, 2000 at 5:30 p.m., she was at her home at 2201 Sherman, Evanston, Illinois. (R-14). She looked out of her bedroom window and observed that someone was in the enclosed back porch of her next door neighbor's house at 2205 Sherman. (R-13-16,41). The neighbor was out of town, and Mrs. Alexander and her husband, Richard, had the key to the neighbor's back porch. (R-14-15). Mrs. Alexander and her husband went next door, used the key to unlock the door to the porch, and noticed that one of the screens was cut and the window was open. (R-17-18). Mrs. Alexander backed out of the porch, and began closing the back door when she heard screaming and saw a man running towards her waving his hands. (R-20,32-33). Mrs. Alexander later identified this man as Mr. Miller. (R-21-22). Mr. Richard Alexander also identified Mr. Miller as the man he saw on the back porch steps. (R-58-59).

Mr. Miller then went to the side of the house and retrieved a bicycle. When Mr. Miller reached the gate, the bike got stuck and Miller began pulling it towards him while he backed through the gate. (R-56-57). Mr. Alexander testified that he jumped towards Mr. Miller and hit the bike, which caused both him and Miller to fall to the ground. (R-

57). Miller got up and left on foot going south on Sherman, leaving the bike at the scene. (R-24). Mr. Alexander then saw Miller turn west onto Garfield. (R-58-59). Mrs. Alexander went inside the neighbor's house and called the police, and an officer came to the house 10 to 15 minutes later. (R-41,25,36). Mrs. Alexander testified that 10 to 15 minutes after that, a second squad car brought Miller to the house, where they identified him as the man in the house. (R-42,25-26).

Mary Conlon testified that she lives at 2205 Sherman, and was out of town on October 8, 2000. (R-74). When she returned home from her trip, Ms. Conlon observed that the drawers had been pulled out of the cabinet in her bedroom, and the items in the drawers had been scattered throughout her bedroom and the hallway. (R-75). Conlon testified that she did not know Mr. Miller, and never gave him permission to enter her house or take anything from it. (R-75). Conlon stated that nothing was taken from her home. (R-78).

On October 8, 2000, Officer Ryan Lambeseder was on patrol, alone, in uniform, and in a marked squad car. (R-80-81). At around 5:35 or 5:40 p.m., Lambeseder heard a radio message that there was a burglary in progress around the 2100-2200 block of Sherman. (R-80-81,88). Lambeseder drove to the 2100 block of Ridge at Leonard and parked on the west side of the street facing east. (R-82-83). Lambeseder testified that less than 10 minutes later, he observed a man who was short, black, and wearing dark clothing, sprint in between some houses towards Ridge. (R-83). Lambeseder identified this man as Mr. Miller. (R-86).

Lambeseder testified that when he stopped Mr.Miller, he observed that Miller was out of breath and sweaty. (R-85). Lambeseder placed Miller in custody and told him that he was being stopped for burglary because he fit the description of the offender. (R-

86). Lambeseder searched Mr. Miller, and found a small pry bar in his front pocket, and two Swiss army knives in his rear right pocket. (R-86-87). Lambeseder testified that none of the items recovered from Mr. Miller were the proceeds of the burglary. (R-93-94). Mr. Miller was then put into Lambeseder's marked squad car and taken to 2205 Sherman for a show-up. (R-87-88).

Mr. Miller testified that on October 8, 2000, he was doing carpentry work for Velma Thomas who lives at 1310 Foster. (R-123-124). Mr. Miller testified that he was putting down a new floor for Ms. Thomas, and used a pry bar, hammer and nails to do this. (R-124). Mr. Miller stated that he has a bicycle, but that on that day the bike was locked up on the front step of Velma Thomas' house. (R-130). When Mr. Miller finished work that day around 5:00 or 5:15 p.m., he walked to the el station to go home when he spotted some junk in the alley between Maple and Ridge. (R-124-125,135-136). Miller testified that he had been salvaging in that area before, so he went down the alley to look around. (R-125). In the alley behind an apartment building just in front of Ridge and Leonard, Mr. Miller discovered a roll of carpet that he thought could be put over the new flooring he installed at Ms. Thomas' house that day. (R-125,142). Miller stated that he intended to go back to the area where Ms. Thomas lived to see if he could find someone to give him a ride, and help him bring the carpet back to Ms. Thomas' house. (R-126). Miller testified that he exited the alley in between some buildings onto Ridge and Leonard, walked to the curb, and then encountered an officer who was parked at the stop sign at Ridge and Leonard. (R-127-128). Miller stated that he was not running, sweating or out of breath at this time. (R-127). Miller testified that he brought the pry bar with him that he used to put down the flooring at Ms. Thomas' house that day, and always carried the Swiss Army knives with him because they were a gift from Ms.

Thomas. (R-124-125). Miller stated that all of the property recovered from him by the officer that day belonged to him. (R-128). Miller testified that he did not burglarize any house that day. (R-129-130).

Miller stated that he was taken from 2205 Sherman to the police station where he spoke to Detective Carlos Mitchem. (R-130-131). Miller told Mitchem that he owned a blue Rally two speed bike, but it was locked to the porch at 1310 Foster. (R-130). Trial counsel called Detective Mitchem to testify that Mitchem went to 1310 Foster that same day, and saw a Rally bike chained to the front porch at 1310 Foster. (R-146-148). Trial counsel also attempted to elicit from Mitchem the substance of his conversation with Velma Thomas. (R-145). The trial court sustained the State's objections and told trial counsel that "the entire conversation is hearsay and just knowing the questions without her answer is not helpful to me anyway." (R-147).

The parties stipulated that Mr. Miller was convicted of residential burglary in 1997 and 1992, and felony theft in 1990. (R-150).

Mr. Miller was convicted of residential burglary and possession of burglary tools. (R-171).

