IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. ROBERT MILLER | ) ) ) | |
| Petitioner, | ) ) | No. 08 C 23 |
| v. | ) ) | |
| GREG SIMS, Warden | ) ) | |
| Respondent. | ) ) | Wayne R. Andersen District Judge |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the petition of Robert Miller ("Miller") for habeas corpus relief pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition for habeas corpus is denied.

## BACKGROUND

Following a bench trial in 2002, the Circuit Court of Cook County found petitioner Robert Miller guilty of residential burglary and possession of burglary tools. Rule 23 Order, *People v. Miller*, No. 1-02-0504 (1st Dist. Dec. 8, 2003). He was sentenced to 18 years in prison. *Id.* Miller appealed and the Illinois Appellate Court affirmed the Circuit Court's decision. *Id.* The Illinois Supreme Court subsequently denied Miller's Petition for Leave to Appeal (PLA). *People v. Miller*, 209 Ill.2d 594, 813 N.E.2d 226 (2004).

Miller then filed a *pro se* petition for postconviction relief in the Circuit Court of Cook County. Order Dismissing Pet. for Post-Conviction Relief, *People v. Miller*, No. 00-C-220576 (Cook Cty. Cir. Ct. Jan. 24, 2005). This petition was dismissed by the Circuit Court on January 24, 2006. *Id.* The Illinois Appellate Court affirmed the dismissal of the petition for

postconviction relief on August 6, 2007. Rule 23 Order, *People v. Miller*, No. 1-05-0585 (1st Dist. Aug. 6, 2007). Finally, on November 29, 2007, the Illinois Supreme Court denied Miller's PLA. *People v. Miller*, 226 Ill.2d 600, 879 N.E.2d 936 (2007). Miller then filed the instant habeas petition on January 2, 2008.

Miller's petition for habeas corpus does not specifically challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming the denial of his second post-conviction petition. Rule 23 Order, *People v. Miller*, No. 1-05-0585 (1st Dist. Aug. 6, 2007). For the purposes of federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e). Thus, we will adopt the facts of the Illinois Appellate Court decision as our own.

> At trial, Jennifer Alexander testified that on October 8, 2000, at around 5:30 p.m. she saw movement on the back porch of a house located at 2205 Sherman Avenue in Evanston. Jennifer, who lived next door, knew that the owners, Chip Plumb and Mary Kay Conlon, were out of town and went with her husband, Richard Alexander, to investigate. When they arrived, Jennifer noticed that a wicker table was askew, a window was open, and there was a large hole cut in the screen. Jennifer yelled "[h]ello," and then after hearing no response shouted, "I am calling the police now." As she was closing the door to the porch, Jennifer heard someone screaming, saw defendant, tripped over a chair, and fell to the ground. From the ground, Jennifer saw defendant run past her, screaming and waving his hands. Defendant, who was wearing dark clothes and a dark knit skull cap, ran for his bicycle, which was leaning against the house. Richard then caught defendant and struggled with him. Eventually, both men fell to the ground and defendant fled on foot. In the meantime, Jennifer had called the police. Shortly after the police arrived, Jennifer was standing on Plumb and Conlon's front porch when she saw defendant taken out of a squad car. She immediately identified defendant as the man who was in the Plumb-Conlon house.
>
> Richard testified that when Jennifer first opened the door to the back porch, he did not notice anything unusual; however, after Jennifer shouted "hello," he noticed that a table was out of place and one of the screens had been cut. Then, Richard saw that the door to the remainder of the house was open and he and Jennifer said to each other, "Something is not right. Let's get out of here. Someone is in the house." Richard walked down the steps and proceeded to his back yard where he heard a scream or a yell and the door slamming. When he turned to see what was happening, Richard saw Jennifer falling

2

down the stairs. He also saw defendant, who was wearing a black coat, dark jeans, and a wool night cap, walk down the steps, walk around the side of the house, and grab a bicycle. Richard approached defendant on the sidewalk between the houses as defendant was walking his bicycle by the handle bars. As defendant was trying to get his bicycle through a gate, Richard jumped towards him and struck defendant's bicycle. The impact caused both Richard and defendant to fall to the ground. Defendant then fled the scene on foot, leaving his bicycle and wool cap on the sidewalk. After 20 minutes later, the police brought Richard and Jennifer to the front porch of the Plumb-Conlon house for the express purpose of viewing a person they had in custody. From the front porch, Richard saw the police walking defendant around the front of a squad car and to the curb. Richard identified defendant as the person he saw come from the house.