**_Post-Trial Motion_**

The court appointed private counsel to represent Mr. Miller for post-trial motions. (R-185,189). In the motion for a new trial, Mr. Miller's post-trial counsel argued, among other things, that Miller's trial counsel was ineffective for failing investigate and present exculpatory evidence on Mr. Miller's behalf. (R-216, 234, 235, C-149-156). At the hearing on the motion, post-trial counsel argued that a neighbor of the burglarized house called the police and reported a man was running through the yards and was bleeding from the head, but that Mr. Miller was not cut or bleeding from

-7-

the head. (R-216, 234). Post-trial counsel also argued that there was a lot more trial counsel could have done on Mr. Miller's behalf because "there was a lot of information available to defense counsel via the police report and via sending out investigators and so much work he could have brought pretrial motion or better examined the State's witnesses or at least put on independent evidence presented by the State." (R-235). To support the arguments in the motion, post-trial counsel attached several exhibits, including Exhibit A, the police incident report. (C-10-21). According to the police incident report, Exhibit A, the officers received a call shortly after the burglary from a man identified as "Gupta" who stated that a short, black, male wearing dark clothing was seen running west on Garfield from Sherman and was bleeding from the head. An additional caller known as "Thompson" also stated that he saw a short, black male wearing black clothes running west through his back yard. (C-10-14).

The court denied Mr. Miller's motion for a new trial, and sentenced Mr. Miller to 18 years' imprisonment. (R-235,249).

### Direct Appeal

Appellate counsel on direct appeal challenged Mr. Miller's conviction and sentence based on the following arguments: 1) the State's failure to prove Mr. Miller's guilt beyond a reasonable doubt when the identification of Mr. Miller as the offender was vague and doubtful; 2) the trial court erred when it denied Mr. Miller's motion for a new trial when trial counsel provided ineffective assistance by failing to move to suppress the identification evidence; 3) the mandatory Class X sentencing provision violates due process; 4) the trial court's failure to properly admonish Mr. Miller pursuant to Supreme Court Rule 605(a); and 5) the mittimus did not accurately reflect the number of days' credit due Mr. Miller for time spent in pre-trial custody.

-8-

This Court amended the mittimus to correctly reflect Mr. Miller's pre-trial custody credit. In affirming Mr. Miller's conviction, this Court stated that "admittedly, the description of the offender as a short, black man in dark clothing was general, but not to the point where the trial court had to discredit the Alexanders' subsequent identification of defendant." (PC Supp-10). This Court also found that had trial counsel filed a motion to suppress the identification evidence, the motion would have failed and Mr. Miller would have still been found guilty at trial. Thus, trial counsel was not ineffective for failing to file the motion. (PC Supp-18).

### Post-Conviction Petition

Mr. Miller's *pro se* post-conviction petition was filed and docketed on October 26, 2004. (PC- 50). In his petition, Mr. Miller raises several claims regarding ineffective assistance of trial, post-trial, and appellate counsel. (PC-61-134). With respect to trial counsel, Mr. Miller's allegations include claims of ineffective assistance of counsel for failing to: 1) call Velma Thomas as an alibi witness (PC-60) and 2) investigate and call "Gupta" and "Thompson" as potential exculpatory witnesses (PC-64, 70). Miller also alleged ineffective assistance of appellate counsel for, among other reasons, failing to challenge the ineffectiveness of trial and post-trial counsel on appeal (PC-100).

Mr. Miller's *pro se* post-conviction petition was summarily dismissed on January 24, 2005. (PC-158). In the order dismissing the petition, the circuit court stated that Mr. Miller "seeks to relitigate each and every fact state [*sic*] sought to introduce at trial. Nothing new is raised in the petition. The evidence against the defendant is overwhelming. The petition for post-conviction relief completely fails to state a claim and is patently without merit." (PR-9, PC-158).

-9-

The panel attorney assigned to the appeal of the trial court's ruling through the Office of the State Appellate Defender filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This Court denied the motion on June 9, 2006. This appeal follows.

## ARGUMENT

**I.**   **Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to call an alibi witness on Mr. Miller's behalf.**

Following a bench trial, Robert Miller was convicted of residential burglary. Trial counsel presented an alibi and misidentification defense. In his *pro se* post-conviction petition for relief, Miller alleged, in part, that trial and post-trial counsel were ineffective when they failed to call Velma Thomas, his employer at the time of the incident, as a critical alibi witness. (PC-61-2). This claim is not rebutted by the record and when taken as true - as must be done at this stage of the proceedings - states the gist of a constitutional claim. *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). Accordingly, the trial court erred when it summarily dismissed Miller's claim that trial and post-trial counsel were ineffective for failing to call a critical alibi witness in presenting the alibi defense, and this Court must remand this matter for second-stage post-conviction proceedings. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

It is well settled that to avoid a first-stage dismissal, a petition need only state the gist of a claim that the petitioner's constitutional rights were violated. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). In deciding whether a petition meets this test, the trial court must accept as true all well-pleaded facts not positively rebutted by the record. *Gaultney*, 174 Ill. 2d at 418. The "gist" standard is "a low threshold." *Id.* The standard is low because "petitioners are often persons of limited education ...[and] requiring *pro se* petitioners to state their claims in greater detail than this would have the practical effect of depriving many such persons of their right of meaningful access to the courts." *People v. Dredge*, 148 Ill. App. 3d 911, 913 (4th Dist. 1986). To set forth the gist of a constitutional claim, a *pro se* post-conviction petition need only present a limited

amount of detail and need not set forth the claim in its entirety. *Edwards*, 197 Ill. 2d at

244. Furthermore, the petition need not include legal arguments or citations to legal

authority. *Id; see also People v. Jones*, 168 Ill. App. 3d 925, 936 (1st Dist. 1988).

In addition, at the first stage of post-conviction proceedings, petitioners are not

required to prove that their claims would ultimately entitle them to relief. Substantive

questions relating to the issues raised in the post-conviction petition are not to be

addressed at the first stage of the proceedings. *People v. Smith*, 326 Ill. App. 3d 831,

839-840 (1st Dist. 2001) (reversing and remanding the summary dismissal of defendant's

post-conviction petition based on ineffective assistance of counsel, finding that it was

not necessary to determine if the petitioner would be entitled to relief, but only if he

stated the gist of a constitutional claim); *see also People v. Ledbetter*, 342 Ill. App. 3d

285, 286-287 (4th Dist. 2003) (where the court declined to consider the State's argument

that the errors alleged in defendant's post-conviction petition were not prejudicial

because the only relevant inquiry was whether the petition presented a gist of a

constitutional claim). Where the petitioner states the gist of a meritorious constitutional

claim, counsel must be appointed and the petition must advance to the second stage for

further proceedings pursuant to sections 122-4 through 122-6 of the Post-Conviction

Hearing Act. *Gaultney*, 174 Ill. 2d at 418.