Officer Lambeseder, an officer for the Evanston police department, testified that on October 8, 2000, at around 5:40 p.m. he responded to a radio message that there was a burglary in progress and the perpetrator was fleeing Westbound from the 21-2200 block of Sherman Avenue. The description of the suspect was that he was a short, black male wearing dark clothing. Officer Lambeseder parked his squad car a couple of blocks west of the location and waited. Fewer than 10 minutes later, Officer Lambeseder saw defendant sprinting between some houses. Defendant then came out onto the street, looking in Officer Lambeseder's direction, and started walking. Defendant fit the description of the suspect because he was short, black and wearing dark clothing. Officer Lambeseder stopped defendant, finding him out of breath and sweating. Later, Officer Lambeseder admitted that he did not include that defendant was out of breath or sweating in his supplemental report. Officer Lambeseder then handcuffed defendant, explained that he was being stopped for a burglary, and conducted a search. The search revealed that defendant had a small pry bar and two Swiss Army knives in his possession. Thereafter, Officer Lambeseder took defendant to the scene of the crime where the officer brought defendant out of the car for a show-up identification.

Officer Firth, an officer for the Evanston police department, testified that on October 8, 2000, at around 5:35 p.m., he responded to a radio message about a burglary at 2205 Sherman Avenue. While Officer Firth was at the scene, he noticed pry marks on a window frame on the back porch. He also noticed that the adjoining window was open and the screen had been cut. Further, when another officer brought defendant for a show-up identification, the Alexanders positively identified defendant as the man who was in the Plumb-Conlon house.

Defendant testified that on October 8, 2000, he worked for Velma Thomas from 8 or 9 a.m. until about 5:15 p.m. at 1310 Foster in Evanston. After work, defendant walked towards the el station located at the corner of Maple and Foster. Defendant was carrying a pry bar, a hammer, some nails, and a Swiss Army knife because he had been doing carpentry work for Thomas. On the way to the el station, defendant went down an alley where he saw some floor carpet that he wanted to get for Thomas. Defendant exited the alley, deciding to go back towards Thomas' house to see if he could get someone to help

3

him with the carpet. Once on the street, a police officer approached defendant and took him into custody. Defendant never ran nor was he sweating or out of breath. The officer took defendant to 2205 Sherman where he put a hat on defendant, stood him outside a car, and turned him around to face the houses. Defendant denied every being in the area of the burglary, but admitted that he had a blue Rally two-speed bicycle locked up on the front porch of Thomas' house at the time of the incident. At the police station, defendant told Detective Carlos Mitchem that his bike was at 1310 Foster and that he was on his way to get the carpet.

Detective Mitchem testified that he spoke with defendant on October 8, 2000. Defendant did not mention anything about carpeting he found during their conversation. After speaking with defendant, Detective Mitchem went to Thomas' house, spoke with her, and saw a Rally bicycle chained to her front porch. Rule 23 Order, *People v. Miller*, No. 1-05-0585 (1st Dist. Aug. 6, 2007).

## I. Direct Appeal

Based on these facts, the trial court found Miller guilty of residential burglary and possession of burglary tools. Miler filed a *pro se* Motion for a New Trial, alleging his trial counsel was ineffective for failing to file a motion to challenge the State's identification testimony. The trial court denied this motion, finding there was no basis to challenge either the arrest or show-up identification. Rule 23 Order, *People v. Miller*, No. 1-02-0504 (1st Dist. Dec. 8, 2003).