The summary dismissal of a *pro se* post-conviction petition should be reviewed

*de novo. Coleman*, 183 Ill. 2d at 388-89.

Here, Miller has met this low "gist" standard because his *pro se* post-conviction

petition, taken as true and liberally construed, presented the gist of a meritorious

constitutional claim of ineffective assistance of trial and post-trial counsel based on trial

counsel's failure to call a crucial witness to Miller's alibi defense and post-trial counsel's

failure to include this issue in his post-trial motion. In his *pro se* petition, Miller alleged

that Velma Thomas would have testified that Miller was working for her on the day of

the burglary and that he left her house at 1310 Foster Avenue just a few minutes before

the burglary took place on 2205 Sherman, about half a mile away (C-21). (PC-61-2).

Velma Thomas would have also testified that Miller's pry bar was used to work on her

floor, that she gave him the pocket knives as gifts, and that Miller's bicycle was chained

to her front porch and not left at the crime scene. (PC-61-2, R-124-5). Although Velma

Thomas' testimony would have corroborated Miller's alibi defense, trial counsel failed

to call her to the stand to testify. (PC-61). The record reveals that trial counsel listed

Thomas as a potential witness on Miller's answer to discovery (C-32) and subpoenaed

her for the day of trial (PC-135). Despite the fact that Thomas was present in the

courtroom on the day of trial, trial counsel never called her to the stand to testify. (PC-

61). The record reflects that trial counsel viewed the substance of Velma Thomas'

testimony as important because he tried to elicit the same information through Detective

Carlos Mitchem when he questioned Mitchem regarding Mitchem's conversation with

Thomas. (R-145-8). Assuming the truth of Miller's allegations, as is required for a first-

stage post-conviction proceeding, he stated the gist of a constitutional claim that he was

denied his Sixth Amendment right to counsel.

A defendant is guaranteed the right to effective assistance of counsel under the

United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970,

art. I, sec. 8; *Strickland v. Washington*, 466 U.S. 668, 688-9 (1984); *People v. Albanese*,

104 Ill. 2d 504, 526 (1984). In the context of the ineffective assistance claim, at the first

stage of post-conviction proceedings, the issue to be determined is whether the petition

alleges the gist of a constitutional deprivation that is unrebutted by the record. *People v.*

*Plummer*, 344 Ill. App. 3d 1016, 1020 (1st Dist. 2004); *People v. Brown*, 336 Ill. App. 3d
711, 720 (1st Dist. 2002); *People v. Paleologos*, 345 Ill. App. 3d 700, 705 (1st Dist.
2003). A petitioner need not prove that his claims of ineffectiveness of counsel meet the
*Strickland* standard in order to state the gist of constitutional claim. *Plummer*, 344 Ill.
App. 3d at 1024 (finding that the petitioner stated the gist of a constitutional claim of
ineffectiveness of counsel, and specifying that "We take no position on defendant's
ability to prove his ineffective assistance claims; however, we find his petition and the
record warrant proceeding to the second stage of the post-conviction process. Defendant
alleged the gist of a constitutional deprivation which was substantively unrebutted by the
record"). In the instant case, Miller stated the gist of a claim that trial counsel was
ineffective for failing to call Velma Thomas who would have corroborated Miller's
testimony that he was a half a mile away from the robbery when it took place. (PC-61-2).

Illinois courts recognize that a criminal defendant's right to a fair trial is violated
by trial counsel's failure to investigate and present favorable witnesses, especially where
the witnesses are known to trial counsel and their testimony may be exonerating.
*Coleman*, 183 Ill. 2d at 398. Failure to present a known exculpatory witness supporting
an otherwise uncorroborated defense may be deemed ineffective. *People v. King*, 316
Ill. App. 3d 901, 913 (1st Dist. 2000). Here, trial counsel was aware of the importance of
Velma Thomas' testimony, as reflected by the fact that he listed her as a possible witness
on his answer to discovery (C-32), he subpoenaed her (PC-135), and he attempted to
elicit the substance of her testimony through Detective Mitchem (R-145-8). The attempt
to elicit the information from Mitchem was as unnecessary as it was unsuccessful
because Velma Thomas was present in the courtroom on the day of trial. (PC-61-2).
When Miller alleged that Velma Thomas was a crucial witness whose testimony would

have corroborated Miller's testimony that he was nowhere near the burglary when it happened, that the pry bar and knives were not burglary tools and that trial counsel was ineffective for failing to call her to testify, Miller stated the gist of a constitutional claim that is unrebutted by the record. Accordingly, Miller's petition should advance to second-stage proceedings.

While counsel's decision of whether to present a particular witness is generally a matter of strategic decision-making, this decision constitutes ineffective assistance of counsel when it is unreasonable and results in "counsel's failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense." *People v. Brown*, 336 Ill. App. 3d 711, 718 (1st Dist. 2002). Here, the record reveals no obvious strategic reason for counsel's failure to call Velma Thomas to testify. Indeed, doing so would have been consistent with his trial strategy, and in light of the fact that he unsuccessfully attempted to elicit the same information through Mitchem, further proceedings are required to determine whether it was unreasonable not to call Velma Thomas to the stand since she was already present in the courtroom. *See Brown*, 336 Ill. App. 3d at 720; *Paleologos*, 345 Ill. App. 3d at 705 (stating a constitutional deprivations that is unrebutted by the record is sufficient to require the circuit court to appoint counsel for second-stage proceedings).

In *Brown*, this Court held that circuit court improperly summarily dismissed petitioner's *pro se* post-conviction petition where the petition alleged that trial counsel failed to present alibi witnesses. In light of the exculpatory nature of the alibi witness testimony and because trial counsel was aware of these witnesses, the failure to call the witnesses could not be dismissed as trial strategy based on the record before this Court.