Miller appealed directly to the Illinois Appellate Court. He argued that the State failed to prove he was guilty beyond a reasonable doubt and that his trial counsel was ineffective for failing to suppress identification evidence. On December 8, 2003, the Appellate Court affirmed the guilty verdict of the trial court. *Id.* Miller then filed a PLA in the Illinois Supreme Court. Brief of Petitioner, *People v. Miller*, No. 98200 (April 12, 2004). Again, he alleged that his trial counsel was ineffective for failing to suppress identification evidence. The Illinois Supreme Court denied the PLA on May 26, 2004. *People v. Miller*, 209 Ill.2d 594, 813 N.E.2d 226 (2004).

## II.     Postconviction Petition

On October 25, 2004, Miler filed a *pro se* petition for postconviction relief in the Circuit Court of Cook County. The Circuit Court denied this petition because it "completely rehashe[d] [petitioner's] bench trial. He seeks to relitigate each and every fact that the State sought to introduce at trial. Nothing new is raised in the Petition. The evidence against the Defendant is overwhelming." Order Dismissing Pet. for Postconviction Relief, *People v. Miller*, No. 00 C 220576 (Cook Cty. Cir. Ct. Jan. 24, 2005).

Miller appealed to the Illinois Appellate Court on three grounds. First, he argued that his trial and appellate counsel were ineffective for failing to call an alibi witness on his behalf. Second, he alleged that his trial and appellate counsel were ineffective for failing to investigate two exculpatory witnesses. Third, Miller claimed that his appellate counsel was ineffective for failing to raise on direct appeal the ineffective assistance of counsel claim concerning the failure to investigate two exculpatory witnesses.

The Illinois Appellate Court affirmed dismissal of Miller's petition for postconviction relief. Rule 23 Order, *People v. Miller*, No. 1-05-0585 (1st Dist. Aug. 6, 2007). The Court held that Miller failed to satisfy the requirement under 725 ILCS 5/122-2, which provides that supporting affidavits, records, or other evidence must accompany a postconviction petition and independently support the petitioner's claims for relief. *Id., see* 725 ILCS 5/122-2. Miller submitted no such documents. In addition, the Court held that appellate counsel's alleged failure to raise the ineffective assistance of counsel claim regarding Miller's trial counsel's failure to investigate two exculpatory witnesses was without merit because it did not prejudice Miller. Rule 23 Order, *People v. Miller*, No. 1-05-0585 (1st Dist. Aug. 6, 2007).

Accordingly, on August 20, 2007, Miller filed a PLA in the Illinois Supreme Court. Brief of Petitioner, *People v. Miller*, No. 1-0585 (Aug. 20, 2007). The petition set forth the same three claims previously raised in his postconviction appeal to the Illinois Appellate Court. On November 29, 2007, the Illinois Supreme Court denied Miller's PLA. *People v. Miller*, 226 Ill.2d 600, 879 N.E.2d 936 (2007).

### III.     Miller's Section 2254 Habeas Corpus Petition

Miller then filed a petition for habeas corpus relief in this court pursuant to 28 U.S.C. § 2254. Miller's habeas petition includes twenty-one counts, as set forth below:

> (1) Petitioner was denied a full and fair hearing when the trial court summarily dismissed his postconviction petition without determining whether it stated a Constitutional claim;
> (2) Petitioner's counsel was ineffective for failing to call an alibi witness;
> (3) Petitioner's counsel was ineffective for not cross-examining a State witness (police officer) at trial;
> (4) Petitioner's counsel was ineffective for not calling an eyewitness whose "testimony would have been crucial in proving the defendant's innocence";
> (5) Petitioner's counsel was ineffective for relying on an invalid defense;
> (6) Petitioner's counsel was ineffective for eliciting from a State witness testimony harmful to petitioner;
> (7) Petitioner's counsel was ineffective for failing to impeach a State witness;
> (8) Petitioner's counsel was ineffective for failing to subpoena two potential exculpatory witnesses;
> (9) Petitioner's counsel was ineffective for stipulating that eyewitnesses' identified petitioner "before the Court was satisfied";
> (10) Petitioner's counsel was ineffective for stipulating for a previous conviction petitioner did not have;
> (11) Petitioner's counsel was ineffective for failing to present a "police fabrication defense";
> (12) Petitioner's counsel was ineffective for failing to present "police fabrication for probable cause";
> (13) Petitioner's counsel was ineffective for failing to investigate evidence helpful to the petitioner;
> (14) Petitioner's counsel was ineffective for allowing petitioner to agree to a bench trial;
> (15) Petitioner's appellate counsel was ineffective for failing to obtain a complete transcript of petitioner's trial;