*Brown*, 336 Ill. App. 3d at 720-721

Just as in *Brown*, the failure to call Velma Thomas as an alibi witness cannot be determined to be a strategic choice based on the current record. *Brown*, 336 Ill. App. 3d at 720. Here, trial counsel's theory of the case was that Miller was nowhere near the scene of the burglary, and that the Alexanders were mistaken in their identification of Miller as the offender. Additional evidence that Miller left Velma Thomas' house on Foster between 5:00 and 5:15 p.m. would have bolstered Miller's testimony that he had an alibi and that he was misidentified. Velma Thomas would have supplied that testimony. (PC-61-2). The record reflects that trial counsel was aware of the importance of Velma Thomas' testimony because he listed her as a possible witness on the answer to discovery (C-32), he subpoenaed her (PC-135), and he attempted to elicit the substance of her testimony through Detective Mitchem (R-145-8). The corroborating evidence trial counsel sought was Velma Thomas' testimony, and could have been introduced simply by calling her to the stand, as she was already present in the courtroom. (PC-61-2). As in *Brown*, further proceedings are necessary to determine whether trial counsel's failure to call Velma Thomas constituted trial strategy. Thus, Miller alleged a constitutional deprivation in that counsel's failure to call Velma Thomas to testify when her testimony would have corroborated Miller's defense constituted ineffective assistance of counsel. At this stage in the proceeding, Miller meets the pleading requirements for advancement to second-stage proceedings because this gist of a constitutional claim is unrebutted by the record. Accordingly, the matter should be remanded for second-stage post-conviction proceedings. *See Brown*, 336 Ill. App. 3d at 720-721; *Paleologos*, 345 Ill. App. 3d at 705 (when the petition alleges a constitutional deprivation unrebutted by the record, the petition is rendered neither frivolous or

patently without merit and must be advanced).

Moreover, this error was of such a magnitude that post-trial counsel should have noted this in his post-trial motion for a new trial. Post-trial counsel argued that trial counsel could have done a lot more on Miller's behalf, referring to information available to trial counsel through the police reports. Thus, the record indicates that post-trial counsel examined discovery materials as well as the transcripts in drafting his post-trial motion. In doing so, post-trial counsel would have seen the fact that Velma Thomas was listed as a potential witness on trial counsel's answer to discovery, that he subpoenaed Thomas, and that he unsuccessfully attempted to elicit the information that Velma Thomas possessed through Detective Mitchem. These documents, along with a conversation with Miller in which Miller could confirm that Thomas was present in court on the day of trial, give rise to an additional reason to argue ineffective assistance of counsel at the hearing on the motion for a new trial. Post-trial counsel was ineffective for failing to do so.

Miller has demonstrated the gist of a claim of ineffective assistance of counsel and, as a *pro se* first-stage petitioner, need not demonstrate prejudice. *People v. Shevock,* 353 Ill. App. 3d 361, 365 (4th Dist. 2004). Because a "gist" is "something less than a completely pled or fully stated claim[,]" *Edwards,* 197 Ill. 2d at 245, at this stage a petitioner need allege only a "factual element" underlying petitioner's claim of counsel's deficient performance such that the petition appears to have "potential merit." *Shevock,* 353 Ill. App. 3d at 365. Miller has amply demonstrated the factual element underlying his claim of ineffective assistance of counsel where counsel failed to call a crucial alibi witnesses.

Even though Miller is not required to demonstrate prejudice at the gist stage,

-17-

prejudice is readily apparent. Miller has shown that Velma Thomas was an alibi witnesses who was present at trial and willing to testify on his behalf, and that he was prejudiced by trial counsel's failure to call her to the stand. *People v. Morris*, 335 Ill. App. 3d 70, 85 (1st Dist. 2002) (petitioner's allegations of ready and willing alibi witness meets the second prong of *Strickland* in the context of post-conviction proceedings). This is especially true in light of the exculpatory nature of the witnesses described in the petition. *Brown*, 336 Ill. App. 3d at 720 (strength of the evidence could not foreclose post-conviction claim of ineffective assistance of counsel for failing to present alibi witnesses in light of the exculpatory nature of the evidence). There is no question that where an additional witness would have testified that Miller was about a half a mile away from the burglary, trial counsel's failure to present this testimony, as alleged in the petition, prejudiced Miller. Finally, Miller was prejudiced by post-trial counsel's failure to include this issue in the post-trial motion, especially in light of the fact that the record indicates the trial court may have been bothered by the fact that the evidence upon which post-trial counsel was relying was not introduced at trial. An additional argument regarding what trial counsel failed to introduce might have concerned the trial court enough to order a new trial. (R-217).

At this stage, it is not Miller's burden to establish conclusively trial or post-trial counsel's ineffectiveness nor to prove the eventual outcome of a trial, but rather to merely state the gist of a constitutional claim. *Coleman*, 183 Ill. 2d at 380, n.2 (1998). Here, Miller's petition states the gist of a constitutional claim, unrebutted by the record, that trial counsel's failure to call a crucial alibi witness constituted ineffective assistance of counsel.

Notably, in summarily dismissing the petition, the trial court stated that Miller

-18-

"seeks to relitigate each and every fact State sought to introduce at trial. Nothing new is raised in the petition. The evidence against the defendant is overwhelming. The petition for post conviction relief completely fails to state a claim and is patently without merit." (PR-9). However, Miller's claim that he received ineffective assistance of counsel involve matters outside the trial record, such as Velma Thomas' subpoena and the fact that she was present in the courtroom on the day of trial, and are therefore cognizable in a post-conviction petition. *See People v. Britz*, 174 Ill. 2d 163, 178-79 (1996) (holding that challenges to counsel's representation is cognizable in a post-conviction petition if the claim regards a matter outside the trial record). Moreover, although the circuit court ends its discussion by mentioning the "gist" standard, it engages in the sort of substantive analysis which is not appropriate at this stage. Rather than considering whether Miller's petition contained the gist of a claim that counsel was ineffective, the court prematurely engaged in a substantive analysis of the merits of the claim when it stated that "the evidence against the defendant is overwhelming." (PR-9). This Court made clear in *Brown* that the strength of the State's evidence at trial does not foreclose the question of whether there has been a constitutional deprivation. *Brown*, 336 Ill. App. 3d at 721. Here, the petition plainly more than meets the "gist" standard required to survive summary dismissal in stating the gist of an ineffective assistance of counsel claim when it asserts that trial and post-trial counsel's error undermined Miller's alibi defense and trial strategy of mistaken identity. (PC-61-2).