(16) Petitioner's appellate counsel was ineffective for failing to raise all the issues brought against the trial court in the postconviction petition;
(17) Trial court violated petitioner's right to a fair and impartial trial under the Fourteenth Amendment;
(18) Trial court improperly prevented petitioner from fully cross-examining a State witness;
(19) Trial court "manufactured evidence directed at finding [petitioner] guilty";
(20) Violation of petitioner's right to be present at all critical stages of a trial because he was not in the courtroom when his counsel stipulated that a missing page of a police report did not exist;
(21) Petitioner's counsel was ineffective for stipulating that the missing page of the police report did not exist. *See* Pet. for Writ of Habeas Corpus.

## **LEGAL STANDARD**

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). In order for the federal courts to grant habeas relief, the state court's judgment must be deemed to have "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As such, federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law. *Vecchio v. Ill. Dep't. of Corr.*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc).

Before a federal court may review the merits of a habeas petition, the petitioner must exhaust state court remedies by presenting his claims to the state court. 28 U.S.C. §2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, the petitioner is required to provide state courts with a meaningful opportunity to "pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th

Cir. 2001). A meaningful opportunity means that a petitioner "must invoke one complete round of the State's established appellate review process" to resolve any constitutional issues. *O'Sullivan*, 526 U.S. at 845. The rule in Illinois is that "one full round" is completed once the petitioner has presented the habeas claims at each stage of the appellate process, up through the Illinois Supreme Court. *See id.* at 847-48; *see also White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). A petitioner's failure to exhaust this entire process of state remedies constitutes a procedural default. *See Chambers*, 264 F.3d at 737.

A claim is procedurally defaulted under two circumstances: "(1) that claim was presented to the state courts and the state court ruling against the petitioner rests on adequate and independent state law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004).

However, procedural default based upon claims not presented to the state courts is excused in two circumstances. First, procedural default will not bar a federal court from granting habeas relief if "the petitioner demonstrates cause for the default and prejudice resulting therefrom." *Perruquet*, 390 F.3d at 515. Second, procedural default is overturned when the petitioner can show a miscarriage of justice would result if his claims were not heard on the merits. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Counts 1, 3, 5-21 are procedurally defaulted because Miller failed to raise these arguments to the state courts. Additionally, these defaulted counts do not satisfy the "cause and prejudice" or "miscarriage of justice" exceptions. Moreover, the remaining two counts (Counts 2 and 4) are also procedurally defaulted because they were already decided by the Illinois state

8

courts on independent and valid state law grounds. Accordingly, Miller's habeas petition is denied.

## DISCUSSION

### I. Claims Which are Procedurally Defaulted Due to Miller's Failure to Pass Through a Full Round of Review in State Court

Counts 1, 3, and 5-21 were not presented for full review in the Illinois state courts. Therefore, they are procedurally defaulted. Counts 3, 5-14, 20, and 21 allege various claims against Miller's trial counsel for his purported failure to provide an adequate defense. Counts 15 and 16 allege that Miller's appellate counsel failed to raise the issue of certain deficiencies in the postconviction petition on appeal. Finally, in Counts 1 and 17-19 Miller alleges that certain trial court errors led to his conviction.

#### A. Counts 1, 3, and 5-21 Are Procedurally Defaulted

Counts 1, 3, and 5-21 were not raised in state court during Miller's direct appeal or postconviction petition. *See supra* pp. 5-6. These counts allege ineffective assistance of counsel for: (1) failing to call exculpatory witnesses (Count 8), (2) failing to effectively cross-examine State witnesses (Counts 3, 6, and 7), (3) failing to pursue potentially helpful evidence and defenses (Counts 5, 11, 12, 13, and 14), and (4) incorrectly stipulating to Miller's past convictions and identification (Counts 9, 10, 20, and 21). Additionally, Counts 15 and 16 allege appellate counsel employed improper appellate representation. Finally, in Counts 1 and 17-19, Miller makes specific allegations of errors by the trial court. Miller explicitly acknowledges that none of these counts was raised in state court. Pet. at 6. As stated above, in Illinois a complete round of appellate review in state court for purposes of a § 2254 petition must include presenting

all claims in the petition at each stage of the appellate process, both on direct appeal and on post-conviction appeal, through a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 848. This requirement was not met. Accordingly, Counts 1, 3, 5- 21 are procedurally defaulted.