Miller's allegation of ineffective assistance of counsel states the gist of a cognizable claim in a post-conviction petition, and the trial court erred in summarily dismissing his petition. Thus, this Court should reverse the summary dismissal of Miller's post-conviction petition and remand for second-stage proceedings.

**II.    Robert Miller stated the gist of a meritorious constitutional claim that trial and post-trial counsel were ineffective for failing to investigate two exculpatory witnesses and that appellate counsel was ineffective for failing to raise this issue on direct appeal.**

Robert Miller's *pro se* post-conviction petition states the gist of a claim that he was denied his right to effective assistance of counsel when trial and post-trial counsel failed to investigate two exculpatory witnesses, and that appellate counsel was ineffective for failing to raise this issue on direct appeal. Because the exculpatory witnesses would have bolstered Miller's claim that he was misidentified, any appeal of this issue would have had merit. Miller's petition correctly asserts that the failure to raise this issue was ineffective assistance of counsel. The circuit court's summary dismissal of the petition was thus improper, and this Court should reverse and remand for the appointment of counsel and second-stage proceedings.

At the first stage of a post-conviction petition, the petition need only present "the gist of a constitutional claim" in order to avoid summary dismissal. *People v. Boclair*, 202 Ill. 2d 89, 99-100 (2002); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001); 725 ILCS 5/122-1, *et seq.* (2005). Claims of ineffective assistance of counsel in a post-conviction petition are measured by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 688-9 (1984). *People v. King*, 316 Ill. App. 3d 901, 912 (1st Dist. 2000). Under *Strickland*, to establish a claim for ineffective assistance of trial or appellate counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's actions resulted in prejudice to the defendant. *Strickland*, 466 U.S. at 687; *People v. Enis*, 194 Ill. 2d 361, 377 (2000). Although counsel's tactical decisions are given great deference under *Strickland*, "they may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he is aware." *King*, 316 Ill. App. 3d at 913. At a first-stage post-conviction

proceeding, however, the petitioner need not prove a claim of ineffectiveness, but instead, must only state the gist of such a claim. *Edwards*, 197 Ill. 2d at 245-47. Substantive questions relating to the issues presented in the *pro se* post-conviction petition are not to be addressed at the first stage of the proceedings. *People v. Smith*, 326 Ill. App. 3d 831, 839–40 (1ˢᵗ Dist. 2001); *see also People v. Ledbetter*, 342 Ill. App. 3d 285, 286–87 (4ᵗʰ Dist. 2003) (declining to consider the State's argument that the errors alleged in petitioner's post-conviction petition were not prejudicial because the only relevant inquiry was whether the petition presented the gist of a constitutional claim). Thus, in the present case, Miller need only demonstrate that his claim of ineffective assistance of counsel had "potential" merit such that it stated the "gist" of a claim. *People v. Shevock*, 353 Ill. App. 3d 361, 364-365 (4ᵗʰ Dist. 2004); *Edwards*, 197 Ill. 2d at 254.

Here, Miller meets this low standard by stating the gist of a claim that he was denied his constitutional right to counsel at trial and on appeal. Miller alleged in his petition that information was known to trial and post-trial counsel through the police report that two additional witnesses, identified as "Gupta" and "Thompson," saw a man run from the area of the burglary, and that the man could not have been Miller because the man was bleeding from the head and Miller was not, but that trial and post-trial counsel failed to investigate and call these witnesses. (PC-65). Miller also alleged that as these documents were available to appellate counsel through the trial record, appellate counsel was ineffective for failing to raise this issue on direct appeal. (PC-70).

In order to be effective, trial counsel has a duty to conduct both factual and legal investigations on behalf of his client. *People v. Morris*, 3 Ill. 2d 437, 452 (1954); *People v. Montgomery*, 327 Ill. App. 3d 180, 185 (1ˢᵗ Dist. 2001). *See also People v. Plummer*,

344 Ill. App. 3d 1016, 1023-1024 (1st Dist. 2003) (petitioner presented gist of constitutional claim where he asserted ineffective assistance of counsel for trial counsel's failure to investigate). Illinois courts recognize that a criminal defendant's right to a fair trial is violated by trial counsel's failure to investigate and present favorable witnesses, especially where the witnesses are known to trial counsel and their testimony may be exonerating. *Coleman*, 183 Ill. 2d at 398. Failure to present a known exculpatory witness supporting an otherwise uncorroborated defense may be deemed ineffective. *King*, 316 Ill. App. 3d at 913.

Counsel's failure to investigate or call "Gupta" and "Thompson" constituted inadequate performance and cannot be explained away as trial strategy at this initial summary dismissal stage. *Montgomery*, 327 Ill. App. 3d at 189. According to the petition, which must be taken as true, trial and post-trial counsel did not make a strategic decision not to call these witnesses to testify, but rather failed to even interview or attempt to contact the witnesses to ascertain the content of their testimony. (PC-64). *See People v. Brown*, 336 Ill.App.3d 711, 718 (1st Dist. 2002) (advancing a *pro se* post-conviction petition to second-stage proceedings where trial counsel was aware of exculpatory witnesses because in light of the exculpatory nature, the failure to call them could not be dismissed as trial strategy at the first stage because the claims were unrebutted by the record).