> **B.** **Counts 1,3, and 5-21 Do Not Qualify For the Cause and Prejudice Exception**

A federal court may address the merits of a procedurally defaulted claim only if the petitioner can establish cause and prejudice. *Dretke v. Haley,* 541 U.S. 386, 388 (2004). In order to establish "cause," the petitioner must show that some external objective factor prevented compliance with the state's procedural rule. *Murray*, 477 U.S. at 488. However, it should be noted that "there is no right to effective counsel in post-conviction hearings" and therefore counsel's failures cannot be used to show cause for omissions made at the postconviction stage. *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998); *see* 28 U.S.C. §2254 (I). In order to constitute "prejudice" under this requirement, the petitioner must show errors that not merely created a possibility of prejudice, but that created *actual prejudice*." *Murray*, 477 U.S. at 494 (emphasis added). Miller, however, fails to establish both "cause" and "prejudice" for Counts 3, 5-14, 20, and 21, which all relate to alleged ineffective assistance of trial counsel.

> *1.* *Count 9*

Although Miller establishes cause for his procedural default of Count 9, he fails to satisfy the standard for prejudice with respect to this claim. Count 9 alleges that Miller's trial counsel was ineffective for stipulating that eyewitnesses identified Miller "before the court was satisfied." In order for Miller to establish cause for a claim of ineffective assistance of counsel, Miller has to show that the ineffective assistance of counsel claim itself was not defaulted. *Edwards v. Carpenter*, 529 U.S. 466, 450-51 (2000). In this case, Miller alleged that his trial

counsel was ineffective for not suppressing identification evidence at trial in both his direct appeal to the Illinois Appellate Court and his PLA to the Illinois Supreme Court. Therefore, pursuant to the rule set forth in *Edwards*, Miller has established cause because he has demonstrated that the ineffective assistance of counsel claim itself was not procedurally defaulted.

However, Miller cannot show prejudice stemming from his counsel's failure to suppress identification information. An evidentiary decision is deemed to be prejudicial "only when that ruling violated the defendant's right to due process by denying him a fundamentally fair trial." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994). The alleged error here, incorrectly stipulating that eyewitnesses identified Miller, did not preclude Miller from a fair trial. The Alexanders both testified that they had time to clearly view Miller during the burglary, and then identified him to police about 20 minutes later. The trial court found this identification valid, and the Appellate Court affirmed this ruling. *See* Rule 23 Order, *People v. Miller*, No. 1-02-0504 (1st Dist. Dec. 8, 2003). The solid evidentiary basis of the Alexanders' identification confirms that Miller was not prejudiced when his attorney failed to move to suppress this evidence. Accordingly, Miller cannot establish the "cause and prejudice" exception to procedural default for Count 9.

    2.    *Counts 3, 5-8, 10-14, 20 and 21*

Additionally, Miller cannot establish either cause or prejudice for Counts 3, 5-8, 10-14, 20, and 21. As stated above, "cause" indicates that an objective, external factor impeded compliance with the procedural default rule. Furthermore, "prejudice" refers to the likelihood that the error put Miller at an "actual and substantial disadvantage." *Murray*, 477 U.S. at 488.

First, Miller fails to establish cause for Counts 3, 5-8, 10-14, 20, and 21. Miller has raised claims of the ineffective assistance of counsel which, arguably could be used as the "cause" to excuse the procedural default. However, as stated above, in order to find that a habeas claim is not defaulted due to cause and prejudice, the ineffective assistance of counsel claim itself must not have been defaulted. *Carpenter*, 529 U.S. at 450-51. Here, Miller's claims of ineffective assistance of counsel set forth in Counts 3, 5-8, 10-14, 20, and 21 were not among the claims fully and fairly presented to the state courts. *See* Pet. at 6. Therefore, cause does not exist in this case.