In his *pro se* post-conviction petition, Miller alleged that his trial and post-trial counsel's failure to investigate two exculpatory witnesses was prejudicially unreasonable, and that appellate counsel's failure to raise this issue on direct appeal also constituted ineffective assistance of counsel. (PC-64, 70). These claims, taken as true at this stage in the proceedings, are unrebutted by the record. Under the low pleading

-22-

standard applicable to this proceeding, Miller states the gist of a constitutional claim such that the petition must be advanced to second-stage proceedings. *See Brown*, 336 Ill. App. 3d at 720; *People v. Paleologos*, 345 Ill. App. 3d 700, 705 (1st Dist. 2003) (both holding that when *pro se* post-conviction claims of ineffective assistance allege a constitutional deprivation that is unrebutted by the record, the petition must be advanced to second-stage proceedings). Trial counsel's theory at trial was that Miller was nowhere near the crime scene and that he was simply misidentified. In light of the very general description of the offender, the fact that Miller did not really match it and the fact that the show-up was highly suggestive, there was support for trial counsel's theory that Miller was not the offender.

Additional evidence exists to support the theory that Miller was misidentified. Two people called the police moments after Mrs. Jennifer Alexander called the police. The additional callers were identified as "Gupta" and "Thompson." "Gupta" reported seeing a short black male running westbound on Garfield, and that the man was bleeding from the head. "Thompson" reported that he saw a short black man running through his back yard. (PC-141). "Gupta" and "Thompson" gave the same description as the offender as initially provided by Mrs. Alexander. However, this man had a head wound. As the head wound could have been sustained during the struggle with Mr. Alexander, it is more reasonable to think that this man was the offender rather than Miller, who was about a half a mile away. Although investigating "Gupta" and "Thompson" as potential witnesses would have been consistent with his misidentification defense, trial and post-trial counsel failed to do so.

Post-trial counsel argued in his post-trial motion for a new trial that trial counsel was ineffective for failing to investigate and call these witnesses. Post-trial counsel

argued that "there was a lot of information available to defense counsel via the police report and via sending out investigators and so much work.... at least put on independent evidence...." To support the argument that there was enough information in the police reports to require further investigation, post-trial counsel attached Exhibit A, the police incident report that includes the information supplied by "Gupta" and "Thompson." (C-11). The existence of "Gupta" and "Thompson" as potential exculpatory witnesses were thus made a part of the trial court record.

On direct appeal, appellate counsel argued that the identification of Miller was vague, doubtful and uncertain such that it failed to prove Miller guilty beyond a reasonable doubt. Appellate counsel also argued that trial counsel was ineffective for failing to move to suppress the identification process. Clearly, appellate counsel sought to challenge the identification of Miller. However, despite the fact that the trial record reflected that "Gupta" and "Thompson" provided information that supported appellate counsel's theory that Miller was misidentified, appellate counsel failed to raise any issue associated with "Gupta" and "Thompson."

Miller has demonstrated the gist of a claim of ineffective assistance of counsel and, as a *pro se* first-stage petitioner, need not demonstrate prejudice. *People v. Shevock*, 353 Ill. App. 3d 361, 365 (4th Dist. 2004). Because a "gist" is "something less than a completely pled or fully stated claim[,]" *Edwards*, 197 Ill. 2d at 245, at this stage a petitioner need allege only a "factual element" underlying petitioner's claim of counsel's deficient performance such that the petition appears to have "potential merit." *Shevock*, 353 Ill. App. 3d at 365. Miller has amply demonstrated the factual element underlying his claim of ineffective assistance of counsel where trial and post-trial counsel failed to investigate potential exculpatory witnesses.

-24-

Even though Miller is not required to demonstrate prejudice at the gist stage, prejudice is readily apparent. Miller has shown that "Gupta" and "Thompson" were potentially two exculpatory witnesses whose testimony could have supported the defense's theory of misidentification. The exculpatory nature of the witnesses, *i.e.*, that they saw a short black man in dark clothes running from the area of the burglary and that "Gupta" saw that the man was bleeding from his head, was of such a magnitude that trial counsel's failure to investigate and call these witnesses constituted ineffective assistance of counsel. *See Brown*, 336 Ill. App. 3d at 720 (strength of the evidence could not foreclose post-conviction claim of ineffective assistance of counsel for failing to present alibi witnesses in light of the exculpatory nature of the evidence). There is no question that where additional witnesses could have testified that the man they saw fleeing from the direction of the burglary - shortly after the burglary- and that he was bleeding, counsel's failure to explore this defense, as alleged in the petition, prejudiced Miller.

At this stage, it is not Miller's burden to establish conclusively trial and post-trial counsel's ineffectiveness nor to prove the eventual outcome of a trial, but rather to merely state the gist of a constitutional claim. *Coleman*, 183 Ill. 2d at 380, n.2 (1998). Here, Miller's claim that trial and post-trial counsel's failure to investigate and call two witnesses whose description of a man they saw running suggests that the true offender got away constituted ineffective assistance of counsel states a constitutional deprivation not rebutted by the record.

Notably, in summarily dismissing the petition, the trial court stated that Miller "seeks to relitigate each and every fact State sought to introduce at trial. Nothing new is raised in the petition. The evidence against the defendant is overwhelming. The petition for post conviction relief completely fails to state a claim and is patently without merit."

-25-

(PR-9). However, Miller's claim that he received ineffective assistance of trial and appellate counsel involve constitutional questions appropriately reviewed under the Post Conviction Hearing Act. *People v. Scott*, 143 Ill.App.3d 540, 541 (1st Dist. 1986); *People v. Perez*, 115 Ill.App.3d 446, 451 (1st Dist. 1983) (both holding that challenges to appellate counsel's representation is cognizable in a post-conviction petition because it raises a constitutional issue). Additionally, although the circuit court ends its discussion by mentioning the "gist" standard, it engages in the sort of substantive analysis which is not appropriate at this stage. Rather than considering whether Miller's petition contained the gist of a claim that counsel was ineffective, the court prematurely engaged in a substantive analysis of the merits of the claim when it stated that "the evidence against the defendant is overwhelming." (PR-9). Moreover, the trial court dismissed the *pro se* post-conviction petition on the 90th day from the filing and docketing of the petition and without the benefit of actually hearing the case. (PR-8-9, R-209, 249). The petition plainly more than meets the "gist" standard required to survive summary dismissal in stating the gist of an ineffective assistance of counsel claim when it asserts that trial and post-trial counsel's error undermined Miller's alibi defense and trial strategy of mistaken identity. (PC-61-2).