Similarly, Miller also fails to establish prejudice for Counts 3, 5-8, 10-14, 20, and 21. The counts allege ineffective assistance of counsel for: (1) failing to call exculpatory witnesses (Count 8), (2) failing to effectively cross-examine state witnesses (Counts 3, 6, and 7), (3) failing to pursue potentially helpful evidence and defenses (Counts 5, 11, 12, 13, and 14), and (4) incorrectly stipulating to Miller's past convictions and identification (Counts 10, 20, and 21). These purported deficiencies did not materially prejudice Miller. The Illinois Appellate Court supported the credible identification evidence that linked Miller to the burglary on Miller's direct appeal and on his postconviction appeal. Identification was essential to obtain the conviction. The alleged deficiencies had no effect against Miller because the evidence against him was already "overwhelming." Order Dismissing Pet. for Postconviction Relief, *People v. Miller*, No. 00 C 220576 (Cook Cty. Cir. Ct. Jan. 24, 2005).

### 3. *Counts 15 and 16*

Counts 15 and 16 allege that Miller's appellate counsel failed to: (1) obtain a complete transcript of Miller's trial, and (2) raise the ineffective assistance of counsel claims that are

raised in Miller's present petition for habeas relief on appeal. Because Miller fails to establish cause and prejudice with respect to these counts, this exception is inapplicable.

Miller's direct appeal did not raise either of the issues in Count 15 or 16. As stated above, a claim of ineffective assistance of counsel must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carpenter*, 529 U.S. at 51 (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). In this case, Count 15 and 16 were never raised in state court. Therefore, Miller has not established cause.

Furthermore, "prejudice" does not excuse the procedural default for Counts 15 and 16. The extensive allegations Miller makes about the purported errors committed by his appellate counsel does not in any way undermine the crux of his conviction: that the Alexanders made a positive identification about twenty minutes after encountering Miller emerging from the Plumb-Conlon house. Despite Miller's complaints about his appellate counsel, the evidence linking him directly to the crime is "overwhelming." Order Dismissing Pet. for Postconviction Relief, *People v. Miller*, No. 00 C 220576 (Cook Cty. Cir. Ct. Jan. 24, 2005). Therefore, Miller does not meet the standard for prejudice which would excuse the procedural default of Counts 15 and 16.

Accordingly, Counts 15 and 16 are procedurally defaulted because Miller did not present these counts for a full round of state court review. Furthermore, they are not exempted from procedural default under the cause and prejudice exception.

    4.  *Counts 1, 17, 18, and 19*

Counts 1 and 17-19 allege evidentiary errors by the trial court. Specifically, Count 1 alleges denial of a full and fair hearing, Count 17 claims that Miller was denied an impartial trial,

13

Count 18 alleges that Miller was improperly prevented from examining a State witness, and Count 19 claims that the trial court "manufactured evidence" in order to find Miller guilty. Miller failed to raise any of these four claims on direct appeal.

First, Miller fails to establish cause for these counts. Miller has raised claims of the ineffective assistance of counsel which, arguably could be used as the "cause" to excuse the procedural default. However, as stated above, in order to satisfy the "cause" prong, the ineffective assistance of counsel claim itself must not have been defaulted. *Carpenter*, 529 U.S. at 450-51. In this case, Miller never raised the claim that he was prevented from challenging trial court determinations because his counsel was ineffective. Thus, "cause" does not exist.

Furthermore, Miller fails to meet the standard for prejudice which would excuse the procedural default. The "prejudice" analysis set forth in Section I.B.3 *supra* applies here as well. Despite Miller's allegations of multiple trial court errors, the Circuit Court of Cook County denied consideration of his postconviction relief petition because the petition "rehashe[d]" Miller's bench trial. Any alleged errors still cannot diminish the strength and validity of the Alexanders' identification of Miller a short time after they encountered him, at close range, burglarizing the Plumb-Conlon house.

Accordingly, Counts 1, 17, 18, and 19 are procedurally defaulted and do not meet the "cause and prejudice" standards in order to excuse the procedural default.