The circuit court erred when it did not find that Robert Miller's post-conviction petition stated the gist of a claim that his constitutional rights were violated when trial and post-trial counsel failed to investigate two exculpatory witnesses and that appellate counsel failed to raise this issue on appeal. Accordingly, this Court should reverse the summary dismissal of Miller's post-conviction petition and remand for second-stage post-conviction proceedings.

-26-

## CONCLUSION

For the foregoing reasons, Robert Miller, Petitioner-Appellant, respectfully requests that this Court reverse the summary dismissal and remand the post-conviction petition for second-stage proceedings.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

EMILY S. WOOD
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street – 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

## CERTIFICATE OF COMPLIANCE

I, Emily S. Wood, certify that this brief conforms to the requirements of Supreme Court

Rule 341(a) and (b). The length of this brief, excluding the appendix is <u>29</u> pages.


EMILY S. WOOD
Assistant Appellate Defender

## **APPENDIX TO THE BRIEF**

Index to the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Written Circuit Court Order Dismissing Petition for Post-Conviction Relief  . . . . . . . . . . . . A-5

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6

# INDEX TO THE RECORD

## Common Law Record ("C")

**Page**

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pro Se* Motion for Reconsideration (August 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pro Se* Motion for Status (September 21, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Motion for Trial Transcripts and Common Law Records (March 29, 2004) . . . . . . . . . . . . . 21

Letter from Defendant Robert Miller to Assistant Public Defender Robert Goodman
regarding his appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Record Receipt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Letter from Defendant Miller to Assistant Appellate Defender Kari Firebaugh regarding
appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Motion for Reconsideration (August 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Motion to Proceed in Forma Pauperis (October 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 51

Motion for Appointment of Counsel (October 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Pro Se* Petition for Post-Conviction Relief (October 26, 2004) . . . . . . . . . . . . . . . . . . . . . 53

Order Dismissing Petition for Post-Conviction Relief (January 24, 2005) . . . . . . . . . . . . . 158

*Pro Se* Notice of Appeal (February 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163


## Supplemental Record ("SR")

Appellate Court Rule 23 Order in Appeal No. 1-02-0504 (September 23, 2005) . . . . . . . . . . . 2

## Report of Proceedings ("R")

| | Direct | Cross | Redir. | Recr. |
|---|---|---|---|---|
| September 24, 2004 | | | | |
| Motion for Trial Transcripts - Denied | | | | 6 |
| January 24, 2005 | | | | |
| Petition for Post-Conviction Relief - Denied | | | | 9 |

A-1

**Direct Appeal Record**
**Common Law Record ("SC")**　　　　　　　　　　　　　　　　　　　**Page**

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

Complaints for Preliminary Examination (October 10, 2000) . . . . . . . . . . . . . . . . . . . . . . . 4,6

Arrest Report (October 8, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Information (November 1, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

State's Motion for Discovery (November 8, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Defendant's Answer to Discovery (May 15, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Jury Waiver Form Signed (June 14, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Pro Se Motion for New Trial (July 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Presentence Investigation Report (July 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

Transfer Order to Presiding Judge for Appointment of Counsel (August 13, 2001) . . . . . . . . 141

Appearance (September 14, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

Court's Order to Prepare Trial Transcripts on June 14, 2001 (September 14, 2001) . . . . . . . 143

Court's Order to Prepare Trial Transcripts on June 15, 2001 (October 12, 2001) . . . . . . . . . 144

Letter from Defendant to Judge Orr . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145

Motion for New Trial (January 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146

Court's Order of the Law Firm of Addis, Greenberg Schultz & Elizer, LLC is Relieved from
Appointment of Counsel (February 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Sentencing Order (February 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 164

Notice of Appeal (February 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166

**Direct Appeal**
**Report of Proceedings ("SR")**

|  | **Direct** | **Cross** | **Redir.** | **Recr.** |  |
|---|---|---|---|---|---|
| November 8, 2000 - Arraignment |  |  |  |  | 3 |
| June 14, 2001 |  |  |  |  |  |

| | | **Direct** | **Cross** | **Redir.** | **Recr.** |
|---|---|---|---|---|---|
| **Bench Trial** | | | | | |
| Jury Waiver Signed | | | | | 9 |
| Opening Statement | | | | | |
| | Mr. Lerner (State) | | | | 11 |
| State Witnesses | | | | | |
| | Jennifer Alexander | 13 | 28 | 46 | |
| | Richard Alexander | 48 | 61 | 73 | |
| | Mary Conlon | 74 | 76 | 78 | |
| | Off. Lambeseder | 79 | 88 | 102 | |
| | Off. Firth | 104 | | | |
| State Rests | | | | | 108 |
| Defense Witnesses | | | | | |
| | Ralph Metz | 108 | 111 | 113 | |
| | Mary Kogut | 114 | 117 | | |
| | Off. Lambeseder | 118 | 121 | | |
| | Robert Miller | 123 | 133 | 144 | |
| Stipulation | | | | | 144 |
| | Carlos Mitchem | 145 | | | |
| Defense Rests | | | | | 148 |
| State Witness | | | | | |
| | Off. Mitchem | 148 | 149 | | |
| Stipulation | | | | | 150 |
| State Rests | | | | | 150 |
| Closing Arguments | | | | | |
| | Mr. Goodman (Defense) | | | | 157 |

A-3

| | Direct | Cross | Redir. | Recr. | |
|---|---|---|---|---|---|
| Mr. Lerner (State) | | | | | 165 |
| Finding of Guilt | | | | | 171 |
| Motion for New Trial - Denied | | | | | 241 |
| Sentencing Hearing | | | | | |
| Argument in Aggravation | | | | | 242 |
| Argument in Mitigation | | | | | 243 |
| Allocution | | | | | 245 |
| Imposition of Sentence | | | | | 249 |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DISTRICT-SECOND MUNICIPAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,                )
      PLAINTIFF-RESPONDENT            )
                              )
                              )  POST CONVICTION
           V.                          )  No. 00 C 220576
                              )
                              )
ROBERT MILLER,                                  )
      DEFENDANT-PETITIONER            )

## ORDER DISMISSING PETITION FOR POST-CONVICTION RELIEF

Petitioner Robert Miller was charged with Re███ ███ntial Burglary and Possession of

Burglary Tools. He was found guilty in a ██ ███ ███ ███ tenced to 18 years

imprisonment. An appeal was denied

Petitioner alleges ineffective assis██ ███ ███ ███ ██d on appeal.