    **C.**    **Counts 1, 3, and 5-21 Do Not Satisfy the Miscarriage of Justice Exception**

A federal court may grant an exception to the cause and prejudice rule, which means that a petitioner's procedural default may be excused even if he fails to satisfy the cause and prejudice exception, if "petitioner can demonstrate a sufficient probability that our failure to

14

review his federal claim will result in a fundamental miscarriage of justice." *Carpenter*, 529 U.S. at 451. This miscarriage of justice exception is limited to the extraordinary circumstances in which the petitioner is innocent of the crime for which he is imprisoned. *Bell v. Plerson*, 267 F.3d 544, 551 (7th Cir. 2001). In order for the miscarriage of justice exception to apply, the petitioner must "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Counts 1, 3, and 5-21 all question evidentiary issues. However, even if Miller's counsel had presented additional witnesses or investigated additional evidence, the evidence against Miller is so overwhelming that it is nearly certain a reasonable juror would have convicted him. The Alexanders, who had a close encounter with Miller at the Plumb-Conlon house, made positive identifications at the show-up and at trial. Additionally, Miller was arrested by Officer Lambseder running behind houses and out of breath. Furthermore, the trial court explicitly noted that its decision was based on the credibility of the witnesses as compared with Miller's unsubstantiated alibi. Accordingly, there is no evidence that any of these factors led to a "fundamentally unfair trial." Thus, Miller has not established that a fundamental miscarriage of justice would result from procedural default of his claims and he is not entitled to habeas relief for Counts 1, 3, and 5-21.

## II. Miller's Procedurally Defaulted Claims That Were Disposed of on Independently Valid State Court Grounds

A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729-30; *see, e.g. Fox Film Corp. v.*

*Muller*, 296 U.S. 207 (1935). This rule applies whether the state law ground is substantive or procedural. *Coleman*, 501 U.S. at 729. This doctrine also applies to bar federal habeas petitions when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement; in these cases, the state judgment rests on independent and adequate state procedural grounds. *Id.*; *Wainwright v. Sykes*, 433 U.S. 72 (1977).

Count 2 alleges that Miller's counsel was ineffective for failing to call an alibi witness and Count 4 alleges that Miller's counsel was ineffective for not calling witnesses with exculpatory information. Based upon the legal standards set forth above, Counts 2 and 4, the two remaining counts, are also procedurally defaulted. Although Counts 2 and 4 were raised by Miller and went through a full round of appellate review in state court, they are procedurally defaulted because the Illinois Appellate Court dismissed these counts on independent and adequate state law grounds.

Miller raised both of the issues in Counts 2 and 4 in his postconviction appeal. However, the Illinois Appellate Court dismissed both counts under the state law requirement that a postconviction petition must be accompanied by "affidavits, records, or other evidence" supporting the allegations of the petition. *See* 725 ILCS 5/122-2. Under Illinois law, the failure to supply affidavits or supporting documentation without an explanation for their omission is fatal and warrants dismissal of the claims. *People v. Collins*, 202 Ill. 2d 59, 66, 782 N.E.2d 195, 199 (2002). In this case, the Illinois Appellate Court held that Miller "unquestionably failed to submit the proper affidavits of both his alibi witnesses . . . and his exculpatory witnesses." Rule 23 Order, *People v. Miller*, No. 1-05-0585 (1st Dist. Aug. 6, 2007). Therefore, the Court dismissed both of Miller's claims.

The statutory documentation requirement is an independent and adequate state law ground which precludes further review of the petitioner's habeas petition by federal court. *See Spreitzer v. Peters*, 219 F.3d 639, 647 (7th Cir. 2000). Illinois law compels that litigants support postconviction petitions with specific evidence and Miller failed to meet this requirement. Therefore, this court need not review Counts 2 and 4 because they were validly dismissed under independent state law grounds and Miller is not entitled to habeas relief under Counts 2 and 4.

## **CONCLUSION**

For the foregoing reasons, Robert Miller's petition for writ of habeas corpus [1,9] is denied and this case is hereby terminated. Furthermore, we find that Miller has not "made a substantial showing of the denial of a constitutional right.." 28 U.S.C. § 2253(c)(2). Accordingly, we decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: April 17, 2009