Petitioner completely rehashes his be██ ███ ███ ███ ...igate each and

every fact that the State sought to introduce at tr██ ███ ...ew is raised in the Petition.

The evidence against the Defendant is overwhelming.

The Petition for Post-Conviction Relief completely fails to state a claim and is

patently without merit.

The Petition is hereby dismissed.

The Clerk of the Court shall serve Petitioner with a copy of this order within 10

days.

Dated January 24, 2005

Timothy J. Chambers
Associate Judge of the Circuit Court of Cook County
Municipal Department
Second Municipal District

# FILED

JAN 24 2005

**DOROTHY BROWN**
CLERK OF CIRCUIT COURT

**C0161**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DISTRICT - SECOND MUNICIPAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,            )
     Plaintiff-Respondent,            )
                              )
                              )
    VS.                      )   POST CONVICTION
                              )   No. 00 C 220576
                              )
ROBERT MILLER,           )
        Defendant-Petitioner.  )

## NOTICE OF APPEAL

An appeal is taken from the order or judgment described below:

    (1) Court to which appeal is taken: Appellate of Illinois First District, 160 N. LaSalle Street, Chicago, Illinois 60601.

    (2) Name of appellant and address to which notice shall be sent:

Name: Robert Miller A50043

     P. O. Box 900, Taylorville, Illinois 62568.

    (3) Name and address of appellant's attorney on appeal:

      Name:  None
      Address: None

     If appellant is indigent and has no attorney, does he want one appointed?
Appellant is indigent and want an attorney appointed by the court.

    (4) Date of judgment or order: January 24, 2005.

    (5) Offense of which convicted: Residential Burglary and Possession of Burglary Tools.

    (6) Sentence: 18 years

(7) If appeal is not from a conviction, nature of order appealed from: This appeal is from the dismissal of a Post Conviction Petition.

*Robert F. Miller*
         Signed

# IN THE SUPREME COURT
## OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) |
| Respondent, | ) |
| | ) |
| vs. | ) Case No. 1-06-0585 |
| | ) |
| Robert Miller        , | ) Honorable Timothy Chambers, |
| Defendant. | ) Judge Presiding. |

## MOTION TO PROCEED IN FORMA PAUPERIS

NOW COMES the defendant, Robert Miller        , pro se, pursuant to Supreme Court Rule 298, and 735 ILCS 5/5-105 of the Code of Civil Procedure and respectfully moves this Honorable Court to grant him leave to proceed in Forma Pauperis in the above entitled cause. In support thereof, the defendant states the following:

1. That he has been continually incarcerated since his arrest on the charge he is presently serving time on.

2. That he is presently incarcerated at TAylorville Correcrtional Center in Taylorville, Illinois 62568.

3. That he is presently without assets or any source of income to pay the cost of these legal proceedings.

4. That an affidavit in support of this request is attached hereto.

5. That the defendant believe he has a meritorious claim pursuant to Article 1, section 8 of the Illinois Constitution of 1970, and 730 ILCS 5/3-8-10; 725 ILCS5/103-5.

## CONCLUSION

WHEREFORE, the defendant, Robert Miller        , prays that this Honorable Court grant him leave to Proceed in Forma Pauperis.

Respectfully submitted.

Robert Miller
Defendant

STATE OF ILLINOIS    )
                     ) SS:
COUNTY OF CHRISTIAN )

## AFFIDAVIT IN SUPPORT OF MOTION TO
## PROCEED IN FORMA PAUPERIS

I, _Robert Miller_ , state on oath and under penalties as
provided by law pursuant to section 1-109 of the Code of Civil
Procedure that the statements set forth in this affidavit are
true and correct, except as to matters therein stated to be
on information and belief and as to such matters true.

1. I am employed as a _prison cellhouse porter_ , by
   I.D.O.C..
2. My other sources of income or support are: _none_ .
3. The amount of income that I expect for this year is: _$14.00 per month_.
4. My income for the previous year was: _$14.00 per month_
5. The persons dependant upon me for support are: _____
6. The nature and value of property I own: A. Real Estate: _none_ .
   B. Personal property (including motor vehicles): _None_

7. During the previous year, I have petitioned for permission
   to sue or defend as an indigent person in the following matters:
   _none other than the proceedings dealing with this case_
8. I am unable to pay the costs of this case;
9. I have a meritorious claim pursuant to _Article 1, Section 8 of_
   _the Illinois Constitution and 725 ILCS 5/103-5; 730 ILCS 5/3-8-10._ .

SUBSCRIBED AND SWORN TO BEFORE ME
THIS _20th_ DAY OF _August_ , 200_7_ :

_Paula R. Murray_
NOTARY PUBLIC

"OFFICIAL SEAL"
Paula R. McCray
NOTARY PUBLIC
STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-20-2008

/S/_Robert J. Miller_
DEFENDANT

## ORDER

This cause coming on to be heard on Petitioner's Motion to
Proceed In Forma Pauperis, pursuant to Supreme Court rule 298 and
735 ILCS 5/5-105, and this Court having been advised in the premise.
IT IS HEREBY ORDER THAT THE PETITIONER'S MOTION TO PROCEED IN FORMA
PAUPERIS IS:    GRANTED    /    DENIED  .

ENTERED: _____

BY: _____
         JUDGE



879 N.E.2d 936 (Table)
226 Ill.2d 600, 879 N.E.2d 936 (Table), 316 Ill.Dec. 548
**(Cite as: 226 Ill.2d 600)**

Page 1

People v. **Miller**
Ill. 2007.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)

Supreme Court of Illinois
People
v.
**RobertMiller**
**NO. 105194**

NOVEMBER TERM, 2007
November 29, 2007

Lower Court: No. 1-05-0585

Disposition: Denied.

Ill. 2007.
People v. Miller
226 Ill.2d 600, 879 N.E.2d 936 (Table), 316
Ill.Dec. 548

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT M